Ross C. Anderson (#0109)
OF COUNSEL, WINDER & COUNSEL, P.C.
460 South 400 East
Salt Lake City, UT  84111
Telephone: (801) 322-2222
Facsimile:  (801) 322-2282
randerson@winderfirm.com

Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARY JOSEPHINE (JOSIE) VALDEZ; HOWARD STEPHENSON; DEEDA SEED; DANIEL DARGER; WILLIAM GRANT BAGLEY, and THOMAS NELSON HUCKIN, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>NATIONAL SECURITY AGENCY; FEDERAL BUREAU OF INVESTIGATION; GEORGE W. BUSH, in his personal capacity; MICHAEL V. HAYDEN, in his personal capacity; RICHARD B. CHENEY, in his personal capacity; DAVID ADDINGTON; DOES #1-50, inclusive,<br><br>   Defendants. | **COMPLAINT FOR CONSTITUTIONAL, COMMON LAW, AND STATUTORY VIOLATIONS, SEEKING DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**PROPOSED CLASS ACTION**<br><br>**JURY DEMANDED**<br><br>Case No.  2:15-cv-00584-RJS<br><br>Judge ___Robert J. Shelby___ |

## **COMPLAINT**

1.  Plaintiffs, on behalf of themselves and a class of similarly situated persons, bring this action and, demanding trial by jury, allege upon personal knowledge and belief as to their own acts, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

2.     Through this case, Plaintiffs challenge gross criminality and misconduct prohibited by federal surveillance statutes, the Utah Constitution, the United States Constitution, and federal statutes, in which the National Security Agency ("NSA") and Federal Bureau of Investigation ("FBI") engaged, with the authorization and encouragement, following the request of Michael V. Hayden ("Hayden"), of then-President George W. Bush ("Bush"), then-Vice-President Richard B. Cheney ("Cheney") and Cheney's attorney, David Addington ("Addington"), in blatant and knowing violation of the Fourth Amendment to the United States Constitution and the Foreign Intelligence Surveillance Act ("FISA"), which was passed by Congress in 1978 to prevent the very sorts of abuses and violations of privacy at issue in this matter.

3.     Among the unlawful and unconstitutional acts by Bush, Cheney, and Addington, at the urging of Hayden, were the authorization of the NSA and others in the Executive Branch to engage in widespread, indiscriminate communications surveillance, interception, and analysis, without warrants and without probable cause.

4.     Although Bush was President of the United States at the time, although Cheney was Vice-President of the United States at the time, and although Addington was legal counsel to the Vice-President at the time, they had no legal authority whatsoever to authorize surveillance that so clearly was in violation of the Fourth Amendment to the United States Constitution and FISA. In fact, under FISA, every instance of the surveillance purportedly authorized and encouraged by Bush, Cheney, and Addington, all of which was sought and requested by Hayden, was a felony.

5.     The expressed views of Bush, Cheney, and Addington that the Executive Branch, and the President in particular, were not bound by laws passed by Congress because of the national

security situation at the time, were contrary to the core principles of our constitutional republic, the rule of law, the constitutional system of checks and balances, and the rights of people in the United States to privacy and to freedom from unreasonable searches and seizures.  In fact, Bush, Cheney, Addington, Hayden, and other agents of the Executive Branch were not above the law and, hence, acted completely outside their authority and outside the Constitution in authorizing wholesale spying by the federal government on people in the United States.

6.    In mid-December 2005, it was disclosed that then-President Bush, since October 2001, had authorized and ordered the NSA, in a program known within the NSA as "Stellar Wind" and within the executive branch as "the President's Surveillance Program" or simply as "the Program," to engage in widespread, warrantless, unconstitutional, felonious surveillance of email, text, internet, and telephone communications in the United States. Since then, it has been disclosed that then-Vice-President Cheney and his legal counsel Addington were instrumental in authorizing and encouraging the illegal and unconstitutional surveillance, with Addington drafting a secret written authorization for NSA Director Hayden to keep in his safe.

7.    Bush, Cheney, and Addington well knew that their authorization and encouragement of widespread, warrantless surveillance of communications in the United States—without any showing of probable cause to believe a crime had been, or was about to be, committed by any of the parties to the communications—were unconstitutional and in violation of applicable federal statutes.  Hence, their authorizations and encouragement of the illegal and unconstitutional surveillance were willful and intentional, and were committed with criminal intent. Bush demonstrated several times, after he had ordered, authorized, and encouraged the illegal surveillance, that he knew such surveillance was unlawful and unconstitutional.  For instance, Bush made the following statements about constitutional

and other legal requirements he knew he had already violated with respect to the surveillance of communications:

- On April 19, 2004, Bush deceitfully implied to the American people that his administration was complying with the warrant requirement of the Constitution and FISA, as he described a legal requirement for a wiretap as follows:

  > *You see, what that meant is if you got a wiretap by court order – and, by the way, everything you hear about requires court order, requires there to be permission from a FISA court, for example.*

- The next day, April 20, 2004, Bush deceptively led the public to believe that constitutional requirements for surveillance were being followed, as he recognized the constitutional and other legal requirements he had secretly, consistently, and blatantly violated for two and one-half years at that point, stating:

  > *It requires – a wiretap requires – a court order. Nothing has changed, by the way.  When we're talking about chasing down terrorists, we're talking about getting a court order before we do so.  It's important for our fellow citizens to understand, when you think Patriot Act, constitutional guarantees are in place when it comes to doing what is necessary to protect our homeland because we value the Constitution.*

- Likewise, on July 20, 2005, Bush admitted to legal standards he knew he had grossly violated, as follows:

  > *The Patriot Act helps us defeat our enemies while safeguarding civil liberties for all Americans.  The judicial branch has a strong oversight role in the application of the Patriot Act.  Law enforcement officers need a federal judge's permission to wiretap a foreign terrorist's phone, or to track his calls, or to search his property.  Officers must meet strict standards to use any of the tools we're talking about.  And they are fully consistent with the Constitution of the United States.*

