IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(Central Division)

_____

| | |
|---|---|
| MARY JOSEPHINE (JOSIE) VALDEZ, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) Case No. 2:15-cv-00584-RJS ) |
| v. | ) Hon. Robert J. Shelby ) |
| NATIONAL SECURITY AGENCY, *et al.*, | ) ) |
| Defendants. | ) ) |

_____

**GOVERNMENT DEFENDANTS' MOTION AND SUPPORTING MEMORANDUM
TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

Date:  December 18, 2015

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
JULIA A. BERMAN
CAROLINE J. ANDERSON
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7320
Washington, D.C.  20001
Phone:  (202) 305-7919
Fax:      (202) 616-8470
E-mail:  rodney.patton@usdoj.gov

Counsel for the Government Defendants

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. iii

MOTION TO DISMISS ...................................................................... 1

MEMORANDUM IN SUPPORT ......................................................... 2

INTRODUCTION ............................................................................... 2

PLAINTIFFS' ALLEGATIONS ......................................................... 3

ARGUMENT ...................................................................................... 5

I.      LEGAL STANDARDS ............................................................. 5

        A.      Pleading Standards Under *Twombly* and *Iqbal* .................... 5

        B.      The Requirements of Standing ...................................... 6

II.     THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER
        PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE
        RELIEF .................................................................................... 8

        A.      Plaintiffs Have Not Plausibly Alleged That Their Communications
                Were Subject to Government Surveillance During the Winter
                Olympics of 2002 ......................................................... 9

        B.      Even if Plaintiffs Had Plausibly Alleged that their Communications
                Were Subjected to Past Surveillance, Their Claims for Declaratory and
                Injunctive Relief Do Not Satisfy the Case-or-Controversy Requirement
                of Article III ................................................................ 12

        C.      Plaintiffs Have Not Plausibly Alleged Continuing Government
                Surveillance Targeted at Telecommunications in the Salt Lake City
                Region ....................................................................... 15

III.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER
        PLAINTIFFS' CLAIMS FOR DAMAGES ............................... 17

        A.      Plaintiffs' Claims for Money Damages Under 50 U.S.C. § 1810
                and 18 U.S.C. § 2520 Are Barred by Sovereign Immunity Because
                Neither Statute Authorizes Suit Against the United States .................... 17

**PAGE**

B.     Plaintiffs' Privacy Act Claim Must Also Be Dismissed........................................20

     1.     The Complaint is silent as to the first and fifth elements necessary to a Privacy Act maintenance claim ...........................................21

     2.     As to the remaining three elements of a Privacy Act claim, Plaintiffs offer no more than speculation or legal conclusions.................22

C.     Plaintiffs' Damages Claim for Alleged Violation of Utah's Communication Abuse Statute Is Also Barred by Sovereign Immunity..............................................................................................................24

CONCLUSION.....................................................................................................................26

# TABLE OF AUTHORITIES

**CASES**      **PAGE(S)**

*Al-Haramain v. Obama*,
     705 F.3d 845 (9th Cir. 2012) ............................................................... 19

*Al-Owhali v. Holder*,
     687 F.3d 1236 (10th Cir. 2012) ...................................................... 6, 11

*Allen v. Wright*,
     468 U.S. 737 (1984)............................................................................ 7

*Am. Forest & Paper Ass'n v. EPA ("AFPA")*,
     154 F.3d 1155 (10th Cir. 1998) ...................................................... 7, 9

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)................................................................... *passim*

*Ashcroft v. Mattis*,
     431 U.S. 171 (1977)......................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
     550 U.S. 544 (2007)................................................................... *passim*

*City of Erie v. Pap's A.M.*,
     529 U.S. 277 (2000)......................................................................... 14

*City of Los Angeles v. Lyons*,
     461 U.S. 95 (1983)................................................................ 7, 13, 15

*Clapper v. Amnesty Int'l, USA*,
     133 S. Ct. 1138 (2013)............................................................... *passim*

*Cohon v. N.M. Dep't of Health*,
     646 F.3d 717 (10th Cir. 2011) .......................................................... 11

*Conley v. Gibson*,
     355 U.S. 41 (1957)........................................................................... 16

*Daimler-Chrysler Corp. v. Cuno*,
     547 U.S. 332 (2006)......................................................................... 14

*Dep't of Navy v. Egan*,
     484 U.S. 518 (1988)......................................................................... 23

**PAGE(S)**

*Dias v. City and County of Denver*,
    567 F.3d 1169 (10th Cir. 2009) ..................................................................... 7, 16

*Doe v Chao*,
    540 U.S. 614 (2004) .............................................................................................. 22

*Estate of Trentadue ex rel. Aguilar v. United States*,
    397 U.S. 840 (10th Cir. 2005) ............................................................................ 26

*FAA v. Cooper*,
    132 S. Ct. 1441 (2012) ........................................................................... 18, 20, 22

*Fazaga v. FBI*, 885 F. Supp. 2d 978 (C.D. Cal. 2012),
    *appeal pending*, No. 12-56867 (9th Cir.) .......................................................19

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ....................................................................................... 24, 25

*F.E.R. v. Valdez*,
    58 F.3d 1530 (10th Cir. 1995) ...................................................................... 13, 15

*Fifth Third Bank v. Brooke Holdings, Inc.*,
    2011 WL 1337093 (D. Kan. Apr. 7, 2011) ........................................................ 7

*Finstuen v. Crutcher*,
    496 F.3d 1139 (10th Cir. 2007) .......................................................................... 15

*Fortner v. Young*,
    582 Fed. App'x 776 (10th Cir. 2014) ............................................................... 26

*Gerlich v. U.S. Dep't of Justice*,
    711 F.3d 161 (D.C. Cir. 2013) ........................................................................... 21

*Governor of Kan. v. Kempthorne*,
    516 F.3d 833 (10th Cir. 2008) ..................................................................... 18, 20

*Henke v. United States Dep't of Commerce*,
    83 F.3d 1453 (D.C. Cir. 1996) ........................................................................... 21

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) ........................................................................... 25

iv

PAGE(S)

*Iowa Tribe of Kan. & Neb. v. Salazar*,
   607 F.3d 1225 (10th Cir. 2010) ................................................................... 17, 18

*Jones v. U.S. Child Support Recovery*,
   961 F. Supp. 2d 1518 (D. Utah 1997) ................................................................. 24

*Kansas Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ............................................................ 5, 6, 10, 11

*Khalik v. United Airlines*,
   671 F.3d 1188 (10th Cir. 2012) ........................................................................ 11

*Loving v. Boren*,
   133 F.3d 771 (10th Cir. 1998) ............................................................................. 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 6, 7, 9

*Marquez v. Johnson*,
   2012 WL 6618238 (D. Col. 2012), *aff'd* 545 Fed. Appx.
   (10th Cir. Oct. 18, 2013) ............................................................................ 21, 23

*Maydak v. United States*,
   363 F.3d 512 (D.C. Cir. 2004) .......................................................................... 21

*McNeil v. United States*,
   508 U.S. 106 (1993) ......................................................................................... 26

*Merida Delgado v. Gonzales*,
   428 F.3d 916 (10th Cir. 2005) .......................................................................... 23

*Mohamed v. Jeppesen Dataplan, Inc.*,
   614 F.3d 1070 (9th Cir. 2010) .......................................................................... 10

*Moore v. Trapp*,
   986 F.2d 1428 (10th Cir. 1992) ......................................................................... 13

*Morgan v. McCotter*,
   365 F.3d 882 (10th Cir. 2004) ............................................................................. 6

*Ngiendo v. SSA*,
   547 Fed. App'x 913 (10th Cir. 2013) ................................................................. 25

v

PAGE(S)

