Ross C. Anderson (#0109)
WINDER & COUNSEL, P.C.
460 South 400 East
Salt Lake City, UT  84111
Telephone: (801) 322-2222
Facsimile:  (801) 322-2282
randerson@winderfirm.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARY JOSEPHINE (JOSIE) VALDEZ, HOWARD STEPHENSON, DEEDA SEED, DANIEL DARGER, WILLIAM GRANT BAGLEY, and THOMAS NELSON HUCKIN,<br><br>    Plaintiffs,<br><br>    v.<br><br>NATIONAL SECURITY AGENCY; GEORGE W. BUSH, in his individual capacity; MICHAEL V. HAYDEN, in his individual capacity; RICHARD B. CHENEY, in his individual capacity; DAVID ADDINGTON, in his individual capacity; DOES #1-50, inclusive,<br><br>    Defendants. | **AMENDED COMPLAINT FOR CONSTITUTIONAL, COMMON LAW, AND STATUTORY VIOLATIONS, SEEKING DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**JURY DEMANDED**<br><br>**Case No. 2:15-cv-00584-RJS**<br><br>**Judge Robert J. Shelby**<br><br>**Magistrate Judge Dustin B. Pead** |

## AMENDED COMPLAINT

Plaintiffs bring this action and, demanding trial by jury of all issues triable by jury, allege

as follows:

1

## PRELIMINARY STATEMENT

1.      Through this case, Plaintiffs challenge gross criminality and misconduct in which the National  Security Agency ("NSA"),  Federal Bureau of Investigation ("FBI") and their employees and agents, Does #1-50, engaged, with the authorization and encouragement of then-President George W. Bush ("Bush"), then-Vice-President Richard B. Cheney ("Cheney"), David Addington ("Addington"), and Michael W. Hayden ("Hayden"), in blatant and knowing violation of the United States Constitution, the Utah Constitution, and numerous state and federal statutes (including the Foreign Intelligence Surveillance Act ("FISA"), which was passed by Congress in 1978 to prevent the very sorts of abuses and violations of privacy at issue in this matter).

2.      Among the unlawful and unconstitutional acts by Bush, Cheney, Addington, and Hayden were the authorization of the NSA to engage in widespread, indiscriminate communications surveillance, interception, and analysis, without warrants and without probable cause.  Beginning in October 2001, and continuing for several years, Bush secretly and illegally ordered and authorized the NSA to spy on the communications of people in the United States without court-approved warrants legally required for domestic spying.

3.      Pursuant to authority provided by Bush in October 2001 and later orders, the NSA and employees and agents of the NSA illegally monitored the international telephone calls and international e-mail messages of people inside the United States without warrants. Since October 2001, Bush had authorized and ordered the NSA, in a program known as "the President's Surveillance Program," (and sometimes simply as "the President's Program"), pursuant to which information gathered during the course of illegal surveillance was maintained in a "security

compartment" codenamed "STELLARWIND", to engage in widespread, warrantless, unconstitutional, felonious surveillance of email, text, internet, and telephone communications in the United States.

4.      Then-Vice-President Cheney and his legal counsel Addington were instrumental in authorizing and encouraging the illegal and unconstitutional surveillance, with Addington drafting a secret written authorization for NSA Director Hayden to keep in his safe.

5.       Later, that surveillance evolved, in part, into blanket, indiscriminate, warrantless, unconstitutional and otherwise illegal surveillance of the contents of every email and text message, and the metadata of every telephone call (i.e., the times, length, and numbers involved in every telephone call), to and from every person engaging in those types of communications in Salt Lake City, Utah, and in the areas in the vicinity of every other Olympic venue, during the 2002 Salt Lake Winter Olympic Games.

6.      Although Bush was President of the United States at the time, although Cheney was Vice-President of the United States at the time, although Addington was legal counsel to the Vice-President at the time, and although Hayden was director of the NSA, they had no legal authority whatsoever to authorize surveillance that so clearly was in violation of the Fourth Amendment to the United States Constitution, the Foreign Intelligence Surveillance Act, and other domestic federal and state laws. In fact, under FISA, every instance of the surveillance engaged in by Does 1-50 and authorized and encouraged by Bush, Cheney, and Addington, all of which was sought and requested by Hayden, was a felony.

7.      The expressed views of Bush, Cheney, and Addington that the Executive Branch, and the President in particular, were not bound by laws passed by Congress because of the national

security situation at the time were contrary to the core principles of our constitutional republic, the rule of law, the constitutional system of checks and balances, and the rights of people in the United States to privacy and to freedom from unreasonable searches and seizures. Bush, Cheney, Addington, Hayden, and other agents of the Executive Branch were not above the law and, hence, acted completely outside their authority and outside the Constitution in authorizing wholesale spying by the federal government on people in the United States.

8.     Bush, Cheney, Addington, and Hayden well knew that their authorization and encouragement of widespread, warrantless surveillance of communications in the United States—without any showing of probable cause to believe a crime had been, or was about to be, committed by any of the parties to the communications—were unconstitutional and in violation of applicable federal statutes. Hence, their authorizations and encouragement of the illegal and unconstitutional surveillance were willful and intentional, and were committed with criminal intent. Bush demonstrated several times, after he had ordered, authorized, and encouraged the illegal surveillance, that he knew such surveillance was unlawful and unconstitutional. For instance, Bush made the following statements about constitutional and other legal requirements he knew he had already violated with respect to the surveillance of communications:

• On April 19, 2004, Bush deceitfully implied to the American people that his administration was complying with the warrant requirement of the Constitution and FISA, as he described a legal requirement for a wiretap as follows:

> *You see, what that meant is if you got a wiretap by court order – and, by the way, everything you hear about requires court order, requires there to be permission from a FISA court, for example.*

• The next day, April 20, 2004, Bush deceptively led the public to believe that constitutional requirements for surveillance were being followed, as he recognized the constitutional and other legal requirements he had secretly, consistently, and blatantly violated for two and one-half years at that point, stating:

> It requires – a wiretap requires – a court order. Nothing has changed, by the way. When we're talking about chasing down terrorists, we're talking about getting a court order before we do so. It's important for our fellow citizens to understand, when you think Patriot Act, constitutional guarantees are in place when it comes to doing what is necessary to protect our homeland because we value the Constitution.