4

8. The NSA, in conjunction with the FBI, planned and implemented a mass warrantless program—for which there was no probable cause, completely outside the Constitution and outside of any applicable federal statutory laws, including FISA, the Wiretap Act, and the Stored Communications Act—in which blanket surveillance was attempted and achieved during a period preceding the commencement of the 2002 Salt Lake Winter Olympic Games and throughout the period of the Games, from February 8, 2002 (Opening Ceremony) through February 24 (Closing Ceremony), over everyone within designated geographical areas, including Salt Lake City, Utah, and the areas including and in the vicinity of all Olympic venues. That surveillance included the interception and key-word spotting analysis of the contents of every text message sent and received, every email sent and received, and information reflecting the time and length of, and telephone numbers involved in, every telephone conversation involving any person within the areas subjected to the blanket surveillance.  In some instances, people or telephone numbers were targeted by the NSA and FBI and telephone conversations involving such targeted telephone numbers were illegally and unconstitutionally recorded and subjected to analysis, without a warrant and without probable cause.

9. In light of the practice and philosophy of the NSA to horde everything obtained through surveillance, Plaintiffs believe that the communications illegally and unconstitutionally subjected to surveillance, interception, and key-word spotting analysis are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

11. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

12.    Defendants have sufficient contacts with this district generally and, in particular, with the events described herein, that Defendants are subject to the exercise of jurisdiction of this Court over the person of the Defendants.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (e).

## PARTIES

14.    Plaintiff Mary Josephina Valdez ("Valdez"), currently a resident of Salt Lake City, resided in Salt Lake County, Utah, during the 2002 Salt Lake Winter Olympic Games.  At the time, Valdez was employed at the Small Business Administration ("SBA"), with her office in the Federal Building in Salt Lake City, and was in Salt Lake City to work at the SBA on many of the days during the Olympic Games. She also attended Olympic-related events in Salt Lake City during the period of the 2002 Winter Olympic Games.  While in Salt Lake City, she made many telephone calls, both private and business-related, and also communicated on a regular basis by email. During approximately one week during the period of the 2002 Winter Olympic Games, Valdez traveled to Puerto Rico and made many telephone calls to people located in Salt Lake City.  While at her home, she engaged in frequent landline and cellular phone calls to people located in Salt Lake City.

15.    Plaintiff Howard Stephenson ("Stephenson") is, and during the 2002 Salt Lake Winter Olympic Games was, a resident of Draper, Utah.  At all relevant times he has served as President of the Utah Taxpayers Association.  Stephenson is, and during the 2002 Salt Lake Winter Olympic Games was, a Utah State Senator in the Utah State Legislature.  At all relevant times, Stephenson frequently spent time in Salt Lake City, including at the Utah Capitol Building in Salt Lake City, where the Senate meets when it is in session.  The Utah Legislature adjourned for the 2002 Salt Lake Winter Olympic Games, but just prior to the Games, the Legislature was in session full-time and Stephenson was in attendance.  Whenever Stephenson was at the Utah Capitol building, he used his Blackberry and a

computer to send email messages to people in and outside of Salt Lake City.  He also used a land-line telephone and cell phone. For many days during the Olympics, Stephenson was in Salt Lake City, meeting dignitaries from other nations, attending events at nation houses, and also visiting his office in the Utah Capitol Building.  Whenever he was in Salt Lake City during the 2002 Salt Lake Winter Olympic Games, Stephenson engaged in email communications, and also engaged in telephone communications utilizing his cell phone and land-line when there was a land-line telephone available.   During the Opening Ceremony in Salt Lake City, Stephenson's children were in attendance and texted or emailed Stephenson about the ceremony.  Stephenson also took the Heber Creeper train and attended the biathlon Olympic competition at Soldier Hollow, a venue of the 2002 Salt Lake Winter Olympic Games

16.   Plaintiff Deeda Seed ("Seed"), currently a resident of Salt Lake City, lived in Salt Lake City during the time period of the 2002 Salt Lake Winter Olympic Games.  At that time, she had both a landline and cell phone, with service provided by AT&T, and frequently engaged in telephone calls with people in and outside of Salt Lake City.  She also engaged in email communications with people in and outside of Salt Lake City from computers at her home and her place of employment in Salt Lake City.  At the time of the 2002 Winter Olympic Games, Seed was employed as Special Project Coordinator with the Salt Lake City Public Library System in Salt Lake City, Utah.  Her internet service providers were Quest and Earthlink.

17.   Daniel Darger ("Darger") currently resides, and at the time of the 2002 Salt Lake Winter Olympic Games resided, in Emigration Canyon, Salt Lake County, Utah.  At the time of the 2002 Winter Olympic Games, Darger practiced law, with his law office located in Salt Lake City.   From his office and from other locations in Salt Lake City, Darger had numerous telephone communications with others, including legally privileged and

confidential communications with clients, during the 2002 Salt Lake Winter Olympic Games, both originating and received in Salt Lake City.  In addition to his law practice, Darger was the owner of a business located in Salt Lake City through his entity Iguana, LC, which was in the business of operating a restaurant located in Salt Lake City.  Darger was also CEO and Chair of the Board of RBD, Inc., dba Dead Goat Saloon, operating a private blues club located in Salt Lake City.  Darger had a land line telephone system in his office, the service provider of which was AT&T.  He also used two cell phones, utilizing services provided by Verizon and Cricket. At all relevant times, Darger also engaged in email communications, sometimes from a lap top computer he carried with him, including confidential communications with clients, originating and received in Salt Lake City. Darger made and received telephone calls and emails at the locations of all of the businesses with which he was associated during the 2002 Salt Lake Winter Olympic Games.  Darger attended Olympic-related events, including private parties utilizing The Dead Goat Saloon during the 2002 Winter Olympic Games, and engaged in telephonic and/or email communications during and in connection with those events in Salt Lake City.