*Normandy Apts., Ltd. v. HUD,*
   554 F.3d 1290 (10th Cir. 2009) ................................................................. 17, 18

*Obama v. Klayman,*
   800 F.3d 559 (D.C. Cir. 2015) ......................................................................... 12

*Pipkin v. USPS,*
   951 F.2d 272 (10th Cir. 1991) ......................................................................... 26

*Pippinger v. Rubin,*
   129 F.3d 519 (10th Cir. 1997) .......................................................... 21, 22, 23, 24

*Riggs v. City of Albuquerque,*
   916 F.2d 582 (10th Cir. 1990) ......................................................................... 16

*Rio Grande Silvery Minnow v. Bur. of Reclamation,*
   601 F.3d 1096 (10th Cir. 2010) ....................................................................... 14

*Rizzo v. Goode,*
   423 U.S. 362 (1976).......................................................................................... 13

*Schaffer v. Clinton,*
   240 F.3d 878 (10th Cir. 2001) ........................................................................... 6

*Smith v. United States,*
   561 F.3d 1090 (10th Cir. 2009) ....................................................................... 25

*Sosa v. Alvarez–Machain,*
   542 U.S. 692 (2004).......................................................................................... 24

*State of Utah v. Babbitt,*
   137 F.3d 1193 (10th Cir. 1998) ................................................................. 6, 7, 9

*Steel Co. v. Citizens for a Better Environment,*
   523 U.S. 83 (1998)............................................................................................ 14

*Tandy v. City of Wichita,*
   380 F.3d 1277 (10th Cir. 2004) ....................................................................... 13

*United States v. Murdock Mach. & Eng'g Co. of Utah,*
   81 F.3d 922 (10th Cir. 1996) ........................................................................... 18

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & St., Inc.,*
   454 U.S. 464 (1982)............................................................................................ 6

PAGE(S)

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)............................................................................. 18, 19

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................... 6

*Wikimedia Foundation v. NSA*,
    -- F. Supp. 3d --, 2015 WL 6460364 (D. Md. Oct. 23, 2015)...................... 7, 11, 12

*Wilkerson v. Shinseki*,
    606 F.3d 1256  (10th Cir. 2010) .................................................................. 23

*Will v. Michigan Dept. of State Police*,
    491 U.S. 58 (1989)..................................................................................... 19

*Williams v. Foremost Ins. Co.*,
    -- F. Supp. 3d --, 2015 WL 208998 (D.N.M. May 6, 2015) ..................................... 7

*Winsness v. Yocom*,
    433 F.3d 727 (10th Cir. 2006) ................................................................... 13, 14

*Woodruff v. Covington*,
    389 F.3d 1117 (10th Cir. 2004) .................................................................. 25

**STATUTES**

18 U.S.C. § 2511......................................................................................... 20

18 U.S.C. § 2712......................................................................................... 19

18 U.S.C. § 2520......................................................................................... 20

28 U.S.C. § 1346..................................................................................... 24, 26

28 U.S.C. § 2675......................................................................................... 25

28 U.S.C. § 2679......................................................................................... 25

5 U.S.C. § 552a...............................................................................20, 21, 22, 23

50 U.S.C. § 1801......................................................................................... 19

50 U.S.C. § 1809....................................................................................... 18, 19

**PAGE(S)**

50 U.S.C. § 1810 ........................................................................................................... 18, 19

50 U.S.C. § 1881a .............................................................................................................. 11

Utah Code Ann. § 76-9-403 ............................................................................................... 24

Utah Code Ann. § 76-9-406 ............................................................................................... 24

## <u>MOTION TO DISMISS</u>

Defendants National Security Agency ("NSA") and the Federal Bureau of Investigation ("FBI") (together, the "Government Defendants") hereby move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' Complaint for Constitutional, Common Law, and Statutory Violations, Seeking Damages, Declaratory, and Injunctive Relief (ECF Dkt. No. 1) (the "Complaint," or "Compl.") for lack of subject-matter jurisdiction.[1]

The specific grounds for this motion are:  (1) that Plaintiffs have not plausibly alleged their standing to seek declaratory and injunctive relief regarding claimed Government surveillance of telecommunications in and around Salt Lake City during the February 2002 Winter Olympic Games; (2) that Plaintiffs have not otherwise alleged the existence of a live case or controversy, within the meaning of Article III of the United States Constitution, to support a claim for prospective equitable relief regarding claimed Government surveillance in and around Salt Lake City in February 2002; (3) that Plaintiffs have not plausibly alleged their standing to seek declaratory and injunctive relief regarding "similar" surveillance in which they assert the Government is now engaging; (4) that Plaintiffs have not plausibly alleged their standing to seek monetary relief regarding the claimed Government surveillance; and (5) that Plaintiffs' claims for monetary relief are also barred by sovereign immunity.

The relevant facts, authority, and arguments supporting the Government Defendants' motion are set forth in the memorandum below.  For the reasons stated therein, the Government Defendants' motion should be granted and Plaintiffs' claims dismissed for lack of subject-matter jurisdiction.

---

[1] This motion is not brought on behalf of the individual defendants sued in their individual capacities:  George W. Bush, Richard B. Cheney, David Addington, and Michael V. Hayden, who are separately represented by a different set of Department of Justice attorneys.

## MEMORANDUM IN SUPPORT

## INTRODUCTION

The gravamen of the Complaint is that the Government Defendants allegedly conducted "blanket surveillance" of all e-mail, text-message, and telephone communications in the vicinity of Salt Lake City during the 2002 Winter Olympic Games, which ended on February 24, 2002, nearly 14 years ago. Plaintiffs maintain that the alleged surveillance was carried out in disregard of the First and Fourth Amendments, various federal statutes, and Utah law. They seek a declaration that these bygone activities violated their legal rights, an injunction prohibiting the Government Defendants from violating their claimed rights in the future, and money damages. The Complaint, however, does not adequately plead Plaintiffs' standing to sue for any of the relief they seek, or otherwise plead the existence of an Article III case or controversy. Their monetary claims are also barred by sovereign immunity. The Complaint thus presents no claim falling within the subject-matter jurisdiction of the federal courts, and must be dismissed.

First, Plaintiffs have not adequately pled that they suffered injury arising from the claimed surveillance, as necessary to establish their Article III standing. They maintain that the Government intercepted their communications during the 2002 Winter Olympics, based on a bare assertion that the Government intercepted "everyone['s]" communications in Salt Lake City while the Games were underway. But the Complaint contains no factual enhancement to support this allegation, and under the plausibility standard of pleading, it is not entitled to the presumption of truth. Moreover, the surveillance alleged in the Complaint ended almost 14 years ago. Plaintiffs have not alleged a real and immediate threat of present injury, as necessary to seek prospective injunctive relief, and a declaration that the Government violated their rights in the past would be merely advisory. Thus, even if Plaintiffs had adequately alleged past injury, they have not alleged a present case or controversy concerning prospective equitable relief.

2

Plaintiffs' monetary claims also lie far afield of the Court's subject-matter jurisdiction. Because Plaintiffs have not plausibly alleged that the Government surveilled or intercepted their communications in the first place, they lack standing to sue for damages just as they lack standing to seek equitable relief.  Even if the case were otherwise, their claims under 50 U.S.C. § 1810, and 18 U.S.C. § 2520, would remain barred by sovereign immunity, because neither statute authorizes suit against the United States.  Although the Privacy Act, also invoked by Plaintiffs, waives the Government's immunity for willful and intentional violations of the Act's prohibitions, Plaintiffs have not pled a damages claim within the scope of the Act's waiver.  And Plaintiffs' claim based on alleged violation of Utah's Communication Abuse Statute remains jurisdictionally barred, because they have not exhausted their administrative remedies, a pre-requisite to suit against the United States under the Federal Tort Claims Act.