• Likewise, on July 20, 2005, Bush admitted to legal standards he knew he had grossly violated, as follows:

> The Patriot Act helps us defeat our enemies while safeguarding civil liberties for all Americans. The judicial branch has a strong oversight role in the application of the Patriot Act. Law enforcement officers need a federal judge's permission to wiretap a foreign terrorist's phone, or to track his calls, or to search his property. Officers must meet strict standards to use any of the tools we're talking about. And they are fully consistent with the Constitution of the United States.

9.      As part of the President's Surveillance Program, as it evolved to even broader criminality, the NSA, in conjunction with the FBI, and Does 1-50, with the authorization and encouragement of Bush, Cheney, Addington, and Hayden, planned and implemented a mass warrantless surveillance program—for which there was no probable cause, in egregious violation of the United States Constitution and applicable federal statutory laws, including the Foreign Intelligence Surveillance Act, the Wiretap Act, the Privacy Act and the Stored Communications Act—in which blanket surveillance was attempted and achieved during a period preceding the commencement of the 2002 Salt Lake Winter Olympic Games and throughout the period of the

Games, from at least February 8, 2002 (Opening Ceremony) through at least February 24 (Closing Ceremony), over everyone utilizing email, text message, and telephone communications within designated geographical areas, including Salt Lake City, Utah, and the areas including and in the vicinity of all Olympic venues.

10.     That unprecedented surveillance, some of which was first disclosed in a brief description in *The Wall Street Journal* on August 20, 2013 (entitled "New Details Show Broader NSA Surveillance Reach," by Siobhan Gorman and Jennifer Valentino-Devries), included the unconstitutional and otherwise illegal interception and key-word spotting analysis of the contents of every text message and email sent and received and information reflecting the time and length of, and telephone numbers involved in, every telephone conversation involving any person within the areas subjected to the blanket surveillance.

11.     In some instances, as part of the unconstitutional and illegal blanket surveillance, people or telephone numbers were targeted by the NSA and some of Does 1-50, and telephone conversations involving such targeted telephone numbers were illegally and unconstitutionally recorded and subjected to analysis by the NSA and some of Does 1-50 without a warrant and without probable cause.

12.     Consistent with the practice and philosophy of the NSA to horde everything obtained through surveillance, whether legal or illegal, the communications illegally and unconstitutionally subjected to surveillance, interception, and key-word spotting analysis are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future. That illegal storage is consistent with the unlawful storage of massive metadata of telephone calls illegally obtained by the NSA, as recounted recently in *American Civil Liberties Union v. Clapper*,

785 F.3d 787 (2d Cir. 2015) ("The records sought . . . are relevant, in the government's view, because there might at some future point be a need or desire to search them in connection with a hypothetical future inquiry.").

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

14.     This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

15.     Defendants have sufficient contacts with this district generally and, in particular, with the events described herein, that Defendants are subject to the exercise of jurisdiction of this Court over the person of the Defendants.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (e).

## PARTIES

17.     Plaintiff Mary Josephina Valdez ("Valdez"), currently a resident of Salt Lake City, resided in Salt Lake County, Utah, during the 2002 Salt Lake Winter Olympic Games.  At the time, Valdez was employed at the Small Business Administration ("SBA"), with her office in the Federal Building in Salt Lake City, and was in Salt Lake City to work at the SBA on many of the days during the Olympic Games. She also attended Olympic-related events in Salt Lake City during the period of the 2002 Winter Olympic Games. While in Salt Lake City, she made many telephone calls, both private and business-related, and also communicated on a regular basis by email. During approximately one week during the period of the 2002 Winter Olympic Games, Valdez traveled to Puerto Rico and made many telephone calls to people located in Salt Lake City.

While at her home, she engaged in frequent landline and cellular phone calls to people located in Salt Lake City.

18.    Plaintiff Howard Stephenson ("Stephenson") is, and during the 2002 Salt Lake Winter Olympic Games was, a resident of Draper, Utah. At all relevant times he has served as President of the Utah Taxpayers Association. Stephenson is, and during the 2002 Salt Lake Winter Olympic Games was, a Utah State Senator in the Utah State Legislature. At all relevant times, Stephenson frequently spent time in Salt Lake City, including at the Utah Capitol Building in Salt Lake City, where the Senate meets when it is in session. The Utah Legislature adjourned for the 2002 Salt Lake Winter Olympic Games, but just prior to the Games, the Legislature was in session full-time and Stephenson was in attendance. Whenever Stephenson was at the Utah Capitol building, he used his Blackberry and a computer to send email messages to people in and outside of Salt Lake City. He also used a land-line telephone and cell phone. For many days during the Olympics, Stephenson was in Salt Lake City, meeting dignitaries from other nations, attending events at nation houses, and also visiting his office in the Utah Capitol Building. Whenever he was in Salt Lake City during the 2002 Salt Lake Winter Olympic Games, Stephenson engaged in email communications, and also engaged in telephone communications utilizing his cell phone and land-line when there was a land-line telephone available. During the Opening Ceremony in Salt Lake City, Stephenson's children were in attendance and texted or emailed Stephenson about the ceremony. Stephenson also took the Heber Creeper train and attended the biathlon Olympic competition at Soldier Hollow, a venue of the 2002 Salt Lake Winter Olympic Games.