18.   William Grant Bagley, a prize-winning editor of eight books on the American West and series editor of the fifteen-volume Arthur H. Clark Company's documentary history *Kingdom in the West: The Mormons and the American Frontier*, currently resides, and during the 2002 Salt Lake Winter Olympic Games resided, in Salt Lake City, Utah. At that time, he engaged in many communications by telephone and email from his home and elsewhere in Salt Lake City, with people located in and outside of Salt Lake City, including extremely sensitive and confidential communications in connection with a controversial book Bagley was writing about the Mountain Meadows Massacre, the mass slaughter by early Mormon settlers of about 120 men, women, and children, most of them traveling from Arkansas to California.

19. Thomas Nelson Huckin ("Huckin") currently resides, and during the 2002 Salt Lake Winter Olympic Games resided, in Salt Lake City, Utah.  At all relevant times, Huckin was employed at the University of Utah in Salt Lake City as a Professor of English and Writing and as Director of the University Writing Program.  During the 2002 Salt Lake Winter Olympic Games, Huckin was a subscriber to telephone service at his home, through AT&T, and utilized that service and a telephone at his office, also through AT&T, and made and received numerous calls from Salt Lake City to and from people located in Salt Lake City. Huckin also communicated while in Salt Lake City through two email accounts, one that was his private account and another that was his office account at the University of Utah. Huckin's email communications were with people both in and outside of Salt Lake City.

20. During the 2002 Salt Lake Winter Olympic Games, Plaintiffs utilized the services of one or more telecommunications service providers through which the NSA and FBI engaged in illegal and unconstitutional surveillance of information that included the length, times, and telephone numbers involved in each telephonic communication. Plaintiffs also subscribed to telecommunications services that allowed the sending of emails and, on a regular basis, sent and received emails while they were in Salt Lake City and near other Olympic venues, all of which were subjected by the NSA and FBI to illegal and unconstitutional surveillance, interception, and key-word spotting analysis.

21. Defendant NSA is an agency under the direction and control of the Department of Defense charged with collecting, processing, and disseminating foreign signals intelligence.  The NSA has acted far beyond its proper, assigned scope and has been responsible for the program of widespread illegal and unconstitutional surveillance described herein.

22. Defendant FBI is an intelligence and security service of the United States, serving also as the major federal law enforcement organization, under the direction and control of the Department of Justice.  The FBI has a long record of abuses of the Constitution and other

federal laws, including violations of surveillance prohibitions and limitations.  The FBI worked in conjunction with the NSA in subjecting private communications by text messages, emails, and telephone to illegal and unconstitutional surveillance, interception, and key-word spotting analysis.

23.     Defendant Bush was the 43rd President of the United States, who served as President from 2001 to 2009.  Bush expressed and acted on the view that, as President following the attacks on the United States on September 11, 2001, he was above the law, able to ignore and act in violation of laws passed by Congress and the Constitution.  He was the first President in U.S. history to authorize and/or condone torture of human beings, all of which was blatantly illegal under domestic and international law, and, knowing he was violating laws passed by Congress and the Constitution, ordered illegal and unconstitutional surveillance to be conducted by the NSA, and then deceived the public about it.

24.      Defendant Hayden was Director of the NSA from 1999 to 2005.  Hayden requested and urged that the NSA be permitted to engage in widespread warrantless surveillance of electronic communications, including text messages, emails, and telephone communications.  Hayden sought and received written authorization to engage in the clearly illegal and unconstitutional surveillance and caused the NSA to engage in such surveillance, including the massive, indiscriminate, warrantless surveillance of the contents of text messages, emails, and telephone calls originating or received in Salt Lake City and in the vicinity of other Olympic venues during the 2002 Salt Lake Winter Olympic Games.

25.     Defendant Cheney was Vice-President during both terms of the Bush presidency.  Prior to that, he was a Congressman, a presidential aide to Presidents Nixon and Ford, and Secretary of Defense during the administration of George H.W. Bush.  Cheney has been a consistent proponent, since his work with the Nixon administration and his tenure in Congress, of the notion that the President should be above the law, not hampered by laws passed by

Congress or by the Constitution, when important national security matters are at issue. Consistent with his notion regarding an imperial, law-breaking presidency, Cheney authorized, or purported to authorize, the illegal, unconstitutional surveillance, interception, and analysis of electronic communications by the NSA and was instrumental in causing the illegal surveillance program to be implemented.

26.     Defendant Addington was legal counsel for Cheney during all times relevant to this matter. Later, he served as Cheney's chief of staff.  Addington oversaw the authorization of the broad, widespread, illegal and unconstitutional surveillance program that was implemented by the NSA.  He drafted the written authorization for illegal surveillance by the NSA that was provided to Hayden.

27.     Does 1-50 are or were agents of the NSA and FBI presently unknown to Plaintiffs who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities.

## CLASS ACTION ALLEGATIONS

28.     Definition of the proposed class: Pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a class of similarly situated persons defined as:

All individuals in the United States who sent or received a phone call, text message, or email from or to a location within Salt Lake City or within an area including and adjacent to any other 2002 Salt Lake Winter Olympic Games venue where any of the defendants were engaged in warrantless surveillance of communications by telephone, text messaging, or email during the time of December 1, 2001 to February 24, 2002 (or whenever it is established the warrantless surveillance took place).

29.     Size of the proposed class: The proposed class is likely composed of several hundred thousands, if not a million or more, people.  Members of the class are so numerous that

their individual joinder is impracticable. The precise number and addresses of members of the class are unknown to the Plaintiffs. The precise number of persons in the class and their identities and addresses may be ascertained from Defendants' records.

30.    Adequacy of representation by the class representatives: Plaintiffs are adequate representatives of the class because their interests align with, and do not conflict with, the interests of the members of the class they seek to represent. Plaintiffs have retained competent counsel, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class.

31.    The common questions of law and fact: There is a well-defined community of interest in the questions of law and fact involved affecting the members of the class. These common legal and factual questions include:

(a)    Whether Defendants have violated, or caused to have violated, class members' rights under the First and Fourth Amendments of the United States Constitution, or are currently doing so.