For these reasons, explained in greater detail below, the Government Defendants' motion to dismiss should be granted, and the Complaint dismissed for lack of subject-matter jurisdiction.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs are six individuals who allege that they lived or worked in Salt Lake City during the Winter Olympic Games held there in February 2002.  Compl. ¶¶ 14–19.  They each contend that they communicated using landline telephones and e-mail in Salt Lake City during the Olympic Games, *id*; four allege that they also used cellular phones, *see id.* ¶¶ 14–17; and one alleges that he received text messages in Salt Lake City during the Games.  *Id.* ¶ 15.

Plaintiffs allege that during the Salt Lake City Olympic Games, from February 8, 2002 (the Opening Ceremony) through February 24, 2002 (the Closing Ceremony), the NSA and the FBI conducted "blanket surveillance . . . over everyone within designated geographic areas, including Salt Lake City, Utah, and the areas including and in the vicinity of all Olympic venues."  *Id.* ¶ 8.  They allege that the "blanket surveillance" included:  interception and "key-

word spotting analysis" of the contents of every e-mail or text message sent or received within the targeted geographic area; and information reflecting the time, length and telephone numbers involved in every telephone conversation involving any person within that area. *Id.* They also contend that "[i]n some instances, people or telephone numbers were targeted" and telephone calls involving such phone numbers were recorded and analyzed. *Id.*

Plaintiffs contend that the "blanket surveillance" ceased following the Games' Closing Ceremony on February 24, 2002, *id.*, but "believe" the communications and other data collected under the alleged program "are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future." *Id.* ¶ 9. Plaintiffs cite as the basis for their belief an alleged "practice and philosophy of the NSA to horde everything obtained through surveillance." *Id.*

Apart from their beliefs regarding the practices of the NSA, Plaintiffs identify no basis for their allegation that the Government conducted a surveillance program targeted at Salt Lake City during the 2002 Winter Olympic Games, and provide no detail regarding how that alleged program operated apart from asserting that the Government accomplished the "blanket surveillance" with the assistance of unidentified telecommunications providers. *Id.* ¶ 20. Plaintiffs allude to then-President Bush's authorization, in the aftermath of the September 11, 2001, attacks of a counter-terrorism intelligence program known as the President's Surveillance Program ("PSP"), *id.* ¶ 6, which involved NSA surveillance targeted at the international communications of persons believed to be agents of al Qai'da or its affiliated organizations, and bulk collection of non-content telephony and Internet communications information (referred to as "metadata"). Plaintiffs do not allege, however, that the claimed surveillance targeted at Salt Lake City during the 2002 Winter Olympic Games was conducted as part of the PSP. *See id.*

Plaintiffs assert thirteen claims for relief in their Complaint, ten of which (Counts II, IV-VII, and IX-XIII) are brought in whole or in part against the Government Defendants. Counts II

and IV assert violations of the First and Fourth Amendments, and violations of Article I, § 14 of the Utah Constitution. *Id.* ¶¶ 50–59, 67–73. Counts V-VII and IX-XIII advance statutory claims under the Foreign Intelligence Surveillance Act ("FISA"), the Stored Communications Act, the Wiretap Act, the Privacy Act, the Administrative Procedure Act, and the Utah Communication Abuse statute. *Id.* ¶¶ 74–103, 114–149.[2] In addition to declaratory and injunctive relief and damages, *see id.* ¶¶ 58-59, 73, 103, 124, 140, 147, Plaintiffs seek an inventory of their communications allegedly collected under the claimed surveillance program, and thereafter the destruction of all copies. *Id.* at 37 (Prayer for Relief, ¶ 2). Plaintiffs purport to sue on behalf of themselves, as well as a putative class of similarly situated individuals. *Id.* ¶ 28.

As discussed below, each of these claims must be dismissed for lack of subject-matter jurisdiction, because they do not plausibly allege the existence of a live case or controversy within the meaning of Article III of the Constitution, are barred by sovereign immunity, or both.

## ARGUMENT

## I.   LEGAL STANDARDS

### A.   Pleading Standards Under *Twombly* and *Iqbal*

To withstand a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are not sufficient. *Iqbal*, 556 U.S. at 678. Rather, a court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679;

---

[2] Counts I, III, and VIII are brought exclusively against the individual defendants, and are not addressed in this motion.

*see also id.* at 680–81; *Kansas Penn Gaming*, 656 F.3d at 1214.  If the well-pleaded allegations "do not permit the court to infer more than the mere possibility of misconduct," then a complaint should be dismissed.  *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012).

### B.     The Requirements of Standing

"The judicial power of the United States . . . is not an unconditioned authority to determine the [validity] of legislative or executive acts," but is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State., Inc.*, 454 U.S. 464, 471 (1982).  A demonstration by plaintiffs of their standing to sue "is an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004), and as such is a threshold jurisdictional requirement, "determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975).  The Supreme Court emphasized in *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138 (2013) that the standing inquiry must be "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government," particularly "in the fields of intelligence gathering and foreign affairs," "was unconstitutional."  *Id*. at 1147.  *See also Schaffer v. Clinton,* 240 F.3d 878, 882-83 (10th Cir. 2001); *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998).

To establish Article III standing, Plaintiffs must seek relief from an injury that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  *Amnesty Int'l*, 133 S. Ct. at 1147.  The alleged injury must be "real and immediate," not "conjectural or hypothetical," *State of Utah*, 137 F.3d at 1212 (citation omitted); speculative claims of injury will not support Article III standing.  *Amnesty Int'l*, 133 S. Ct. at 1150.  So too, "[p]ast exposure to illegal conduct does not in itself show a

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Dias v. City and County of Denver*, 567 F.3d 1169, 1176-77 (10th Cir. 2009) (citing, *inter alia, City of Los Angeles v. Lyons*, 461 U.S. 95, 101-05 (1983)).

As the "part[ies] invok[ing] federal jurisdiction," Plaintiffs "bear[ ]the burden of establishing the[ ] elements" of standing. *State of Utah*, 137 F.3d at 1202; *see also Am. Forest & Paper Ass'n v. EPA* ("*AFPA*"), 154 F.3d 1155, 1159 (10th Cir. 1998). "Plaintiff[s] must support each element 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Loving v. Boren*, 133 F.3d 771, 772 (10th Cir. 1998) (quoting *Defenders of Wildlife*, 504 U.S. at 561). Thus, at the pleading stage "Plaintiff[s] must plead the elements of standing in accordance with [*Twombly*] and [*Iqbal*]," *Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1241 (D.N.M. 2015), and "plausibly allege that [they] ha[ve] standing." *Fifth Third Bank v. Brooke Holdings, Inc.*, 2011 WL 1337093, at *1 (D. Kan. Apr. 7, 2011) (unpublished).

Although the standing inquiry is not "a mechanical exercise," it may "be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." *Allen v. Wright*, 468 U.S. 737, 751–52 (1984). The single case in the Supreme Court's standing jurisprudence most comparable to this one is *Amnesty International*, *supra*, the leading case on the standing of litigants seeking to challenge alleged Government surveillance activities. *See Wikimedia Found. v. NSA*, -- F. Supp. 3d --, 2015 WL 6460364, at *6 (D. Md. Oct. 23, 2015) (publication pending), *appeal docketed*, No. 15-2560 (4th Cir. Dec. 18, 2015).