19.    Plaintiff Deeda Seed ("Seed"), currently a resident of Salt Lake City, lived in Salt Lake City during the time period of the 2002 Salt Lake Winter Olympic Games. At that time, she

had both a landline and cell phone, with service provided by AT&T, and frequently engaged in telephone calls with people in and outside of Salt Lake City. She also engaged in email communications with people in and outside of Salt Lake City from computers at her home and her place of employment in Salt Lake City. At the time of the 2002 Winter Olympic Games, Seed was employed as Special Project Coordinator with the Salt Lake City Public Library System in Salt Lake City, Utah. Her internet service providers were Quest and Earthlink.

20.     Daniel Darger ("Darger") currently resides, and at the time of the 2002 Salt Lake Winter Olympic Games resided, in Emigration Canyon, Salt Lake County, Utah. At the time of the 2002 Winter Olympic Games, Darger practiced law, with his law office located in Salt Lake City. From his office and from other locations in Salt Lake City, Darger had numerous telephone communications with others, including legally privileged and confidential communications with clients, during the 2002 Salt Lake Winter Olympic Games, both originating and received in Salt Lake City. In addition to his law practice, Darger was the owner of a business located in Salt Lake City through his entity Iguana, LC, which was in the business of operating a restaurant located in Salt Lake City. Darger was also CEO and Chair of the Board of RBD, Inc., dba Dead Goat Saloon, operating a private blues club located in Salt Lake City. Darger had a landline telephone system in his office, the service provider of which was AT&T. He also used two cell phones, utilizing services provided by Verizon and Cricket. At all relevant times, Darger also engaged in email communications, sometimes from a laptop computer he carried with him, including confidential communications with clients, originating and received in Salt Lake City. Darger made and received telephone calls and emails at the locations of all of the businesses with which he was associated during the 2002 Salt Lake Winter Olympic Games. Darger attended Olympic-related events,

including private parties utilizing The Dead Goat Saloon during the 2002 Winter Olympic Games, and engaged in telephonic and/or email communications during and in connection with those events in Salt Lake City.

21.     William Grant Bagley ("Bagley"), a prize-winning editor of eight books on the American West and series editor of the fifteen-volume Arthur H. Clark Company's documentary history *Kingdom in the West: The Mormons and the American Frontier*, currently resides, and during the 2002 Salt Lake Winter Olympic Games resided, in Salt Lake City, Utah. At that time, he engaged in many communications by telephone and email from his home and elsewhere in Salt Lake City, with people located in and outside of Salt Lake City, including extremely sensitive and confidential communications in connection with a controversial book Bagley was writing about the Mountain Meadows massacre, the mass slaughter by early Mormon settlers of about 120 men, women, and children, most of them traveling from Arkansas to California.

22.     Thomas Nelson Huckin ("Huckin") currently resides, and during the 2002 Salt Lake Winter Olympic Games resided, in Salt Lake City, Utah. At all relevant times, Huckin was employed at the University of Utah in Salt Lake City as a Professor of English and Writing and as Director of the University Writing Program. During the 2002 Salt Lake Winter Olympic Games, Huckin was a subscriber to telephone service at his home, through AT&T, and utilized that service and a telephone at his office, also through AT&T, and made and received numerous calls from Salt Lake City to and from people located in Salt Lake City. Huckin also communicated while in Salt Lake City through two email accounts, one that was his private account and another that was his office account at the University of Utah. Huckin's email communications were with people both in and outside of Salt Lake City.

23.     During the 2002 Salt Lake Winter Olympic Games, Plaintiffs utilized the services of one or more telecommunications service providers through which the NSA and Does 1-50, engaged in illegal and unconstitutional surveillance of information that included the length, times, and telephone numbers involved in each telephonic communication. Plaintiffs also subscribed to telecommunications services that allowed the sending of emails and, on a regular basis, sent and received emails while they were in Salt Lake City and near other Olympic venues, all of which were subjected by the NSA and FBI, and some of Does 1-50, to illegal and unconstitutional surveillance, interception, and key-word spotting analysis.

24.     Defendant NSA is an agency under the direction and control of the Department of Defense charged with collecting, processing, and disseminating foreign signals intelligence. The NSA has acted far beyond its proper, assigned scope and has been responsible for the program of widespread illegal and unconstitutional surveillance described herein. During the course of that surveillance, the NSA acted in collaboration with the FBI, an intelligence and security service of the United States, serving also as the nation's major federal law enforcement organization, under the direction and control of the Department of Justice. The FBI has a long record of abuses of the Constitution and other federal laws, including violations of surveillance prohibitions and limitations. The NSA worked in conjunction with the FBI in subjecting private communications by text messages, emails, and telephone to illegal and unconstitutional surveillance, interception, and key-word spotting analysis.

25.     Defendant Bush was the 43rd President of the United States, who served as President from 2001 to 2009. Bush expressed and acted on the view that, as President following the attacks on the United States on September 11, 2001, he was above the law, able to ignore and

act in violation of laws passed by Congress and the Constitution. He was the first President in U.S. history to authorize and/or condone torture of human beings, all of which was blatantly illegal under domestic and international law, and, knowing he was violating laws passed by Congress and the Constitution, ordered illegal and unconstitutional surveillance to be conducted by the NSA, and then deceived the public about it.

26.     Defendant Hayden was Director of the NSA from 1999 to 2005. Hayden requested and urged that the NSA be permitted to engage in widespread warrantless surveillance of electronic communications, including text messages, emails, and telephone communications. Hayden sought and received written authorization to engage in the clearly illegal and unconstitutional surveillance and caused the NSA to engage in such surveillance, including the massive, indiscriminate, warrantless surveillance of the contents of text messages, emails, and telephone calls originating or received in Salt Lake City and in the vicinity of other Olympic venues during the 2002 Salt Lake Winter Olympic Games.

27.     Defendant Cheney was Vice President during both terms of the Bush presidency. Prior to that, he was a Congressman, a presidential aide to Presidents Nixon and Ford, and Secretary of Defense during the administration of George H.W. Bush. Cheney has been a consistent proponent, since his work with the Nixon administration and his tenure in Congress, of the notion that the President is above the law, not hampered by laws passed by Congress or by the Constitution, when important national security matters are at issue. Consistent with his notion regarding an imperial, law-breaking presidency, Cheney authorized, or purported to authorize, the illegal, unconstitutional surveillance, interception, and analysis of electronic communications by the NSA and was instrumental in causing the illegal surveillance program to be implemented.