(b)    Whether Defendants have, or caused to have, violated class members' rights under Article 1, § 14 of the Utah Constitution, or are currently doing so.

(c)    Whether Defendants have, or caused to have, subjected class members to electronic surveillance, or have disclosed or used information obtained by electronic surveillance of the class members, in violation of 50 U.S.C. § 1809, or are currently doing so.

(c)    Whether Defendants have, or caused to have, intercepted, used or disclosed class members' communications in violation of 18 U.S.C. § 2511, or are currently doing so.

(d)    Whether Defendants have, or caused to have, required the disclosure of the contents of class members' communications in violation of 18 U.S.C. § 2703(a) or (b), or are currently doing so.

(e)    Whether Defendants have, or caused to have,  required the disclosure of non-content records or other information pertaining to class members in violation of 18 U.S.C. § 2703(c), or are currently doing so.

(f)      Whether Defendants have, or caused to have, violated the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq., or are currently doing so.

(g)      Whether the Defendants have, or caused to have, intercepted class members' privately communicated messages in violation of Utah Code § 76-9-403, or are currently doing so.

(h)      Whether Plaintiffs and class members are entitled to injunctive, declaratory, and other equitable relief against Defendants.

(i)      Whether Plaintiffs and class members are entitled to an award of reasonable attorneys' fees and costs of this suit.

(j)      Whether Plaintiffs and class members are entitled to an award of actual and punitive damages.

32.    The typicality of claims or defenses of the class representatives: Plaintiffs' claims are typical of the claims of the members of the class because Plaintiffs were users of telecommunication services and sent or received one or more phone calls, text messages, or emails from or to a location within Salt Lake City or within a one-mile radius of any other 2002 Salt Lake Winter Olympic Games venue during the time of December 1, 2001 to February 24, 2002. Plaintiffs and all members of the class have similarly suffered harm arising from Defendants' violations of law, as alleged herein.

33.    Nature of the notice to the proposed class: Plaintiffs will provide notice to the class as directed by the Court, pursuant to Rule 23(c)(2), Federal Rules of Civil Procedure.

34.    Additional matters pertinent to findings as provided by Rule 23(b)(3), Federal Rules of Civil Procedure: (a) The class members have not demonstrated an interest in individually controlling the prosecution of separate actions and the statute of limitations is likely going to run within a few days of the filing of this action.  (b) No litigation has been commenced concerning the controversy that is the subject of this Complaint.  (c) It is desirable that the

litigation concerning the claims in this matter should be in this forum.  (d) Managing a class action will be far simpler, and will achieve far greater justice, than denying class status and depriving class members of a remedy and accountability for the unconstitutional and unlawful surveillance of their communications.

35. Plaintiffs seek certification as a class action of claims for monetary damages and declaratory, injunctive, and other equitable relief pursuant to 18 U.S.C. § 2520, 18 U.S.C. § 2707, 50 U.S.C. § 1810, 5 U.S.C. § 552a, UTAH CODE § 76-9-403, 5 U.S.C. § 1702, the First and Fourth Amendments to the United States Constitution, and Article 1, § 14 of the Utah Constitution.

36. Excluded from the class are the individual Defendants, all who have acted in active concert and participation with the individual Defendants, and the legal representatives, heirs, successors, and assigns of the individual Defendants.

37. Also excluded from the class are any foreign powers, as defined by 50 U.S.C. § 1801(a), or any agents of foreign powers, as defined by 50 U.S.C. § 1801(b)(1)(A), including without limitation anyone who knowingly engages in sabotage, international terrorism, or activities that are in preparation therefor.

38. This action is brought as a class action and may properly be so maintained pursuant to the provisions of Rule 23, Federal Rules of Civil Procedure. Plaintiffs reserve the right to modify the class definition and the class period based on the results of discovery.

39. This suit may be maintained as a class action pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure, because all of the above factors of numerosity, common questions of fact and law, typicality and adequacy are present, because questions of fact and law common

to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**Count I**

**Violation of Fourth Amendment of United States Constitution and Article 1, § 14 of Utah Constitution – Damages**

**Named Plaintiffs and Class v. Bush (in his personal capacity), Cheney (in his personal capacity), Addington (in his personal capacity), Hayden (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities).**

40.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

41.     Plaintiffs have a reasonable expectation of privacy in their communications, contents of communications, and/or records pertaining to their communications transmitted, collected, or stored by any telecommunications company.

42.     Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

43.     On information and belief, one or more telecommunication service providers acted as the agent of Defendants in performing, participating in, enabling, contributing to, facilitating,

or assisting in the commission of the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by the telecommunication service provider without judicial or other lawful authorization, probable cause, and/or individualized suspicion.

44.     Clearly established law, including the plain text of the Fourth Amendment, indicated to any reasonable person that surveillance of the contents of private communications without warrant or probable cause was a violation of statutory and constitutional rights. *A fortiori*, blanket surveillance of the contents of messages of all individuals within large, geographically targeted areas, without warrant, without probable cause, and without individualized suspicion, must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

45.     At all relevant times, Defendants committed, knew of, and/or acquiesced in all of the above-described acts, and failed to obtain judicial or other lawful authorization and to conform their conduct to the requirements of the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

46.     By the acts alleged herein, Defendants have violated Plaintiff's reasonable expectations of privacy and denied Plaintiffs their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

47.     By the acts alleged herein, Defendants' conduct has proximately caused significant harm to Plaintiffs.

48.     Plaintiffs have no other adequate remedy at law for the Count I Defendants' violation of Plaintiffs' rights to be free from unreasonable searches and seizures as guaranteed by the

Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

49.     Plaintiffs seek an award of their actual damages and punitive damages against the Count I Defendants, and such other or further relief as is proper.