In *Amnesty International*, various human-rights, labor, and media organizations challenged the constitutionality of the FISA Amendments Act of 2008, which expanded the Government's authority to intercept the communications of non-U.S. persons located abroad. 133 S. Ct. at 1144. The plaintiff organizations "fail[ed] to offer any evidence that their communications ha[d] been monitored" under the challenged statute, and instead claimed it was

likely that communications of theirs would be acquired because they regularly engaged in communications with persons, believed to be associated with terrorist organizations, who were likely targets of Government surveillance. *See id.* at 1145-46, 1148.  The Supreme Court held that these assertions were insufficient to confer standing, because it was "speculative whether the Government w[ould] imminently target communications to which [the plaintiffs] [were] parties." *Id.* at 1148.  The Court explained that the plaintiffs' claim of injury rested on a "speculative chain of possibilities," including "that the Government [would] target the communications of non-U.S. persons with whom they communicate," that the Government would succeed in intercepting those communications, and that the plaintiffs would be parties to the particular communications the Government intercepts.  *Id.* at 1148-50.  *Amnesty International* thus establishes that speculation concerning the nature or reach of alleged Government intelligence-gathering activities is insufficient to demonstrate a would-be litigant's standing, and together with *Twombly* and *Iqbal*, requires that Plaintiffs' claims be dismissed.

## II.     THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF.

Counts II, IV, VII, IX, XII, and XIII of the Complaint seek a declaration that the Government Defendants have violated Plaintiffs' claimed legal rights, and an injunction prohibiting the Government Defendants from violating those rights.  Compl. ¶¶ 58, 59, 73, 103, 140, 147.  These claims for declaratory and injunctive relief must be dismissed due to Plaintiffs' failure to plausibly allege their standing, or a live case or controversy regarding such relief.

### A.     Plaintiffs Have Not Plausibly Alleged That Their Communications Were Subject to Government Surveillance During the Winter Olympics of 2002.

Like the plaintiffs in *Amnesty International,* Plaintiffs here assert no facts directly establishing that the Government targeted their communications for surveillance, or that particular communications to which they were parties were intercepted.  *See* 133 S. Ct. at 1148.

8

Instead, Plaintiffs sweepingly assert that during the 2002 Winter Olympics the NSA and the FBI conducted "blanket surveillance . . . over everyone" in and around Salt Lake City, including "every text message," "every email," and time, duration, and dialing information about "every telephone [call]" sent from or received "within the areas subjected to the blanket surveillance." Compl. ¶ 8. They allege further that they engaged in various kinds of telecommunications in those areas at that time, *see* Compl. ¶¶ 14-19, "utiliz[ing] the services of one or more . . . providers through which the NSA and FBI" conducted the surveillance. *Id.* ¶ 20. Thus Plaintiffs claim to be "among the injured," *AFPA*, 154 F.3d at 1159-60 (quoting *Defenders of Wildlife*, 504 U.S. at 563), who have standing to challenge the alleged surveillance.[3]

These allegations—a few sentences in a 149-paragraph complaint—are insufficient to render the interception and review of Plaintiffs' communications "plausible." *Twombly*, 550 U.S. at 556. Plaintiffs cite no official Government documents or official statements by Government officials acknowledging that the Government targeted communications in Salt Lake City for covert surveillance during the 2002 Winter Olympics, much less that any such surveillance encompassed "everyone['s]" e-mails, text messages, and telephone calls. Instead, their allegations that in 2002 the Government conducted "blanket surveillance" of "everyone['s]" communications in Salt Lake City are simply "bare assertions" unaccompanied by "factual matter" that would raise them "above the speculative level"; as such those allegations are neither entitled to the presumption of truth nor sufficient, therefore, to state a plausible claim of Article III injury. *Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 555. That is especially so

---

[3] Plaintiffs also allege, in a single sentence, that "[i]n some instances, people or telephone numbers were targeted by the NSA and FBI and telephone conversations involving such targeted telephone numbers were illegally and unconstitutionally recorded and subjected to analysis, without a warrant and without probable cause." Compl. ¶ 8. This conclusory allegation cannot support their standing, however, because Plaintiffs do not allege (let alone *plausibly* allege) that they were among the subjects of such targeted surveillance.

insofar as Plaintiffs would have this Court pass on the constitutionality of alleged Government activities in the realm of foreign intelligence.  *Amnesty Int'l*, 133 S. Ct. at 1147-50.[4]

The Complaint's reference to the PSP, the counter-terrorism intelligence program authorized by President George W. Bush, Compl. ¶ 6; *see supra* at 4, also provides no support for Plaintiffs' standing.  According to Plaintiffs, under this program the President directed the NSA "to engage in widespread . . . surveillance of email, text, Internet, and telephone communications in the United States."  Compl. ¶ 6.  But, even assuming that the claimed 2002 surveillance in Salt Lake City was conducted as part of the PSP (which the Complaint does not allege, *see id.* ¶ 8), a nebulous claim that Government surveillance "in the United States" was "widespread," *id.* ¶ 6, without any "further factual enhancement" concretely describing its scope or scale, "stops short,"—far short—of plausibly establishing that in February 2002 "everyone['s]" communications in and around Salt Lake City, including Plaintiffs', were intercepted and analyzed by the Government.  *See Twombly*, 550 U.S. at 556-57.

Plaintiffs' scant allegations of injury are also on par with allegations that the Tenth Circuit has consistently rejected as too conclusory to support plausible claims for relief.  *See, e.g.*, *Kansas Penn Gaming*, 656 F.3d at 1220 (allegation that properties of landowners who were not subject to regulatory enforcement action were in comparable condition to plaintiff's property too conclusory to state plausible equal-protection claim); *id.* at 1221 (allegation that second defendant acted in concert with first defendant to target plaintiff for unwarranted regulatory

---

[4]  One purpose of the plausibility requirement is "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming*, 656 F.3d at 1215; *see also Iqbal*, 556 U.S. at 678-79 (plausibility requirement ensures that a plaintiff cannot "unlock the doors of discovery . . . armed with nothing more than conclusions").  So too, a court should not allow a complaint that fails to state a plausible claim for relief to serve as the springboard for attempted discovery into the Government's sources and methods of foreign-intelligence gathering, an effort that could lead to harmful disclosures of classified national-security information.  *Cf. Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1088-89 (9th Cir. 2010).

action too conclusory to state claim against second defendant); *Cohon v. N.M. Dep't of Health*, 646 F.3d 717, 727 (10th Cir. 2011) (Medicaid recipient's allegation that State's calculation of her "individual budget allotment" for residential support services was "money-based" and not needs-based too conclusory to state plausible claim under the Americans with Disabilities Act ).[5]

Indeed, the Complaint here contains much less factual matter to support a claim of injury than the jurisdictional allegations found wanting in *Wikimedia*, *supra*. The plaintiffs in that case challenged an NSA surveillance program known as Upstream collection.[6]  Much like Plaintiffs here, the *Wikimedia* plaintiffs alleged that the NSA must have intercepted and reviewed their international online communications based on a claim that the NSA intercepts and reviews "substantially all" such communications sent or received in the United States.  2015 WL 6460364, at *3, *4, *8.  In support of this assertion, the *Wikimedia* plaintiffs advanced a "series of allegations" purporting to describe both the technological features of Upstream surveillance enabling the NSA to intercept and review substantially all online communications carried on U.S. telecommunications networks, and the NSA's strategic incentives to do so.  *Id*. at *8-9.

The *Wikimedia* court held, however, that these allegations were insufficient to raise the "'bare assertion'" that the NSA intercepted and reviewed substantially all international online communications carried in the U.S., including the plaintiffs', "'above a speculative level,'" because they were based on supposition about how "Upstream surveillance *must* operate in order

---

[5]  *See also Al-Owhali*, 687 F.3d at 1242-43 (allegation of secret prison policy banning inmate from receiving a particular book rejected as too conclusory); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (same, where Title VII plaintiff alleged that employer subjected her to false criticism and a "false investigation").