28.     Defendant Addington was legal counsel for Cheney during all times relevant to this matter. Later, he served as Cheney's Chief of Staff. Addington oversaw the authorization of the broad, widespread, illegal and unconstitutional surveillance program that was implemented by the NSA. In October, 2001, he drafted the written authorization for illegal surveillance by the NSA that was provided to Hayden.

29.     Does 1-50 are or were agents of the NSA and FBI presently unknown to Plaintiffs who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities.

### Count I

### Violation of Fourth Amendment of United States Constitution and Article 1, § 14 of Utah Constitution – Damages

**Plaintiffs v. Bush (in his personal capacity), Cheney (in his personal capacity), Addington (in his personal capacity), Hayden (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

30.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

31.     Plaintiffs had, and have, a reasonable expectation of privacy in their communications, contents of communications, and/or records pertaining to their communications transmitted, collected, or stored by any telecommunications company.

32.     Defendants intentionally aided, abetted, counseled, commanded, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, and conspired in the commission of the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications,

contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

33.     One or more telecommunication service providers acted as the agent of Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of the above-described acts of acquisition, interception, surveillance and analysis of communications of Plaintiffs, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by the telecommunication service provider without judicial or other lawful authorization, probable cause, and/or individualized suspicion.

34.     Clearly established law, including the plain text of the Fourth Amendment, indicated to any reasonable person that surveillance of the contents of private communications without a warrant or probable cause was a violation of statutory and constitutional rights.  Even more obviously, blanket surveillance of the contents of messages of all individuals within large, geographically targeted areas, without a warrant, without probable cause, and without individualized suspicion must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

35.     At all relevant times, Defendants committed, knew of, and/or acquiesced in all of the above-described acts, and failed to obtain judicial or other lawful authorization and to conform their conduct to the requirements of the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

36.     By the acts alleged herein, Defendants have violated Plaintiffs' reasonable expectations of privacy and denied Plaintiffs their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

37.     By the acts alleged herein, Defendants' conduct has proximately caused significant harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, or the threat of interception, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to be a resident in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than any financial injuries that are subjects of lawsuits decided by our nation's courts daily.

38.     Plaintiffs have no other adequate remedy at law for the Count I Defendants' violation of Plaintiffs' rights to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

39.     Plaintiffs seek an award of their actual damages and punitive damages against the Count I Defendants, and such other and further relief as is proper.

### Count II

### Violation of Fourth Amendment of United States Constitution - Equitable Relief

### Plaintiffs v. NSA

40.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

41.     Plaintiffs had, and have, a reasonable expectation of privacy in their communications, contents of communications, and/or records pertaining to their communications transmitted, collected, or stored by any telecommunications company.

42.  Defendant NSA has intentionally aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, and conspired in the commission of the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

43.    One or more telecommunication service providers acted as the agent of Defendant NSA in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by the telecommunication service provider without judicial or other lawful authorization, probable cause, and/or individualized suspicion.

44.    Defendant NSA has participated or directly engaged in the storage of the communications illegally subjected to surveillance as described herein in connection with the 2002 Salt Lake Winter Olympic Games and continues to store those communications, which may be accessed, reviewed, and utilized at any time in the future, and is thereby irreparably harming Plaintiffs.

45.    Clearly established law, including the plain text of the Fourth Amendment, indicated to any reasonable person that surveillance and storage of the contents of private communications without warrant or probable cause was a violation of statutory and constitutional rights. Hence, blanket surveillance and storage of the contents of messages of all individuals within large, geographically targeted areas, without a warrant, without probable cause, and without individualized suspicion, must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

46.    At all relevant times, Defendant NSA committed, knew of, and/or acquiesced in all of the above-described acts, and failed to obtain judicial or other lawful authorization and to conform its conduct to the requirements of the Fourth Amendment of the United States Constitution.

47.     By the acts alleged herein, Defendant NSA has violated the reasonable expectations of privacy of Plaintiffs and denied Plaintiffs their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, § 14 of the Utah Constitution.

48.     By the acts alleged herein, Defendant NSA's conduct has proximately caused, and continues to cause, significant harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, as a result of NSA's misconduct, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to live in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-

fact – a far greater and more fundamental injury than any financial injuries that are the subjects of lawsuits decided by our nation's courts daily.

49.    Only by openly disclosing what has been stored and is subject to future access, and providing assurances that the above-described communications by Plaintiffs and private information about those communications have been deleted and permanently removed from any records and data stored by Defendants, rendering them inaccessible for future access, will Plaintiffs be relieved from their continuing anxiety, distress, and overriding sense of insecurity caused by the ongoing storage and accessibility of Plaintiffs' communications.  Further, only through openness and transparency on the part of Defendant NSA, consistent with the openness and transparency in government promised but not delivered by President Obama and his administration, will Plaintiffs be at least in part relieved from the sustained undermining of the crucial sense that Plaintiffs once had of what it meant to be citizens in a free country that observed the rule of law and honored the rights of privacy of every individual.

50.    Plaintiffs seek a declaration by this Court that Defendant NSA has violated Plaintiffs' Fourth Amendment rights.

51.    Injunctive relief as to Defendant NSA for violations of federal law and the United States Constitution is allowed under 5 U.S.C. § 702. The Court should enjoin the Defendants NSA, its agents, successors, and assigns, and all those in active concert and participation with them, from continuing to store the communications of Plaintiffs and from making such communications accessible in the future.  This Court should further require Defendant NSA to disclose what has been stored, subject to future access, and provide assurance that the above-described communications by Plaintiffs have been deleted and permanently removed from any records and

data stored by Defendant NSA, rendering them inaccessible for future access. The Court should award such other and further equitable relief as is proper.