## Count II

### Violation of Fourth Amendment of United States Constitution and Article 1, § 14 of Utah Constitution - Equitable relief

### Named Plaintiffs and Class v. United States, NSA, and FBI.

50.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

51.     Plaintiffs have a reasonable expectation of privacy in their communications, contents of communications, and/or records pertaining to their communications transmitted, collected, or stored by any telecommunications company.

52.     Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

53.     On information and belief, one or more telecommunication service providers acted as the agent of Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of the above-described acts of acquisition, interception,

surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by the telecommunication service provider without judicial or other lawful authorization, probable cause, and/or individualized suspicion.

54. Clearly established law, including the plain text of the Fourth Amendment, indicated to any reasonable person that surveillance of the contents of private communications without warrant or probable cause was a violation of statutory and constitutional rights. *A fortiori*, blanket surveillance of the contents of messages of all individuals within large, geographically targeted areas, without warrant, without probable cause, and without individualized suspicion, must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

55. At all relevant times, Defendants committed, knew of, and/or acquiesced in all of the above-described acts, and failed to obtain judicial or other lawful authorization and to conform their conduct to the requirements of the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

56. By the acts alleged herein, Defendants have violated Plaintiff's reasonable expectations of privacy and denied Plaintiffs their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

57. On information and belief, the Count II Defendants are now engaging in and will continue to engage in the above-described and similar violations of Plaintiffs' and class members' constitutional rights, and are thereby irreparably harming Plaintiffs and class members. Plaintiffs and class members have no adequate remedy at law for the Count II Defendants' continuing unlawful conduct, and the Count II Defendants will continue to violate Plaintiffs' and class members' legal rights unless enjoined and restrained by this Court.

58.   Plaintiffs seek a declaration by this Court that Defendants have violated Plaintiffs' rights and the rights of the class.

59.   The Court should enjoin the Count II Defendants, their agents, successors, and assigns, and all those in active concert and participation with them, from violating the Plaintiffs' and class members' rights under the Fourth Amendment to the United States Constitution and Article 1, § 14 of the Utah Constitution; and award such other and further equitable relief as is proper.

### Count III

### Violation of First Amendment of the United States Constitution – Damages

**Named Plaintiffs and Class v. Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

60.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

61.   Plaintiffs used telecommunication service providers to exercise their rights of free speech, association, and privacy, to speak or receive speech privately and to associate privately.

62.   Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

63.   By the acts alleged herein, Defendants' conduct proximately caused harm to Plaintiffs.

64.   Plaintiffs have no other adequate remedy at law for the Count III Defendants' violation of Plaintiffs' rights to speak, receive speech, and associate privately as guaranteed by the First Amendment of the United States Constitution.

65.   Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiffs' constitutional rights.

66.   Plaintiffs seek an award of actual damages and punitive damages against the Count III Defendants, and for such other or further relief as is proper.

**Count IV**

**Violation of First Amendment of the Constitution of the United States – Equitable relief Named Plaintiffs and Class v. United States, NSA, and FBI.**

67.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

68.   Plaintiffs used telecommunication service providers to exercise their rights of free speech, association, and privacy, to speak or receive speech privately and to associate privately.

69.   Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

70.  By the acts alleged herein, Count IV Defendants' conduct proximately caused harm to Plaintiffs.

71.  Count IV Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiffs' constitutional rights.

72.  On information and belief, the Count IV Defendants are now engaging in and will continue to engage in the above-described or similar violations of Plaintiffs' and class members' constitutional rights, and are thereby irreparably harming Plaintiffs and class members. Plaintiffs and class members have no adequate remedy at law for the Count IV Defendants' continuing unlawful conduct, and the Count IV Defendants will continue to violate Plaintiffs' and class members' legal rights unless enjoined and restrained by this Court.

73.  Plaintiffs seek that this Court declare that Count IV Defendants have violated their rights and the rights of the class; enjoin the Count IV Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the Plaintiffs' and class members' rights under the First Amendment to the United States Constitution; and award such other and further equitable relief as is proper.

## Count V

### Violation of FISA (50 U.S.C. § 1809, actionable under 50 U.S.C. § 1810) – Damages

**Named Plaintiffs and Class v. United States, FBI, NSA, Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

74.  Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

75.  In relevant part, 50 U.S.C. § 1809 makes it unlawful to intentionally engage in electronic surveillance under color of law "except as authorized in this chapter, chapter 119, 121, or

206 of Title 18 or by any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title."

76.     Defendants intentionally acquired, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of such acquisition, by means of a surveillance device, the contents of one or more wire communications to or from Plaintiffs and class members or other information in which Plaintiffs or class members have a reasonable expectation of privacy, without the consent of any party thereto, and such acquisition occurred in the United States.

77.     Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

78.     By the acts alleged herein, Defendants acting in excess of their statutory authority and in violation of statutory limitations have intentionally engaged in, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, electronic surveillance (as defined by 50 U.S.C. § 1801(f)) under color of law, not authorized by any statute, to which Plaintiffs and class members were subjected in violation of 50 U.S.C. § 1809.

79.   Plaintiffs are entitled to relief under 50 U.S.C. § 1810, which provides civil liability against any person who subjects another to surveillance in violation of 50 U.S.C. § 1809.

80.   Plaintiffs seek an award of their statutory or actual damages, punitive damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Defendants, and such other or further relief as is proper.

**Count VI**

**Violation of Wiretap Act (18 U.S.C. § 2511, actionable under 18 U.S.C. § 2520) – Damages**

**Named Plaintiffs and Class v. United States, NSA, FBI, and Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

81.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

82.   In relevant part, 18 U.S.C. § 2511 makes it unlawful to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication except as specifically provided by the Wiretap Act.

83.   By the acts alleged herein, Defendants have intentionally and willfully intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiffs' wire or electronic communications in violation of 18 U.S.C. § 2511(1)(a).

84.   Defendants have intentionally and willfully used, or endeavored to use, the contents of Plaintiffs' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. § 2511(1)(d).