[6]  Upstream collection is conducted pursuant to § 702 of FISA, 50 U.S.C. § 1881a, and involves the targeted acquisition of communications of non-U.S. persons, located abroad, as those communications transit the Internet "backbone" networks of U.S. telecommunications carriers.  *See Wikimedia*, 2015 WL 6460364, at *3.

to achieve" the Government's alleged goals.  *Id.* at *10 (quoting *Iqbal*, 556 U.S. at 681).[7]  Here, Plaintiffs offer no supporting allegations, not even speculation about the NSA's capabilities and incentives, to enhance their bare assertion that the NSA intercepted and reviewed "everyone['s]" telecommunications in and around Salt Lake City during the 2002 Winter Olympics.

*A fortiori*, therefore, Plaintiffs here have not plausibly alleged interception and review of their communications by the Government, as necessary to establish Article III injury.  Plaintiffs cannot hide sheer speculation about the Government's intelligence-collection activities behind a façade of certainty constructed out of a single, bare allegation that the Government intercepted and reviewed "everyone['s]" communications.  *See Wikimedia*, 2015 WL 6460364, at *13 (speculative claims of injury cannot be dressed up in clothing of certainty that itself lacks any basis).  *Twombly*, *Iqbal*, and *Amnesty International* all require more.

> **B.    Even if Plaintiffs Had Plausibly Alleged that their Communications Were Subjected to Past Surveillance, Their Claims for Declaratory and Injunctive Relief Do Not Satisfy the Case-or-Controversy Requirement of Article III.**

Even if Plaintiffs had plausibly alleged interception of their communications during the 2002 Winter Olympic Games, their claims for declaratory and injunctive relief, insofar as they are based on Government surveillance that allegedly occurred almost fourteen years ago, still would not present a controversy within the Court's Article III jurisdiction.  For this reason, too, Counts II, IV, VII, IX, XII and XIII of the Complaint must be dismissed.

First, to satisfy the case-or-controversy requirement of Article III, plaintiffs seeking prospective relief such as an injunction "must be suffering a continuing injury or be under a real

---

[7]    In reaching this conclusion, the court in *Wikimedia* observed that the Supreme Court in *Amnesty International*, and the D.C. Circuit in *Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015), had rejected similar arguments that standing to challenge NSA intelligence activities could be based on the presumed extent of the Government's capacity and motivation to collect communications information.  2005 WL 6460364, at *10 & nn.17-18 (citing *Amnesty Int'l*, 133 S. Ct. at 1147-50; *id.* at 1159 (Breyer, J., dissenting); and *Klayman*, 800 F.3d at 566-67 (Williams, J.)).

and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). While some courts have framed the question of the availability of prospective equitable relief premised upon past wrongs as one of mootness, *see Moore v. Trapp*, 986 F.2d 1428 (10th Cir. 1992) (plaintiff, who filed a claim for equitable relief after he was no longer in custody of defendant, did not show "a real and immediate threat of injury" and accordingly his "claim for equitable relief was moot at the time he filed suit"), others have addressed it through the lens of standing, *see, e.g.*, *Winsness v. Yocom*, 433 F.3d 727, 735 (10th Cir. 2006) ("[T]he fact of past injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury."). *See also Lyons*, 461 U.S. at 110 (distinguishing question of mootness from whether a plaintiff "meets the pre-conditions for asserting an injunctive claim in a federal forum").

Regardless of the jurisdictional framework applied, Plaintiffs have not established an Article III case or controversy concerning prospective injunctive relief. According to Plaintiffs' own allegations, the claimed Government surveillance in Salt Lake City during the 2002 Winter Olympics, if it occurred at all, ceased on February 24, 2002, Compl. ¶ 8, over thirteen years before Plaintiffs filed suit in August 2015. In the jurisdictional language of *Trapp*, Plaintiffs' claims for prospective relief regarding the alleged surveillance are moot. Similarly, viewed in terms of standing, the alleged wrongdoing as to which Plaintiffs seek prospective equitable relief occurred almost fourteen years ago; "[p]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102-03 (1983) (citation omitted); *see also Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Winsness*, 433 F.3d at 735; *F.E.R. v. Valdez*, 58 F.3d 1530, 1534 (10th Cir. 1995) ("[T]o establish standing the [plaintiffs] must demonstrate a sufficient likelihood that they will again be harmed in a similar manner."). Plaintiffs' claims

13

surrounding the alleged surveillance of communications in Salt Lake City during the 2002 Winter Olympics, even if accurate, allege only a "past wrong"; they have not plausibly claimed that the alleged surveillance during the 2002 Olympics in any sense constitutes a real or immediate threat of injury *today*.  *See Winsness*, 433 F.3d at 735; *see also* Section II.C, *infra*.

Second, by the same token, Plaintiffs cannot obtain declaratory relief regarding the alleged Government surveillance during the 2002 Winter Olympics.  *See* Compl. ¶¶ 2, 58, 73, 103, 140, 147.  The purported surveillance, if it occurred at all, ceased nearly 14 years ago. Because "there is no reasonable expectation that the wrong will be repeated," it is "impossible for the court to grant any effectual relief."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). Under such circumstances, "any opinion as to the legality of the challenged action would be advisory," and thus improper, *id.*, because the "relief" would have no effect whatsoever on the current relationship among the parties, where there is no current, immediate wrong to be remedied.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109-10 (10th Cir. 2010) ("[W]hat makes a declaratory judgment . . . a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.").  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).[8]

---

[8]   As discussed below, Plaintiffs also have not demonstrated their standing to seek damages against the Government Defendants, and their monetary claims are barred in any event by sovereign immunity.  *See infra* § III.  But even if the Court had subject-matter jurisdiction over Plaintiffs' monetary claims, the presence of a case or controversy involving a claim for damages is not alone sufficient to create an Article III case or controversy for equitable relief. *See Lyons*, 461 U.S. at 105 ("That Lyons may have been illegally choked by the police [previously], while presumably affording Lyons standing to claim damages … does nothing to establish a real and immediate threat that he would again be stopped … by an officer or officers who would illegally choke him," as would be necessary to establish a case or controversy for equitable relief); *see also Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)  ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").

Third, Plaintiffs' prayer for an inventory, and then destruction, of their communications that were allegedly "seized" in violation of their rights, Compl., Prayer for Relief ¶ 2, cannot rescue their claims for declaratory and injunctive relief. Again, even assuming that Plaintiffs had plausibly alleged interception of their communications in the first place, their stated "belie[f]" that the NSA continues, fourteen years after the fact, to "horde" all the communications the Government allegedly intercepted in Salt Lake City in February 2002. *id.* ¶ 9, is itself too conclusory, and lacking in factual support, to give rise to a claim that the NSA still retains copies of Plaintiffs' communications. Therefore the Complaint fails to plead a plausible claim of continuing injury arising from alleged retention of Plaintiffs' communications.[9]

Accordingly, Plaintiffs' allegations are insufficient to meet the case-or-controversy threshold necessary for obtaining injunctive or declaratory relief. Whether Plaintiffs' claims are viewed through the lens of mootness, or standing, this Court lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims for injunctive and declaratory relief concerning alleged Government surveillance that occurred in Salt Lake City in 2002.

### C.    Plaintiffs Have Not Plausibly Alleged Continuing Government Surveillance Targeted at Telecommunications in the Salt Lake City Region.