### Count III

### Violation of First Amendment of the United States Constitution – Damages

**Plaintiffs v. Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

52.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

53.     Plaintiffs used telecommunication service providers to exercise their rights of free speech, association, and privacy, to speak or receive speech privately and to associate privately.

54.     Count III Defendants intentionally aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, and conspired in the commission of the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

55.     By the acts alleged herein, Defendants' conduct has proximately caused, and continues to cause, significant harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by

the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to be in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than any financial injuries that are the subject of lawsuits decided by our nation's courts daily. Plaintiffs have no other adequate remedy at law for the Count III Defendants' violation of Plaintiffs' rights to speak, receive speech, and associate privately as guaranteed by the First Amendment of the United States Constitution.

56.     Defendants engaged in the misconduct intentionally, with deliberate indifference, or with reckless disregard of, the constitutional rights of Plaintiffs.

57.     Plaintiffs seek an award of actual damages and punitive damages against the Count III Defendants, and for such other or further relief as is proper.

**Count IV**

**Violation of First Amendment of the Constitution of the United States – Equitable Relief**

**Plaintiffs v. NSA**

58.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

59.     Plaintiffs used telecommunication service providers to exercise their rights of free speech, association, and privacy, to speak or receive speech privately and to associate privately.

60.     Defendant NSA aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, and conspired in the commission of the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

61.     By the acts alleged herein, Defendant NSA's conduct proximately caused harm, and continues to cause harm, to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might

be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to live in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than any financial injury that is the subject of lawsuits decided by our nation's courts daily.

62.     Defendant NSA's conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiffs' constitutional rights.

63.     Defendant NSA has participated and directly engaged in the storage of the communications illegally subjected to surveillance as described herein in connection with the 2002 Salt Lake Winter Olympic Games and continues to store those communications, which may be accessed, reviewed, and utilized at any time in the future, in violation of Plaintiffs' constitutional rights, and is thereby irreparably harming Plaintiffs.

64.     Plaintiffs have no other adequate remedy at law for Defendant NSA's continuing unlawful conduct, and Defendant NSA will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

65.     Injunctive relief as to Defendant NSA for its violations of federal law and the United States Constitution is allowed under 5 U.S.C. § 702.  The Court should enjoin Defendant NSA, its agents, successors, and assigns, and all those in active concert and participation with them, from continuing to store the communications of Plaintiffs described herein and from making such communications accessible in the future.  This Court should further require Defendant NSA to disclose what has been stored, subject to future access, and provide assurance that the above described communications by Plaintiffs have been deleted and permanently removed from any records and data stored by Defendant NSA, rendering them inaccessible for future access.  The Court should award such other and further equitable relief as is proper.

### Count V

### Violation of FISA (50 U.S.C. § 1809, actionable under 50 U.S.C. § 1810) – Damages

**Plaintiffs v. United States, FBI, NSA, Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

66.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

67.     In relevant part, 50 U.S.C. § 1809 makes it unlawful to intentionally engage in electronic surveillance under color of law "except as authorized in this chapter, chapter 119, 121, or 206 of Title 18 or by any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title."

68.     Count V Defendants intentionally aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled,

contributed to, facilitated, directed, controlled, assisted in, and conspired in the commission of such acquisition, by means of a surveillance device, the contents of one or more wire communications to or from Plaintiffs or other information in which Plaintiffs have a reasonable expectation of privacy, without the consent of any party thereto, and such acquisition occurred in the United States.

69.     Count V Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, and conspired in the commission of, the above-described acts of acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

70.     By the acts alleged herein, Count V Defendants, acting in excess of their statutory authority and in violation of statutory limitations, have intentionally engaged in, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, conspired in the commission of, electronic surveillance (as defined by 50 U.S.C. § 1801(f)) under color of law, not authorized by any statute, to which Plaintiffs and class members were subjected in violation of 50 U.S.C. § 1809.

71.     By the acts alleged herein, Count V Defendants' conduct proximately caused harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to live in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than financial injuries that are the subjects of lawsuits decided by our nation's courts daily.

72.     Plaintiffs are entitled to relief under 50 U.S.C. § 1810, which provides civil liability against any person who subjects another to surveillance in violation of 50 U.S.C. § 1809.

73.    Plaintiffs seek an award of their statutory or actual damages, punitive damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Count V Defendants, and such other or further relief as is proper.

### Count VI

**Violation of Wiretap Act (18 U.S.C. § 2511, actionable under 18 U.S.C. § 2520) – Damages**

> **Plaintiffs v. Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

74.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

75.    In relevant part, 18 U.S.C. § 2511 makes it unlawful to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication except as specifically provided by the Wiretap Act.

76.    By the acts alleged herein, Count VI Defendants have intentionally and willfully intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiffs' wire or electronic communications in violation of 18 U.S.C. § 2511(1)(a).

77.    Count VI Defendants, have intentionally and willfully used, or endeavored to use, the contents of Plaintiffs' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. § 2511(1)(d).

78.    Count VI Defendants have intentionally and willfully caused, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, participated in, contributed to, facilitated, directed, controlled, assisted in and conspired to cause

telecommunication service providers' divulgence of Plaintiffs' wire or electronic communications to Count VI Defendants while in transmission, in violation of 18 U.S.C. § 2511(3)(a).

79.     Count VI Defendants have committed these acts of interception and use of Plaintiffs' communications directly, or by aiding, abetting, counseling, commanding, inducing, procuring, encouraging, promoting, instigating, advising, willfully causing, participating in, enabling, contributing to, facilitating, directing, controlling, assisting in, and conspiring in their commission.

80.     Telecommunication service providers acted as the agents of Count VI Defendants in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of these acts of interception, disclosure, divulgence and/or use of Plaintiffs' communications.