85.   Defendants have intentionally and willfully caused, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, participated

in, contributed to, facilitated, directed, controlled, assisted in, or conspired to cause telecommunication service providers' divulgence of Plaintiffs' wire or electronic communications to Defendants while in transmission, in violation of 18 U.S.C. § 2511(3)(a).

86.     Defendants have committed these acts of interception and use of Plaintiffs' communications directly, or by aiding, abetting, counseling, commanding, inducing, procuring, encouraging, promoting, instigating, advising, willfully causing, participating in, enabling, contributing to, facilitating, directing, controlling, assisting in, or conspiring in their commission.

87.     On information and belief, telecommunication service providers acted as the agents of Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of these acts of interception, disclosure, divulgence and/or use of Plaintiffs' communications.

88.     Defendants did not notify Plaintiffs of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications, nor did Plaintiffs or class members consent to such.

89.     Plaintiffs have been and are aggrieved by Defendants' intentional and willful interception, disclosure, divulgence and/or use of their wire or electronic communications.

90.     Plaintiffs have therefore been subjected by Defendants to the unlawful interception, and intentional use of Plaintiff's wire, oral, and/or electronic communications in violation of 18 U.S.C. § 2511, entitling them to relief against Defendants pursuant to 18 U.S.C. § 2520.

91.     Pursuant to 18 U.S.C. § 2520, which provides a civil action for any person whose wire or electronic communications have been intercepted, disclosed, divulged or intentionally used in violation of 18 U.S.C. § 2511, Plaintiffs seek from the Count VI Defendants for each

Plaintiff their statutory damages or actual damages; punitive damages as appropriate; reasonable attorney's fees; litigation costs; and such other and further relief as is proper.

## Count VII

### Violation of Wiretap Act (18 U.S.C. § 2511, actionable under 18 U.S.C. § 2520) – Equitable relief

### Named Plaintiffs and Class v. United States, NSA, and FBI.

92.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

93.   In relevant part, 18 U.S.C. § 2511 makes it unlawful to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication except as specifically provided by the Wiretap Act.

94.   By the acts alleged herein, Defendants have intentionally and willfully intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiffs' wire or electronic communications in violation of 18 U.S.C. § 2511(1)(a).

95.   Defendants have intentionally and willfully used, or endeavored to use, the contents of Plaintiffs' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. § 2511(1)(d).

96.   Defendants have intentionally and willfully caused, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, participated in, contributed to, facilitated, directed, controlled, assisted in, or conspired to cause telecommunication service providers' divulgence of Plaintiffs' wire or electronic communications to Defendants while in transmission, in violation of 18 U.S.C. § 2511(3)(a).

97.   Defendants have committed these acts of interception and use of Plaintiffs' communications directly or by aiding, abetting, counseling, commanding, inducing, procuring, encouraging, promoting, instigating, advising, willfully causing, participating in, enabling, contributing to, facilitating, directing, controlling, assisting in, or conspiring in their commission.

98.   On information and belief, telecommunication service providers acted as the agents of Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of these acts of interception, disclosure, divulgence and/or use of Plaintiffs' communications.

99.   Defendants did not notify Plaintiffs of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications, nor did Plaintiffs or class members consent to such.

100.   Plaintiffs have been and are aggrieved by Defendants' intentional and willful interception, disclosure, divulgence and/or use of their wire or electronic communications.

101.   Plaintiffs have therefore been subjected by Defendants to the unlawful interception, and intentional use of Plaintiff's wire, oral, and/or electronic communications in violation of 18 U.S.C. § 2511, entitling them to relief against Defendants pursuant to 18 U.S.C. § 2520.

102.   Pursuant to 18 U.S.C. § 2520, which provides for a civil action for any person whose wire or electronic communications have been intercepted, disclosed, divulged or intentionally used in violation of 18 U.S.C. § 2511, pursuant to Larson v. United States, 337 U.S. 682 (1949), and pursuant to 5 U.S.C. § 702, Plaintiffs and class members seek equitable and declaratory relief against the Count VII Defendants.

103.   Plaintiffs seek that this Court declare that Count VII Defendants have violated their rights and the rights of the class; enjoin the Count VII Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the

Plaintiffs' and class members' statutory rights, including their rights under 18 U.S.C. § 2511; and award such other and further equitable relief as is proper.

### Count VIII

### Violation of Stored Communications Act (18 U.S.C. § 2703, actionable under 18 U.S.C. § 2707) – Damages

**Named Plaintiffs and Class v. Bush (in his personal capacity), Cheney (in his personal capacity), Addington (in his personal capacity), Hayden (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and implemented the illegal surveillance alleged herein, each in their personal capacities)**

104.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

105.   In relevant part, 18 U.S.C. § 2703 provides that a "governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication" only pursuant to a warrant for communications stored for one hundred and eighty days or less and for communications stored longer than one hundred and eighty days, only pursuant to a warrant or with prior notice and a subpoena or court order.

106.   Defendants intentionally and willfully required telecommunication service providers, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in requiring from telecommunication service providers, the disclosure to Defendants of the contents of Plaintiffs' and class members' communications while in electronic storage by telecommunication service providers' electronic communication service, and/or while carried or maintained by telecommunication service providers' remote computing service, in violation of 18 U.S.C.

§§ 2703(a) and/or (b). In doing so, Defendants have acted in excess of their statutory authority and in violation of statutory limitations.

107.    On information and belief, one or more telecommunication service providers acted as the agent of Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of these acts of disclosure of Plaintiffs' and class members' communications.

108.    Defendants did not notify Plaintiffs or class members of the disclosure of their communications, nor did Plaintiffs or class members consent to such.

109.    Plaintiffs and class members have been and are aggrieved by Defendants' above-described soliciting and obtaining of disclosure of the contents of communications.

110.    Clearly established law indicated to any reasonable person that requiring a telecommunication service provider to disclose the content of one of its customer's messages required following the procedures of the Stored Communications Act. *A fortiori*, requiring a telecommunication service provider to disclose the contents of messages of all individuals within large, geographically targeted areas, without warrant, without probable cause, and without individualized suspicion must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

111.    Defendants' actions were patently egregious and unlawful, in flagrant disregard of Plaintiffs' statutory and constitutional rights.