Plaintiffs also allege in passing, "[o]n information and belief," that the Government Defendants "are now engaging in . . . the above-described and similar violations of Plaintiffs'. . . constitutional rights." Compl. ¶ 57; *see also id.* ¶¶ 72, 123, 146. This bald assertion is also too conclusory to plausibly establish Plaintiffs' standing to seek declaratory and injunctive relief.

---

[9] That Plaintiffs may maintain an emotional stake in the outcome of this litigation is of no consequence. *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (*per curiam*) (the case-or-controversy requirement is not met when the plaintiff's interest is the emotional satisfaction from a favorable ruling); *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007) ("The emotional consequences . . . simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury ….") (citation omitted); *F.E.R.*, 58 F.3d at 1534 ("[A]bstract injury is not enough.") (citing *Lyons*, 461 U.S. at 109).

The "above-described" conduct in which Plaintiffs allege the Government Defendants are still engaging is the claimed "blanket surveillance" of e-mail, text-message and telephone communications in the Salt Lake City region during the Winter Olympic Games held in February 2002. That allegation is repeated four times in the Complaint, but is unaccompanied by a single word of factual support. *See* Compl. ¶¶ 57, 72, 123, 146. Thus, Plaintiffs' "'naked assertion'" that the Government continues to engage in electronic surveillance targeted at Salt Lake City, nearly fourteen years after the 2002 Winter Olympic Games concluded, is "devoid of 'further factual enhancement'" and as such does not suffice to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Indeed, it epitomizes the kind of "unadorned, the-defendant-unlawfully-harmed-me [or is-harming-me] allegation" discredited in *Iqbal*, 556 U.S. at 678, and its conclusory nature disentitles it to the presumption of truth. *Id.* at 679, 681.

That being so, the Complaint contains no well-pleaded allegations from which it could plausibly be concluded that Plaintiffs are suffering injury attributable to ongoing surveillance activities conducted by the Government Defendants in and around Salt Lake City.[10] For this reason as well, Plaintiffs lack standing to seek declaratory or injunctive relief under Counts II, IV, VII, IX, XII, and XIII of the Complaint. *See Dias*, 567 F.3d at 1177 ("Only by alleging a continuing injury can a plaintiff seeking prospective relief establish an injury in fact.").

---

[10] To the extent *Riggs v. City of Albuquerque*, 916 F.2d 582 (10th Cir. 1990), might be read to support a contrary conclusion, the reasoning of that case is no longer tenable following *Iqbal* and *Twombly*. The court in *Riggs* accepted the plaintiffs' allegations of continuing injury because at that time "a ruling on a motion to dismiss for lack of standing require[d] the court to construe all material allegations of the complaint as true." *Id.* at 586. That understanding, however, arose from the statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly* "retire[d]" *Conley's* "no set of facts" language, 550 U.S. at 560-63, and today a court ruling on a motion to dismiss extends the presumption of truth only to the well-pleaded, non-conclusory allegations of a complaint, *Iqbal*, 556 U.S. at 679, 680-81.

### III.   THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS FOR DAMAGES.

In Counts V, VI, X, and XI of the Complaint, Plaintiffs assert claims for damages against the Government Defendants for the alleged interception, retention, and disclosure of their e-mail, text-message and telephone communications, under various federal and state laws.  Like Plaintiffs' claims for declaratory and injunctive relief, these monetary claims are jurisdictionally barred.  Plaintiffs lack standing to assert their monetary claims against the Government Defendants because, as with their claims for declaratory and injunctive relief claims, they have not plausibly alleged interception, retention, or disclosure of their communications as a result of claimed Government surveillance targeted at Salt Lake City in 2002, or today.  *See supra* § II.[11] But even if Plaintiffs had established their standing to seek monetary relief, their claims against the Government Defendants are barred, for the reasons explained below, by sovereign immunity.

### A.   Plaintiffs' Claims for Money Damages Under 50 U.S.C. § 1810 and 18 U.S.C. § 2520 Are Barred by Sovereign Immunity Because Neither Statute Authorizes Suit Against the United States.

Counts V and VI of the Complaint respectively seek money damages under 50 U.S.C. § 1810 and 18 U.S.C. § 2520 for the alleged unlawful surveillance and interception of Plaintiffs' electronic communications.  Compl. ¶¶ 74-91.  These statutes, however, do not authorize suit against the United States or its agencies.  Counts V and VI, therefore, insofar as they are pled against the NSA and the FBI, are barred by sovereign immunity and must be dismissed.

"The concept of sovereign immunity means that [neither] the United States [nor its agencies] can[ ] be sued without its consent."  *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010); *Normandy Apts., Ltd. v. HUD*, 554 F.3d 1290, 1295 (10th Cir.

---

[11] That same analysis applies equally to Plaintiffs' damages claims against the four individual defendants in their personal capacities.  Plaintiffs have not plausibly alleged an injury establishing their standing to seek monetary relief from any of the defendants to this case.  Therefore, the Court should dismiss Plaintiffs' damages claims against the individual-capacity defendants as well as the Government Defendants.

2009) ("Sovereign immunity generally shields the United States [and] its agencies . . . from suit."). "Courts lack subject matter jurisdiction over a claim against the United States for which sovereign immunity has not been waived." *Iowa Tribe*, 607 F.3d at 1232. "Consequently, [P]laintiffs may not proceed [with Counts V and VI] unless they can establish that the United States has waived its sovereign immunity with respect to [those] claim[s]." *Id.* As the Supreme Court has repeatedly stressed, a waiver of sovereign immunity may be found only where Congress has "unequivocally expressed" its intent to waive the Government's immunity "in statutory text." *FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012); *Governor of Kan. v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008). "If waiver is not unequivocal from the text, the [G]overnment retains its sovereign immunity." *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996); *see also Cooper*, 132 S. Ct. at 1448.

Section 1810, a provision of FISA, provides:

An aggrieved person . . . who has been subjected to an electronic surveillance . . . *in violation of section 1809 of this title* [Title 50, U.S.C.] shall have a cause of action against any *person* who committed such violation and shall be entitled to recover . . . actual [and] punitive damages [and] reasonable attorney's fees and other . . . costs . . . [emphasis added].

50 U.S.C. § 1810. As courts have held, this provision does not waive the Government's sovereign immunity, for several reasons. First, § 1810 does not expressly state that a person aggrieved by unlawful surveillance shall have a cause of action against the United States. Rather, it provides an aggrieved person a cause of action for damages "against any person" who committed a violation of 50 U.S.C. § 1809.[12] It is a "longstanding" presumption of statutory interpretation that the term "'person' does not include the sovereign," a presumption that "may be disregarded only upon some affirmative showing of statutory intent to the contrary." *Vermont*

---

[12] In brief, 50 U.S.C. § 1809 makes it an offense to engage in electronic surveillance under color of law, or to use or disclose the information obtained, except as authorized by FISA or chapters 119, 121, or 206 of Title 18 of the U.S. Code.

*Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780-81 (2000); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) ("[I]n common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.") (alterations in original).

Second, far from affirmatively showing a statutory intent to include the United States within the term "person," FISA expressly provides otherwise. For purposes of FISA, a "person" is defined as "any individual, including any officer or employee of the Federal Government, or any group, entity, association, corporation, or foreign power." 50 U.S.C. § 1801. As the Ninth Circuit observed in *Al-Haramain v. Obama*, 705 F.3d 845 (9th Cir. 2012), "[g]laringly missing" from FISA's definition of "person" "is the 'United States.'" *Id.* at 851. Thus, as held in *Al-Haramain*, § 1801 confirms that the term "person" as used in § 1810 does not include the United States, and that § 1810 effectuates no waiver of sovereign immunity. *Id*.