81.     Count VI Defendants did not notify Plaintiffs of the above-described intentional interception, disclosure and/or use of their wire or electronic communications, nor did Plaintiffs consent to the interception, disclosure and/or use of their wire or electronic communications.

82.      Plaintiffs have been and are aggrieved by Count VI Defendants' intentional and willful interception, disclosure, divulgence and/or use of their wire or electronic communications. By the acts alleged herein, Count VI Defendants' conduct proximately caused harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what

information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to live in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than any financial injuries that the subjects of lawsuits decided by our nation's courts daily.

83.     Plaintiffs have therefore been subjected by Count VI Defendants to the unlawful interception, and intentional use of Plaintiffs' wire, oral, and/or electronic communications in violation of 18 U.S.C. § 2511, entitling them to relief against Count VI Defendants pursuant to 18 U.S.C. § 2520.

84.     Pursuant to 18 U.S.C. § 2520, which provides a civil action for any person whose wire or electronic communications have been intercepted, disclosed, divulged or intentionally used in violation of 18 U.S.C. § 2511, Plaintiffs seek from the Count VI Defendants their statutory damages or actual damages; punitive damages as appropriate; reasonable attorney's fees; litigation costs; and such other and further relief as is proper.

**Count VII**

**Violation of Stored Communications Act (18 U.S.C. § 2703, actionable under 18 U.S.C. § 2707) – Damages**

**Plaintiffs v. Bush (in his personal capacity), Cheney (in his personal capacity), Addington (in his personal capacity), Hayden (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and implemented the illegal surveillance alleged herein, each in their personal capacities)**

85.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

86.      In relevant part, 18 U.S.C. § 2703 provides that a "governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication" only pursuant to (1) a warrant for communications stored for one hundred and eighty days or less and (2) a warrant or with prior notice and a subpoena or court order for communications stored longer than one hundred and eighty days.

87.     Count VII Defendants intentionally and willfully required telecommunication service providers to disclose, or aided, abetted, counseled, induced, procured, encouraged, promoted, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in requiring from telecommunication service providers, the disclosure, to Defendants  the contents of Plaintiffs' communications while in electronic storage by telecommunication service providers' electronic communication service, and/or while carried or maintained by telecommunication service providers' remote computing service, in violation of 18 U.S.C. §§ 2703(a) and/or (b). In doing so, Count VII Defendants have acted in excess of their statutory authority and in violation of statutory limitations.

88.     One or more telecommunication service providers acted as the agent of Count VII Defendants or those with whom Count VII Defendants conspired in performing, participating in, enabling, contributing to, facilitating, or assisting in the commission of these acts of disclosure of Plaintiffs' communications.

89.     Count VII Defendants did not notify Plaintiffs of the disclosure of their communications, nor did Plaintiffs consent to the disclosure of their communications.

90.     Plaintiffs have been and are aggrieved by Defendants' above-described soliciting and obtaining of the disclosure of the contents of their communications.  By the acts alleged herein, Count VII Defendants' conduct proximately caused harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to live in a free country that observed the rule of law, provided for checks and balances between the branches of government, and

honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than any financial injuries that are the subject of lawsuits decided by our nation's courts daily.

91.     Clearly established law indicated to any reasonable person that requiring a telecommunication service provider to disclose the contents of its customers' messages required following the procedures of the Stored Communications Act. Requiring a telecommunication service provider to disclose the contents of messages of all individuals within large, geographically targeted areas, without a warrant, without probable cause, and without individualized suspicion must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

92.     Count VII Defendants' actions were patently egregious and unlawful, in flagrant disregard of Plaintiffs' statutory and constitutional rights.

93.     Class VII Defendants therefore knowingly and willfully violated provisions of the Stored Communication Act, entitling Plaintiffs to relief under 18 U.S.C. § 2707, including actual damages (in an amount of no less than the sum of $1,000 for each Plaintiff, punitive damages, a reasonable attorney's fee and other litigation costs reasonably incurred, and such other relief as is proper.

**Count VIII**

**Violation of Stored Communications Act (18 U.S.C. § 2703, actionable under 18 U.S.C. § 2707) – Equitable relief**

**Plaintiffs v. NSA and FBI**

94.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

95.     In relevant part, 18 U.S.C. § 2703 provides that a "governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication" only pursuant to (1) a warrant for communications stored for one hundred and eighty days or less and (2) a warrant or with prior notice and a subpoena or court order for communications stored longer than one hundred and eighty days.

96.     Count VIII Defendants intentionally and willfully required telecommunication service providers to disclose, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in requiring from telecommunication service providers the disclosure, to Defendants the contents of Plaintiffs' communications while in electronic storage by telecommunication service providers' electronic communication service, and/or while carried or maintained by telecommunication service providers' remote computing service, in violation of 18 U.S.C. §§ 2703(a) and/or (b). In doing so, Count VIII Defendants have acted in excess of their statutory authority and in violation of statutory limitations.

97.     Defendants did not notify Plaintiffs of the disclosure of their communications, nor did Plaintiffs consent to such disclosure of their communications.

98.     Count VIII Defendants have participated or directly engaged in the storage of the communications illegally subjected to surveillance as described herein in connection with the 2002 Salt Lake Winter Olympic Games and continue to store those communications, which may be accessed, reviewed, and utilized at any time in the future.

99.     Plaintiffs have been and are aggrieved by Defendants' above-described soliciting and obtaining of disclosure of the contents of communications and by the illegal continued storage of those communications, which may be accessed, reviewed, and utilized at any time in the future. By the acts alleged herein, Count VIII Defendants' conduct proximately caused harm, and continue to cause harm, to Plaintiffs, including the invasions and violations of Plaintiffs' rights, and the rights of members of the class, to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to be a resident in a free country that observed the rule of law, provided for checks and balances between the branches of government,

and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more fundamental injury than any financial injury that is the subject of lawsuits decided by our nation's courts daily.