112.    Defendants therefore knowingly and willfully violated provisions of the Stored Communication Act, entitling Plaintiffs to relief under 18 U.S.C. § 2707.

113.    Plaintiffs seek an award of their statutory or actual damages, punitive damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Count IX Defendants, and such other or further relief as is proper.

**Count IX**

**Violation of Stored Communications Act (18 U.S.C. § 2703, actionable under 18 U.S.C. § 2707) – Equitable relief**

**Named Plaintiffs and Class v. United States, NSA, and FBI**

114.  Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

115.  In relevant part, 18 U.S.C. § 2703 provides that a "governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication" only pursuant to a warrant for communications stored for one hundred and eighty days or less and for communications stored longer than one hundred and eighty days, only pursuant to a warrant or with prior notice and a subpoena or court order.

116.  Defendants intentionally and willfully required telecommunication service providers, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in requiring from telecommunication service providers, the disclosure to Defendants of the contents of Plaintiffs' and class members' communications while in electronic storage by telecommunication service providers' electronic communication service, and/or while carried or maintained by telecommunication service providers' remote computing service, in violation of 18 U.S.C. §§ 2703(a) and/or (b). In doing so, Defendants have acted in excess of their statutory authority and in violation of statutory limitations.

117.  On information and belief, one or more telecommunication service providers acted as the agent of Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of these acts of disclosure of Plaintiffs' and class members' communications.

118.   Defendants did not notify Plaintiffs or class members of the disclosure of their communications, nor did Plaintiffs or class members consent to such.

119.   Plaintiffs and class members have been and are aggrieved by Defendants' above described soliciting and obtaining of disclosure of the contents of communications.

120.   Clearly established law indicated to any reasonable person that requiring a telecommunication service provider to disclose the content of one of its customer's messages required following the procedures of the Stored Communications Act. *A fortiori*, requiring a telecommunication service provider to disclose the contents of messages of all individuals within large, geographically targeted areas, without warrant, without probable cause, and without individualized suspicion must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

121.   Defendants' actions were patently egregious and unlawful, in flagrant disregard of Plaintiffs' statutory and constitutional rights.

122.   Defendants therefore knowingly and willfully violated provisions of the Stored Communication Act, entitling Plaintiffs to relief under 18 U.S.C. § 2707.

123.   On information and belief, the Count IX Defendants are now engaging in and will continue to engage in the above-described or similar acts of requiring disclosure of the contents of class members' communications while in electronic storage by telecommunication service providers' electronic communication service(s), and/or while carried or maintained by telecommunication service providers' remote computing service(s), acting in excess of the Count IX Defendants' statutory authority and in violation of statutory limitations, including 18 U.S.C. § 2703(a) and (b), and are thereby irreparably harming Plaintiffs and class members. Plaintiffs and class members have no adequate remedy at law for the Count IX Defendants' continuing unlawful conduct, and the Count IX Defendants will continue to

violate Plaintiffs' and class members' legal rights unless enjoined and restrained by this Court.

124.    Pursuant to 18 U.S.C. § 2707, which provides a civil action for any person aggrieved by knowing or intentional violation of 18 U.S.C. § 2703, pursuant to Larson v. United States, 337 U.S. 682 (1949), and pursuant to 5 U.S.C. § 702, Plaintiffs and class members seek equitable and declaratory relief against the Count IX Defendants.

### Count X

**Violation of Privacy Act (actionable under 5 U.S.C. § 552a) – Damages**

**Named Plaintiffs and Class v. NSA and FBI**.

125.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

126.    5 U.S.C. § 552a(e) in relevant part states "[e]ach agency that maintains a system of records shall—(1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President."

127.    5 U.S.C. § 552a(g)(1) provides in relevant part that:

> Whenever any agency . . . (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

128.    The      National      Security      Agency,      through      its      website      at https://www.nsa.gov/about/faqs/about_nsa.shtml, as accessed on August 13, 2015, states:

> NSA/CSS has two interconnected missions: Signals Intelligence (known as SIGINT) and Information Assurance. Through SIGINT, we gather information that America's adversaries wish to keep secret. Through Information Assurance, we protect America's vital national security information and systems from theft or damage by others. Taken together, the SIGINT and Information Assurance missions are essential to a third function: enabling Network Warfare, a military operation. Through carrying out its missions, NSA/CSS helps save lives, defend vital networks, and advance our Nation's goals and alliances, while strictly protecting privacy rights guaranteed by the U.S. Constitution and laws.

129.    The Federal Bureau of Investigation, through its website at https://www.fbi.gov/about-us/faqs, as accessed on August 13, 2015, states:

> The mission of the FBI is to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. It performs these responsibilities in a way that is responsive to the needs of the public and faithful to the Constitution of the United States.

130.    Defendants intentionally and willfully solicited and obtained from telecommunication service providers, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in soliciting and obtaining from telecommunication service providers, the disclosure to Defendants of the contents of Plaintiffs' and class members' communications while in electronic storage by telecommunication service providers' electronic communication service, and/or while carried or maintained by telecommunication service providers' remote computing service, in violation of 18 U.S.C. §§ 2703(a) and/or (b). In doing so, Defendants have acted in excess of their statutory authority and in violation of statutory limitations.

131.   On information and belief, the NSA and FBI maintain in their records illegally obtained information about Plaintiffs individually that is neither relevant nor necessary to accomplish the purpose of the NSA or the FBI.

132.   Plaintiffs seek an award of their actual damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Count X Defendants, and such other or further relief as is proper.

## Count XI

### Violation of Communication Abuse (Utah Code § 76-9-403) – Damages

**Named Plaintiffs and class v. United States, NSA, FBI, and Bush (in his personal capacity),  Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

133.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

134.   Defendants, without authorization by law, intercepted messages that were privately communicated by Plaintiffs, without consent of the sender or receiver.