Third, as the court further reasoned in *Al-Haramain*, Congress knows how to waive sovereign immunity expressly when it intends to do so, as demonstrated most aptly by 18 U.S.C. § 2712. Section 2712 unambiguously authorizes suits against "the United States to recover money damages" for violations of specified statutory restrictions on the use of information acquired under FISA, but conspicuously not including violations of § 1809. It is clear in light of § 2712 that Congress could and did waive sovereign immunity with respect to violations of FISA for which it wished to render the United States liable, but deliberately did not do so in the case of § 1810. *Al-Haramain,* 705 F.3d at 851-53. *See also Fazaga v. FBI*, 885 F. Supp. 2d 978, 983-84 (C.D. Cal. 2012), *appeal pending*, No. 12-56867 (9th Cir.)

It is clearer still that Plaintiffs' claim under 18 U.S.C. § 2520 is also barred by sovereign immunity. Plaintiffs seek damages against the Government Defendants under § 2520 for alleged

19

violations of various provisions of 18 U.S.C. § 2511(1).[13]  Section 2520 provides a cause of

action for persons whose communications are intercepted, used, or disclosed in violation of

§ 2511 (among other statutes), but not against the United States.  Section 2520 states:

> Except as provided in section 2511(a)(ii), any person whose wire, oral, or
> electronic communication is intercepted, disclosed, or intentionally used in
> violation of this chapter [Chapter 119, Title 18 U.S.C.] may in a civil action
> recover from the person or entity, *other than the United States*, which engaged in
> that violation such relief as may be appropriate [emphasis added].

18 U.S.C. § 2520.  Thus, altogether contrary to an unequivocal waiver of sovereign immunity,

*see Cooper*, 132 S. Ct. at 1448; *Kempthorne*, 516 F.3d at 841, § 2520 expressly *excludes* the

United States from liability under its terms.  Accordingly, Count VI of the Complaint is also

barred by sovereign immunity, and must be dismissed.

###### B.      Plaintiffs' Privacy Act Claim Must Also Be Dismissed.

Count X of the Complaint purports to assert a claim under the Privacy Act, 5 U.S.C.

§ 552a(e)(1), which requires "each agency that maintains a system of records" to "maintain in its

records only such information about an individual as is relevant and necessary to accomplish a

purpose of the agency required to be accomplished by statute or by executive order of the

President."  *See* Compl. ¶ 126 (quoting same).  For the alleged violation of this provision,

Plaintiffs seek a recovery of damages, *see id.* ¶ 132, which the Privacy Act permits where a court

determines that an agency's violation of the Act was "intentional or willful," and "*actual*

damages [were] sustained by the [plaintiff] as a result."  5 U.S.C. § 552a(g)(4) (emphasis added).

The civil remedies provisions of the Privacy Act constitute a waiver of sovereign immunity, the

terms of which must be interpreted narrowly.  *Cooper*, 132 S. Ct. at 1448.

---

[13]  Specifically, Plaintiffs purport to allege violations of 18 U.S.C. § 2511(1)(a),
§ 2511(1)(d), and § 2511(3)(a), Compl. ¶¶ 83-85, which generally prohibit, except as otherwise
provided by law, the interception of any wire, oral, or electronic communication, use of the
contents of an intercepted communication, and disclosure by an electronic communications
service provider of the contents of any communication carried by that provider to any person or
entity other than the intended recipient.

Taken together, these provisions include five elements that must be pled to state a claim within the scope of the Privacy Act's waiver.  Specifically, Plaintiffs must plead, as to each, FBI and NSA:  that (1) the agency "maintains a system of records" (2) containing information about Plaintiffs (3) that is not "relevant and necessary to accomplish a purpose of the agency"; (4) that the agency maintains such information "intentionally or willfully"; and (5) that as a result of the maintenance of this information Plaintiffs have sustained actual damages.  *See* 5 U.S.C. §§ 552a(e)(1), 552a(g)(4).  Even if Plaintiffs had adequately alleged that the NSA and FBI collected or maintained information about their communications (which they have not), their Privacy Act claim must still be dismissed because they have failed to adequately plead the elements necessary to come within the Act's waiver of the Government's immunity from suit.

**1.    The Complaint is silent as to the first and fifth elements necessary to a Privacy Act maintenance claim.**

Plaintiffs ignore entirely the first element listed above.  Section 552a(e)(1) applies only to records maintained within an agency "system of records."  *Gerlich v. U.S. Dep't of Justice*, 711 F.3d 161, 167 (D.C. Cir. 2013); *Maydak v. United States*, 363 F.3d 512, 517–19 (D.C. Cir. 2004).  "[T]he term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).  Moreover, the *capability* to retrieve information in this manner is insufficient; an agency must actually retrieve information using a personal identifier *in practice* for a collection of records to be deemed a "system of records" under the Privacy Act.  *Henke v. United States Dep't of Commerce*, 83 F.3d 1453, 1459–61 (D.C. Cir. 1996); *see also Pippinger v. Rubin*, 129 F.3d 519, 526 (10th Cir. 1997) (discussing *Henke* as "instructive" in "determining the meaning of a 'system of records' under 5 U.S.C. § 552a(a)(5)"); *Marquez v. Johnson*, 2012 WL 6618238, at *10 (D. Colo. Dec. 19, 2012) (unpublished), *aff'd* 545 F. App'x 735 (10th Cir. Oct. 18, 2013).

21

Plaintiffs ignore this requirement altogether; they have not alleged that the FBI or the NSA maintains communications of theirs in a Privacy Act system of records, much less that either agency, in practice, retrieves information from that system based on personal identifiers. *See* Compl. ¶¶ 9, 125-132. This omission is fatal to Plaintiffs' Privacy Act claim.

Plaintiffs also are silent as to the fifth element listed above; they do not claim that they have sustained actual damages due to the purported Privacy Act violation. The Supreme Court emphasized in *Doe v Chao*, 540 U.S. 614 (2004), that an individual seeking monetary relief under the Privacy Act must establish "actual damages," 5 U.S.C. § 552a(g)(4). *See Chao*, 540 U.S. at 620–623. "[A]ctual damages" refers only to "pecuniary or material" harm; the Act's waiver of sovereign immunity does not extend to damages for mental or emotional distress. *See Cooper*, 132 S. Ct. at 1446. Here, Plaintiffs have not even attempted to plead that they suffered any pecuniary or material harm as a result of the Government's alleged conduct.[14] For this reason, too, the Court lacks jurisdiction over Plaintiffs' Privacy Act claim.

### 2. As to the remaining three elements of a Privacy Act claim, Plaintiffs offer no more than speculation or legal conclusions.

Where Plaintiffs have not wholly ignored the elements of a Privacy Act claim, they have pleaded only "labels and conclusions," offering no more than "naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Such conclusory allegations are insufficient to survive a motion to dismiss.

First, Plaintiffs have not adequately pled that the FBI and NSA are maintaining records *about them*, as they must do to fulfill the second element of a Privacy Act claim. *See* 5 U.S.C. § 552a(e)(1). As discussed *supra*, at 15, even if Plaintiffs had adequately alleged that their

---

[14] Indeed, Plaintiffs have not pled that the alleged maintenance of records about them had any effect on them at all. *See* Compl. (generally). Plaintiffs have thus also failed to satisfy the Privacy Act's requirement that a plaintiff establish that the alleged violation had "an adverse effect" on the plaintiff. 5 U.S.C. § 552a(g)(1)(D); *Pippinger*, 129 F.3d at 528, 532 ("Privacy Act plaintiff must be adversely affected by the violation in order to state a cause of action").

communications during the 2002 Winter Olympics were intercepted, they have not plausibly alleged that the NSA thereafter retained them.  Hence, the Complaint contains no well-pleaded allegations that raise the maintenance claim above the speculative level.  *Iqbal*, 556 U.S. at 681.