100.    Clearly established law indicated to any reasonable person that requiring a telecommunication service provider to disclose the content of its customers' messages required following the procedures of the Stored Communications Act. Requiring a telecommunication service provider to disclose the contents of messages of all individuals within large, geographically targeted areas, without warrant, without probable cause, and without individualized suspicion must have been known at all relevant times to have been wholly unconstitutional and in violation of federal surveillance and privacy statutes.

101.    Defendants' actions were patently egregious and unlawful, in flagrant disregard of Plaintiffs' statutory and constitutional rights.

102.    Defendants therefore knowingly and willfully violated provisions of the Stored Communication Act, entitling Plaintiffs to relief under 18 U.S.C. § 2707.

103.    Plaintiffs and have no other adequate remedy at law for the Count VIII Defendants' continuing unlawful conduct, and the Count VIII Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

104.    Injunctive relief as to the federal government Count VIII Defendants for violations of federal law and the United States Constitution is allowed under 5 U.S.C. §702.  The Court should enjoin the Count VIII Defendants, their agents, successors, and assigns, and all those in active concert and participation with them, from continuing to store the communications of

Plaintiffs and from making such communications accessible in the future. This Court should further require Count VIII Defendants to disclose what has been stored, subject to future access, and provide assurance that the above described communications by or to Plaintiffs have been deleted and permanently removed from any records and data stored by either or both of the Count VIII Defendants, rendering them inaccessible for future access. The Court should award such other and further equitable relief as is proper.

## Count IX

### Violation of Privacy Act (actionable under 5 U.S.C. § 552a) – Damages and Equitable Relief

### Plaintiffs v. NSA

105.   Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

106.    5 U.S.C. § 552a(e) in relevant part states "[e]ach agency that maintains a system of records shall—(1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President."

107.   5 U.S.C. § 552a(g)(1) provides in relevant part that:

> Whenever any agency . . . (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

108.   The National Security Agency, through its website at https://www.nsa.gov/about/faqs/about_nsa.shtml, as accessed on August 13, 2015, states:

> NSA/CSS has two interconnected missions: Signals Intelligence (known as SIGINT) and Information Assurance. Through SIGINT,

> we gather information that America's adversaries wish to keep secret. Through Information Assurance, we protect America's vital national security information and systems from theft or damage by others. Taken together, the SIGINT and Information Assurance missions are essential to a third function: enabling Network Warfare, a military operation. Through carrying out its missions, NSA/CSS helps save lives, defend vital networks, and advance our Nation's goals and alliances, while strictly protecting privacy rights guaranteed by the U.S. Constitution and laws.

109.    The NSA maintains in its system of records the above-described illegally obtained information about Plaintiffs that is neither relevant nor necessary to accomplish the purpose of the NSA. Rather, the information gathered was pursuant to blanket, indiscriminate, unconstitutional and otherwise illegal surveillance that was not targeted in any way on any particularized suspicion of wrong-doing but, instead, was a massive gathering of private information of everyone engaging in email, text message, and telephonic communications in certain geographic areas.

110.    Plaintiffs have been and are aggrieved by Defendant NSA's maintenance in its records of information of or about private communications in which Plaintiffs engaged.  The illegal maintenance by the NSA in its system of records of those communications, which may be accessed, reviewed, and utilized at any time in the has proximately caused harm, and continue to cause harm, to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their

privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*. The very real, fundamental harm has included the undermining of what it once meant to be a resident in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life- and society-changing injury-in-fact – a far greater and more fundamental injury than any financial injury that is the subject of lawsuits decided by our nation's courts daily.

111.    Plaintiffs seek an award against Defendant NSA of their actual damages (in no case less than the sum of $1,000, pursuant to 5 U.S.C. §552a(g)(4)(A)), reasonable attorney's fees and other investigation and litigation costs reasonably incurred by Plaintiffs, and such other or further relief as is proper.

112.    Injunctive relief as to the Defendant NSA for violations of federal law and the United States Constitution is allowed under 5 U.S.C. §702. The Court should enjoin Defendant NSA, its agents, successors, and assigns, and all those in active concert and participation with it, from continuing to store the communications, or information about communications, of Plaintiffs, and from making such communications, or information about such communications, accessible in the future. This Court should further require Defendant NSA to disclose what has been stored, subject to future access, and provide assurance that the above-described communications by or to Plaintiffs have been deleted and permanently removed from any records and data stored by

Defendant NSA, rendering them inaccessible for future access.  The Court should award such other and further equitable relief as is proper.

## Count X

### Violation of Communication Abuse (Utah Code § 76-9-403) – Damages

**Plaintiffs v. Bush (in his personal capacity), Cheney (in his personal capacity), Hayden (in his personal capacity), Addington (in his personal capacity), Does 1-50 (unknown agents of the NSA and FBI who authorized, oversaw, and/or implemented the illegal surveillance alleged herein, each in their personal capacities)**

113.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

114.     Count X Defendants, without authorization by law, intercepted, or caused the interception of, messages that were privately communicated or received by Plaintiffs without consent of the sender or receiver.

115.     Count X Defendants acted intentionally and reprehensibly, in clear violation of Plaintiffs'.  Count X Defendants' actions were in egregious violation of Utah Code Ann. §76-9-403, which provides as follows:

> (1)  A person commits communication abuse if, except as authorized by law, he:
>
> > (a) Intercepts, without the consent of the sender or receiver, a message by telephone, telegraph, letter, or other means of communicating privately . . . or
> >
> > (b) Divulges without consent of the sender or receiver the existence or contents of any such message if the actor knows that the message was illegally intercepted or if he learned of the message in the course of employment with an agency engaged in transmitting it.

116.     Plaintiffs seek an award against the Count X Defendants of Plaintiffs' actual damages, punitive damages, reasonable attorney's fees and other investigation and litigation costs reasonably incurred against the Count X Defendants, and such other or further relief as is proper.