135.   Defendants acted intentionally and reprehensibly, in clear violation of Plaintiffs rights. Defendants' actions were in egregious violation of Utah Code Ann. §76-9-403, which provides as follows:

> (1) A person commits communication abuse if, except as authorized by law, he: (a) Intercepts, without the consent of the sender or receiver, a message by telephone, telegraph, letter, or other means of communicating privately . . . or (b) Divulges without consent of the sender or receiver the existence or contents of any such message if the actor knows that the message was illegally intercepted or if he learned of the message in the course of employment with an agency engaged in transmitting it.

136.     Plaintiffs seek an award of their actual damages, punitive damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Count XI Defendants, and such other or further relief as is proper.

## Count XII

### Violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. - Declaratory, Injunctive, and Other Equitable Relief

### Named Plaintiffs and Class v. United States, NSA and FBI

137.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

138.     Defendants' actions violate the Administrative Procedures Act, 5 U.S.C. § 701 et seq., because Defendants' actions exceed statutory authority and limitations imposed by Congress through FISA, and through Chapters 119, 121 and 206 of Title 18 of the U.S. Code (the Wiretap Act, the Stored Communications Act, and the Pen Register Statute, respectively) and in violation of statutory rights under those laws; are not otherwise in accordance with law; are contrary to constitutional rights, including the Fourth Amendment and First Amendment; and are taken without observance of procedures required by law.

139.     Plaintiffs and class members are aggrieved by these violations because, as described previously in this Complaint, Defendants' actions have resulted in the interception, acquisition, disclosure, divulgence and/or use of the contents of their wire and electronic communications, communications records, and other information in violation of their constitutional and statutory rights.

140.     Plaintiffs seek nonmonetary relief against the Count XII Defendants, including a declaration that Defendants have violated their rights and the rights of the class; an injunction enjoining the Count XII Defendants, their agents, successors, and assigns, and

all those in active concert and participation with them from violating the Plaintiffs' and class members' rights; and such other and further nonmonetary relief as is proper.

**Count XIII**

**Violation of FISA (50 U.S.C. § 1809, actionable under 50 U.S.C. § 1810) – Equitable Relief Named Plaintiffs and Class v. United States, FBI, and NSA.**

141.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

142.   In relevant part, 50 U.S.C. § 1809 makes it unlawful to intentionally engage in electronic surveillance under color of law "except as authorized in this chapter, chapter 119, 121, or 206 of Title 18 or by any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title."

143.   Defendants intentionally acquired, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, such acquisition, by means of a surveillance device, the contents of one or more wire communications to or from Plaintiffs and class members or other information in which Plaintiffs or class members have a reasonable expectation of privacy, without the consent of any party thereto, and such acquisition occurred in the United States.

144.   Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of the above-described acts of acquisition, interception, surveillance and/or analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization,

probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

145.   By the acts alleged herein, Defendants acting in excess of their statutory authority and in violation of statutory limitations have intentionally engaged in, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, electronic surveillance (as defined by 50 U.S.C. § 1801(f)) under color of law, not authorized by any statute, to which Plaintiffs and class members were subjected in violation of 50 U.S.C. § 1809.

146.   On information and belief, the Count XIII Defendants are now engaging in and will continue to engage in the above-described or similar acts resulting in the electronic surveillance, disclosure, and/or use of Plaintiffs' and class members' wire communications, acting in excess of the Count XIII Defendants' statutory authority and in violation of statutory limitations, including 50 U.S.C. § 1809 and 18 U.S.C. § 2511(2)(f), and are thereby irreparably harming Plaintiffs and class members. Plaintiffs and class members have no adequate remedy at law for the Count XIII Defendants' continuing unlawful conduct, and the Count XIII Defendants will continue to violate Plaintiffs' and class members' legal rights unless enjoined and restrained by this Court.

147.   Pursuant to *Larson v. United States*, 337 U.S. 682 (1949) and to 5 U.S.C. § 702, Plaintiffs seek that this Court declare that Defendants have violated their rights and the rights of the class; enjoin the Count XIII Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the Plaintiffs' and class members' statutory rights, including their rights under 50 U.S.C. §§ 1801 et seq.; and award such other and further equitable relief as is proper.

148.    Plaintiffs are entitled to relief under 50 U.S.C. § 1810, which provides civil liability against any person who subjects another to surveillance in violation of 50 U.S.C. § 1809.

149.    Plaintiffs seek an award of their statutory or actual damages, punitive damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Defendants, and such other or further relief as is proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.  Declare that the program of surveillance as described herein violates Plaintiffs' and class members' rights under the First and Fourth Amendments to the United States Constitution and Article I, § 14 of the Utah Constitution; their statutory rights, including their rights under 18 U.S.C. § 2511, 18 U.S.C. § 2703, 50 US.C. § 1809, 5 U.S.C. § 552a, and the Administrative Procedures Act.

2.  Award Plaintiffs and class members equitable relief, including a preliminary and permanent injunction pursuant to the First and Fourth Amendments to the United States Constitution and Article I, § 14 of the Utah Constitution, prohibiting Defendants' continued warrantless surveillance of communications by text messages, emails, and telephone, and a preliminary and permanent injunction pursuant to the Fourth Amendment requiring Defendants to provide to Plaintiffs and members of the class an inventory of their communications, records, or other information that were seized in violation of the Fourth Amendment, and further requiring the destruction of all copies of those communications, records, or other information within the possession, custody, or control of any of the Defendants.

3.  Award Plaintiffs their statutory, actual, and punitive damages to the extent permitted by law and according to proof.

4. Award to Plaintiffs their reasonable attorneys' fees and other costs of suit to the extent permitted by law.

5. Grant such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a jury trial of all matters triable by jury.

DATED this 18th day of August, 2015.

WINDER & COUNSEL, P.C.

   /s/
Ross C. Anderson
Attorneys for Plaintiffs