Similarly, with respect to the third element that Plaintiffs would need to plead under § 552a(e)(1)—that the information maintained by the FBI and NSA is not "relevant and necessary to accomplish a purpose of [those] agenc[ies]"—Plaintiffs offer little more than legal conclusions.  *See* Compl. ¶¶ 128–131.  Specifically, Plaintiffs quote text from the agencies' respective websites regarding their missions, *id.* ¶¶ 128–29, and then conclude that "NSA and FBI maintain in their records illegally obtained information about Plaintiffs individually that is neither relevant nor necessary to accomplish the purpose of the NSA or the FBI," *id.* at ¶ 131. Plaintiffs make no attempt at all to explain why the information allegedly maintained by the agencies is not relevant or necessary to the agencies' national-security missions, as Plaintiffs contend.  *See id.* (generally).[15]

Finally, with regard to the fourth element, Plaintiffs likewise offer nothing more than a "formulaic recitation" that the NSA and the FBI "intentionally and willfully" acted to obtain the contents of their communications from their telecommunications service providers.  *Id.* ¶ 130; *see Iqbal*, 556 U.S. at 678.  Yet, to be considered "intentional or willful" under the Privacy Act, an action must be "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful, or conduct committed without grounds for believing it to be lawful or action flagrantly disregarding others' rights under the [Privacy Act]."  *Marquez*, 545 F. App'x at 740 (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010)); *Pippinger*,

---

[15] Plaintiffs' silence on this element is particularly problematic because they are asking the Court to intervene and to substitute its judgment for that of the NSA and the FBI in an area where "courts traditionally have been reluctant to intrude," *Merida Delgado v. Gonzales*, 428 F.3d 916, 920 (10th Cir. 2005) (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).

23

129 F.3d at 530.  The Complaint contains no factual matter plausibly suggesting, even if the NSA and the FBI have maintained information about Plaintiffs' communications, that either agency has done so in knowing disregard of their rights under the Privacy Act.  Hence the allegation that these agencies "intentionally and willfully" violated Plaintiffs' rights under the Act is "not entitled to be assumed true," and must be rejected.  *Iqbal*, 556 U.S. at 680-81 (rejecting conclusory allegations regarding mental states of officials alleged to have authorized unlawful Government conduct).

For all of these reasons, Plaintiffs' Privacy Act claim must be dismissed.

### C.    Plaintiffs' Damages Claim for Alleged Violation of Utah's Communication Abuse Statute Is Also Barred by Sovereign Immunity.

Count XI purports to be a state-law tort claim for "communication abuse."  Under Utah law, a person commits "communication abuse" when that person "intercept[s], without the consent of the sender or receiver, a message by telephone, telegraph, letter, or other means of communicating privately," or "[d]ivulges without consent of the sender or receiver the existence or contents of any such message . . . ."  Utah Code Ann. § 76-9-403.  Communication abuse is "an invasion of privacy tort" under Utah law.  *Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1522-23 & n.2 (D. Utah 1997); *see* Utah Code Ann. § 76-9-406.  The Court should dismiss Count XI (insofar as it is raised against the NSA and the FBI) for two reasons.

First, Count XI is a state-law claim that must be brought—if at all—against the United States, not federal agencies, and Plaintiffs' failure to name the United States as the proper party-defendant is fatal to the Court's jurisdiction over the claim.  Tort claims based on state law must be brought against the Government under the Federal Tort Claims Act ("FTCA").  The FTCA "waive[s]" the "sovereign immunity" of the United States "over a certain category of claims" that is "cognizable under section [28 U.S.C.] section 1346(b)," *FDIC v. Meyer*, 510 U.S. 471, 474, 477 (1994), including state-law tort claims.  *See* 28 U.S.C. § 1346(b); *id.* §§ 2671-2680

24

(FTCA provisions); *Sosa v. Alvarez–Machain,* 542 U.S. 692, 706 n.4 (2004) (FTCA passed with "garden-variety torts in mind"). The FTCA is the "exclusive" and "sole remedy" for such claims, *FDIC*, 510 U.S. at 474; *Woodruff v. Covington*, 389 F.3d 1117, 1125-26 (10th Cir. 2004).

Plaintiffs have not sued the proper party-defendant to an FTCA claim, however. Whereas they brought this action against the NSA and the FBI,[16] the "United States is the only proper defendant in an FTCA action," *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009); *see* 28 U.S.C. § 2679(a) (FTCA suits against federal agencies improper). Plaintiffs' "failure to name the United States as defendant" "results in a fatal lack of jurisdiction" over Count XI. *Ngiendo v. SSA*, 547 F. App'x 913, 914 (10th Cir. 2013).

Second, Plaintiffs cannot remedy this jurisdictional defect by joining the United States as the defendant, because they have failed to exhaust their administrative remedies against the United States. Under the FTCA, "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency" and that claim was either "finally denied" by the agency or the agency failed "to make final disposition of [the] claim within six months after it is filed." 28 U.S.C. § 2675(a). In letters to the NSA and the FBI, dated August 17, 2015, counsel for Plaintiffs "present[ed]" claims against the United States "pursuant to" "the Federal Tort Claims Act" for, *inter alia*, "the willful commission[] of the tort[] of communication abuse." Letter from Ross C. "Rocky" Anderson to NSA, dated Aug. 17, 2015 (Exhibit A, hereto); Letter from Ross C. "Rocky" Anderson to FBI, dated August 17, 2015 (Exhibit B, hereto).[17] Those agencies have not denied

---

[16] Count XI purports to be brought against the "United States, NSA, [and] FBI," Compl. Count XI (as do Counts II, IV-VII, IX, XII and XIII), but Plaintiffs did not sue the United States. *See id.* Caption; *id.* ¶¶ 21-27 (detailing the defendants subject to the action).

[17] "A court has wide discretion" to consider "documents" outside the pleadings "to resolve disputed jurisdictional facts under Rule 12(b)(1)" without "convert[ing] the motion to a Rule 56 motion." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

the claims, nor has six months elapsed since Plaintiffs presented them to the agencies. Accordingly, Plaintiffs have not exhausted their administrative remedies.

Because "Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process," Plaintiffs are barred "from bringing suit [under the FTCA] until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 112, 113 (1993). And, given that Congress waived the sovereign immunity of the United States "[s]ubject to the provisions of chapter 171 [the Torts Claims Procedure, including the administrative claim requirement]," 28 U.S.C. § 1346(b)(1); *see also id.* §§ 2671-80, the "[e]xhaustion of administrative claims is a jurisdictional prerequisite to asserting claims under the FTCA." *Pipkin v. USPS*, 951 F.2d 272, 273 (10th Cir. 1991).[18]

Accordingly, Count XI must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

The Complaint should be dismissed for lack of subject matter jurisdiction.

Date:   December 18, 2015

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

---

[18] *See also, e.g.*, *McNeil*, 508 U.S. at 112-13 (district court "properly dismissed" suit for lack of subject matter jurisdiction for failure to exhaust administrative remedies); *Fortner v. Young*, 582 F. App'x 776, 782 (10th Cir. 2014) (no jurisdiction where plaintiff failed to exhaust remedies); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) ("requirements are jurisdictional and cannot be waived").

_/s/ Rodney Patton_
RODNEY PATTON
Trial Attorney

JULIA A. BERMAN
Trial Attorney

CAROLINE J. ANDERSON
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7320
Washington, D.C.  20001
Phone:  (202) 305-7919
Fax:      (202) 616-8470
E-mail:  rodney.patton@usdoj.gov

Counsel for the Government Defendants