**Count XI**

**Violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. – Declaratory, Injunctive, and Other Equitable Relief**

**Plaintiffs v. NSA**

117.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

118.     Count XI Defendants' actions violated, and continue to violate, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., because Defendants' actions exceed statutory authority and limitations imposed by Congress through FISA, and through Chapters 119, 121 and 206 of Title 18 of the U.S. Code (the Wiretap Act, the Stored Communications Act, and the Pen Register Statute, respectively) and in violation of statutory rights under those laws; are not otherwise in accordance with law; are contrary to constitutional rights, including the Fourth Amendment and First Amendment; and are taken without observance of procedures required by law.

119.     Plaintiffs are aggrieved by these violations because, as described previously in this Complaint, Defendants' actions have resulted in the interception, acquisition, disclosure, divulgence, use, and/or storage of the contents of their wire and electronic communications, communications records, and other information in violation of their constitutional and statutory rights.

120.     Injunctive relief as to the Count XI Defendants for violations of federal law and the United States Constitution is allowed under 5 U.S.C. § 702.  The Court should enjoin the Count

XI Defendants, their agents, successors, and assigns, and all those in active concert and participation with them, from continuing to store the communications, or information about communications, of Plaintiffs, and from making such communications, or information about such communications, accessible in the future. This Court should further require Count XI Defendants to disclose what has been stored, subject to future access, and provide assurance that the above-described communications, and information about communications, by or to Plaintiffs have been deleted and permanently removed from any records and data stored by Count XI Defendants, rendering them inaccessible for future access.  The Court should award such other and further equitable relief as is proper.

## Count XII

## Violation of FISA (50 U.S.C. § 1809, actionable under 50 U.S.C. § 1810) – Equitable Relief

## Plaintiffs v. NSA

121.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

122.    In relevant part, 50 U.S.C. § 1809 makes it unlawful to intentionally engage in electronic surveillance under color of law "except as authorized in this chapter, chapter 119, 121, or 206 of Title 18 or by any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title."

123.    Count XII Defendants intentionally acquired, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, such acquisition, by means of a surveillance device, the contents of one or

more wire communications to or from Plaintiffs or other information in which Plaintiffs have a reasonable expectation of privacy, without the consent of any party thereto, and such acquisition occurred in the United States.

124.     Count XII Defendants have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of the above-described acts of acquisition, interception, surveillance and/or analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications transmitted, collected, and/or stored by telecommunication service providers without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

125.     By the acts alleged herein, Count XII Defendants, acting in excess of their statutory authority and in violation of statutory limitations, have intentionally engaged in, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of, electronic surveillance (as defined by 50 U.S.C. § 1801(f)) under color of law, not authorized by any statute, to which Plaintiffs were subjected in violation of 50 U.S.C. § 1809.

126.     Count XII Defendants have participated or directly engaged in the storage of the communications illegally subjected to surveillance as described herein in connection with the 2002

Salt Lake Winter Olympic Games and continue to store those communications, which may be accessed, reviewed, and utilized at any time in the future.

127.    Plaintiffs have been and are aggrieved by Count XII Defendants' above-described soliciting and obtaining of disclosure of the contents of communications and by the illegal continued storage of those communications, which may be accessed, reviewed, and utilized at any time in the future. By the acts alleged herein, Count XII Defendants' conduct proximately caused harm, and continues to cause harm, to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.  In short, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*.  The very real, fundamental harm has included the undermining of what it once meant to be a resident in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact – a far greater and more

fundamental injury than any financial injuries that are the subjects of lawsuits decided by our nation's courts daily.

128.    Pursuant to *Larson v. United States*, 337 U.S. 682 (1949) and to 5 U.S.C. § 702, Plaintiffs seek that this Court declare that Count XII Defendants have violated their rights; enjoin the Count XII Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the Plaintiffs' statutory rights, including their rights under 50 U.S.C. §§ 1801 et seq.; and award such other and further equitable relief as is proper.

129.    Injunctive relief as to the Count XII Defendants for violations of federal law and the United States Constitution is allowed under 5 U.S.C. §702.  The Court should enjoin the Count XII Defendants, their agents, successors, and assigns, and all those in active concert and participation with them, from continuing to store the communications, or information about communications, of Plaintiffs, and from making such communications, or information about such communications, accessible in the future. This Court should further require Count XII Defendants to disclose what has been stored, subject to future access, and provide assurance that the above-described communications, and information about communications, by Plaintiffs have been deleted and permanently removed from any records and data stored by Count XII Defendants, rendering them inaccessible for future access.  The Court should award such other and further equitable relief as is proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.    Declare that the program of surveillance as described herein violates Plaintiffs' rights under the First and Fourth Amendments to the United States Constitution and Article I, § 14

of the Utah Constitution; and their statutory rights, including their rights under 18 U.S.C. § 2511, 18 U.S.C. § 2703, 50 US.C. § 1809, 5 U.S.C. § 552a, and the Administrative Procedures Act.

2.      Award Plaintiffs equitable relief, including a preliminary and permanent injunction pursuant to the First and Fourth Amendments to the United States Constitution and Article I, § 14 of the Utah Constitution, prohibiting Defendants NSA, and agents, successors, and assigns of the NSA, and all those in active concert and participation with them, from continuing to store the communications, or information about communications, of Plaintiffs, and from making such communications, or information about such communications, accessible in the future. This Court should further require Defendant NSA to disclose what has been stored, subject to future access, and provide assurance that the above-described communications, and information about communications, by Plaintiffs have been deleted and permanently removed from any records and data stored by Defendant NSA, rendering them inaccessible for future access.

3.      Award Plaintiffs their statutory, actual, and punitive damages to the extent permitted by law and according to proof.

4.      Award to Plaintiffs their reasonable attorneys' fees and other costs of suit to the extent permitted by law.

5.      Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial of all matters triable by jury.

DATED this 10th day of February, 2016

WINDER & COUNSEL, P.C.

*/s/ Ross C. Anderson*
Ross C. Anderson, Of Counsel
Attorney for Plaintiffs