Ross C. Anderson (#0109)
Of Counsel
WINDER & COUNSEL, P.C.
460 South 400 East
Salt Lake City, UT  84111
Telephone: (801) 322-2222
Facsimile:  (801) 322-2282
randerson@winderfirm.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARY JOSEPHINE (JOSIE) VALDEZ, HOWARD STEPHENSON, DEEDA SEED, DANIEL DARGER, WILLIAM GRANT BAGLEY, and THOMAS NELSON HUCKIN, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SECURITY AGENCY; GEORGE W. BUSH, in his individual capacity; MICHAEL V. HAYDEN, in his individual capacity; RICHARD B. CHENEY, in his individual capacity; DAVID ADDINGTON, in his individual capacity; DOES #1-50, inclusive, <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** <br><br><br> **Oral Argument Requested** <br><br> **Case No. 2:15-cv-00584-RJS** <br><br> **Judge Robert J. Shelby** <br><br> **Magistrate Judge Dustin B. Pead** |

*"A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, 'sunlight is said to be the best of disinfectants.' . . . [A]ccountability is in the interest of the Government and the citizenry alike.*

*The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. . . .*

- President Barack Obama, "Memorandum for the Heads of Executive Departments and Agencies" (Subject: Freedom of Information Act), January 21, 2009

Defendants Federal Bureau of Investigation ("FBI") and National Security Agency ("NSA") have moved to dismiss this action, which seeks accountability by the NSA for its blanket surveillance and storage of, and provision of potential access to, private communications and private information concerning those communications by people in Salt Lake City and areas of other 2002 Winter Olympic Games venues.  This memorandum is respectfully submitted in opposition to that motion.

## INTRODUCTION

Instead of admitting or denying the Plaintiffs' detailed factual allegations of blatantly unconstitutional, felonious, and otherwise illegal misconduct by the NSA,[1] the NSA seeks to have this Court dismiss this action—not on the merits, but on technical pleading grounds.  The

---

[1] At no time has the NSA denied or admitted that it engaged in the illegal surveillance, or in the continued storage of data reflecting and relating to Plaintiffs' communications as alleged by Plaintiffs in this action, notwithstanding President Obama's grand promises of unprecedented transparency and openness in government. *See, e.g.,* President Barack Obama, "Memorandum for the Heads of Executive Departments and Agencies" (Subject: Transparency and Open Government), January 21, 2009 ("My Administration is committed to creating an unprecedented level of openness in Government. . . . Openness will strengthen our democracy and promote efficiency and effectiveness in Government. Government should be transparent. Transparency promotes accountability and provides information for citizens about what their Government is doing.")

NSA has been successful before in hiding the truth about illegal surveillance,[2] but this is a very

different case, where the Plaintiffs have abundantly met all pleading and standing requirements,

---

[2] In _American Civil Liberties Union v. National Security Agency_, 438 F.Supp.2d 754 (E.D. Mich. 2006) _vacated by_ 493 F.3d 644 (6th Cir. 2007), District Court Judge Anna Diggs Taylor granted summary judgment for the plaintiffs and against the NSA, ruling that the so-called "Terrorist Surveillance Program" ("TSP"), involving "international telephone and internet communications of numerous persons and organizations" within the United States, was unconstitutional and illegal, ordering that it be stopped immediately.  She stated as follows:

> [I]t is important to note that if the court were to deny standing based on the unsubstantiated minor distinctions drawn by Defendants, the President's actions in warrantless wiretapping, in contravention of FISA, Title III, and the First and Fourth Amendments, would be immunized from judicial scrutiny. It was never the intent of the Framers to give the President such unfettered control, particularly where his actions blatantly disregard the parameters clearly enumerated in the Bill of Rights. The three separate branches of government were developed as a check and balance for one another. It is within the court's duty to ensure that power is never "condense[d] . . . into a single branch of government." (_Citing Hamdi v. Rumsfeld_, 542 U.S. 507, 536 (2004) (plurality opinion).)

_American Civil Liberties Union v. National Security Agency_, 438 F. Supp. 2d at 771.

> The President of the United States, a creature of the same Constitution which gave us these Amendments, has undisputedly violated the Fourth in failing to procure judicial orders as required by FISA, and accordingly has violated the First Amendment Rights of these Plaintiffs as well.

_Id._ at 776.

In a 2-1 decision of the United States Court of Appeals for the Sixth Circuit, the Court held that plaintiffs did not have standing to bring the suit because they could not demonstrate that their particular communications were the targets of the TSP. _American Civil Liberties Union v. National Security Agency_, 493 F.3d 644, 653 (6th Cir. 2007). Contrary to any notion of openness, transparency, or checks and balances among the branches of government, the plaintiffs were foreclosed from discovering whether their communications were subject to surveillance because of the application of the so-called "state secrets doctrine," perhaps the most subversive court-made doctrine in the history of United States jurisprudence, which allows the perpetrator of unconstitutional and otherwise illegal (even criminal) misconduct—the executive branch—to determine if evidence will be provided in a lawsuit—or whether a lawsuit will be entirely dismissed other than on the merits—against that very perpetrator. _United States v. Reynolds_, 345 U.S. 1 (1953).

permitting the case to proceed for an airing of the truth about the NSA's covert, illegal operations—finally.

As reflected in the detailed factual allegations of the Amended Complaint, Plaintiffs were in Salt Lake City during the 2002 Salt Lake Winter Olympic Games.  During that time, while they were in Salt Lake City, Plaintiffs communicated with other people by email and telephone. The NSA, as part of the "President's Surveillance Program," subjected to surveillance *all* emails and telephone calls originating in Salt Lake City and other Olympic venue areas, and all emails and telephone calls directed to people in Salt Lake City and other Olympic venue areas.  Hence,

---

In light of what is at stake in terms of the rule of law and the notion of accountability of high-ranking government officials for violations of the law, it should be noted that the executive branch wholly deceived the Supreme Court, which based its formulation of the state secrets doctrine on the trust that purportedly should be granted to the executive branch.  In the seminal *Reynolds* case, the documents, including an accident report, sought by the plaintiffs but withheld by the federal government were not produced for *in camera* inspection by *any* court, even when the district court judge ordered the government to produce the documents. Instead, the United States Supreme Court's highly credulous majority took the federal government at its word.

Decades later, the accident report was located by the daughter of a plaintiff in the case. Upon reading the report, she discovered the government had deceived the federal courts, from the District Court to the United States Supreme Court. In fact, there was not one word constituting a government secret anywhere in the accident report. *See* Barry Siegel, *Claim of Privilege: A Mysterious Plane Crash, A Landmark Supreme Court Case, and the Rise of State Secrets* (Harper Perennial 2008), at 210; Louis Fisher, *In the Name of National Security: Unchecked Presidential Power and the* Reynolds *Case* (University Press of Kansas 2006), at 167–68. Hence, a willingness by the United States Supreme Court to allow the executive branch to withhold a vital document in a case against the federal government, based on what is now known to have been egregious deceit by the executive branch, led to the state secrets doctrine that has been invoked to deprive torture victims (*see*, *e.g.*, *El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007)) and victims of illegal surveillance (*see*, *e.g. American Civil Liberties Union v. National Security Agency, supra*) of any opportunity to hold agents of the executive branch accountable for their constitutional, criminal, and otherwise illegal misconduct. The deprivation of access to the courts for accountability for torture flies in the face of guarantees made by the United States government to the United Nations Committee Against Torture about the many purported means available in the United States for torture victims to achieve justice.  "United States Written Response to Questions Asked by the Committee Against Torture," U.S. Department of State, April 28, 2006 (Answer to Question 5), found at http://www.state.gov/j/drl/rls/68554.htm.

Plaintiffs' communications were subjected to unconstitutional and otherwise illegal warrantless surveillance.

The surveillance was of the contents of all emails and text messages and the "metadata" of every telephone call (i.e., information about the time, length, and telephone numbers involved for each telephone call).  That surveillance violated state and federal statutes, the United States Constitution, and the Utah Constitution.

Plaintiffs have filed certain tort claims according to the procedures of the Federal Tort Claims Act ("FTCA").  For violations of the Stored Communications Act and the Wiretap Act, Plaintiffs have also filed under the procedures of the FTCA, pursuant to the requirements of 18 U.S.C. § 2712. Other claims, not covered by 18 U.S.C. § 2712, are pursued by Plaintiffs in this case.

The Amended Complaint, containing vivid factual charges, asserts Plaintiffs' damages claims against the individual defendants, as well as Plaintiffs' claims for injunctive relief regarding the continued storage by the NSA of, and access to, Plaintiffs' communications, and any records, including telephone metadata records, reflecting information about those communications.

Plaintiffs have recently filed an Amended Complaint, which makes the following primary changes in comparison with the initial Complaint filed in this matter:

1. The FBI is eliminated as a defendant because (a) tort claims and claims under 18 U.S.C. § 2712 have been made against the FBI according to the procedures of the FTCA and (b) injunctive relief against the FBI is admittedly unlikely (at least at present) because it appears the continuing harm of storage of Plaintiffs' communications is being perpetrated by the NSA, not the FBI.

2. The class action allegations are eliminated because of the unwieldiness, delay, and expense entailed in a class action, and the lack of necessity of a class action in light of the Plaintiffs' primary goals of (a) publicly establishing that the blanket surveillance occurred, (b) obtaining assurances that such unlawful surveillance will not occur

again in the future, and (c) achieving the expungement from the facilities of the NSA all of Plaintiffs' communications subjected to unlawful surveillance.

3. Monetary damages claims against the NSA are eliminated because claims have been made against the NSA according to the procedures of the FTCA.

4. Claims against Defendants other than individuals under the Wiretap Act are eliminated because the Wiretap Act specifically provides that recovery may be had against individuals or entities "other than the United States."

5. Allegations have been added to the Amended Complaint specifying the nature of continuing and future harm from the storage by the NSA of Plaintiffs' communications, meriting injunctive relief against the NSA.

Therefore, the issues before the Court on the pending Motion to Dismiss appear to be limited to the following:

1. Whether Plaintiffs have "plausibly" alleged their standing to seek declaratory and injunctive relief regarding the unlawful surveillance and storage by the NSA of their communications in Salt Lake City during the 2002 Winter Olympic Games.

2. Whether Plaintiffs have alleged the existence of a live case or controversy to support a claim for prospective relief regarding the unlawful surveillance and storage of their communications by the NSA.

## ARGUMENT

**I.    The Legal Pleading Standards Have Been Met, and Far Exceeded, by Plaintiffs.**

The NSA seeks dismissal of the claims in this case against it, arguing that Plaintiffs have not met the pleading standards announced in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In its "Supporting Memorandum to Dismiss for Lack of Subject-Matter Jurisdiction" ("Defendant's Memorandum"), the NSA[3] repeats pleading truisms about the insufficiency of "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" in complaints.  Defendant's Memorandum at 5.  Then the NSA

_____

[3] The Motion to Dismiss was filed on behalf of the FBI and NSA.  Since the Amended Complaint eliminates the FBI as a Defendant, references here to the Memorandum in Support of the Motion to Dismiss are to "Defendant's [in the singular] Memorandum."

curiously asserts that "Plaintiffs have not plausibly alleged that their communications were subject to government surveillance during the Winter Olympics of 2002." *Id.* at 8. The NSA relies upon *Twombly* and *Iqbal* for that proposition.

*Twombly* and *Iqbal* provide no support for the NSA's argument.  In fact, those cases make clear that Plaintiffs' factual allegations in this matter are more than sufficient to withstand a motion to dismiss.

*Twombly* involved an antitrust complaint alleging a violation of Section 1 of the Sherman Act.  There the plaintiffs merely alleged parallel conduct by the defendants, rather than asserting facts reflecting an agreement between them. *Twombly* at 548. As the Supreme Court noted, such parallel conduct does not necessarily imply an agreement or a conspiracy between the defendants.  *Id.* at 556-57. Hence, the complaint was insufficient insofar as it failed to set forth factual "allegations plausibly suggesting (not merely consistent with) agreement." *Id.* at 557. Since "[t]he nub of the complaint . . . is the [defendants'] parallel behavior," id. at 565, the Supreme Court found "that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy." *Id.* at 566.  According to the Court, there were other, more plausible, explanations for the defendants' parallel behavior than an illegal agreement.  *Id.* at 564-68.

*Iqbal* involved claims by a Muslim Pakistani pretrial detainee against certain high-level government officials.  In the plaintiff's complaint, he set forth his allegations in conclusory statements of the legal elements of a claim of discrimination, without any factual support.

> Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." . . . . These bare assertions, much like the pleading of conspiracy in *Twombly*,

7

amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim . . . .

*Iqbal* at 680-81.

The Supreme Court noted, reminiscent of its observations in *Twombly*, that the allegations were consistent with a designation of detainees "because of their race, religion, or national origin," "[b]ut given more likely explanations, they do not plausibly establish this purpose." *Id.* at 682.

The instant matter involves a diametrically different scenario than in *Twombly* and *Iqbal*. Here, Plaintiffs recite in vivid detail—certainly far more than required by Rule 8(a)(2), Federal Rules of Civil Procedure (which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief")—facts that not just "plausibly" but compellingly demonstrate the unconstitutional and otherwise illegal (and even criminal) spying by the NSA and its agents on all email, text message, and telephone conversations in which people in Salt Lake City and other Olympic venue areas engaged.

Plaintiffs have not simply offered labels, conclusions, or recitations of legal elements of claims. Rather, they have described in detail the presently knowable[4] facts relating to the illegal spying on Plaintiffs. For instance, Plaintiffs have stated the following factual underpinnings for their legal claims:

1. Beginning in October 2001, in a program that was known as the "President's Surveillance Program"—using the codename STELLARWIND—, George W. Bush

---

[4] President Obama has promised unprecedented "transparency" and "openness" in government, yet his Administration continues to stonewall and cover-up gross illegality by the executive branch and has failed to apply the rule of law to those known to have violated the Constitution and domestic laws passed by Congress, including laws forbidding torture and constitutional provisions and federal statutes forbidding warrantless surveillance like that at issue in this case. Note should be made that, thus far, the NSA and other defendants have not denied engaging in the criminal and otherwise illegal misconduct alleged here; rather, they seek to have the case dismissed so the true facts will not see the light of day.

("Bush") and the other individual defendants authorized and ordered the NSA to illegally engage in warrantless surveillance of communications in which people in the United States engaged.  Amended Complaint, ¶ 2–3.

2.  David Addington ("Addington") and Richard Cheney ("Cheney") authorized and encouraged the illegal surveillance, with Addington (Cheney's legal counsel) drafting a secret written authorization for Michael Hayden ("Hayden") to keep in his safe. Amended Complaint, ¶ 4.

3.  Bush, Cheney, Addington, and Hayden" knew their authorization and encouragement of widespread, warrantless surveillance of communications in the United States were unconstitutional and in violation of federal statutes.  In fact, Bush repeatedly stated publicly that the Constitution required that a warrant or a court order was required in every instance of spying on communications in the United States.  The Amended Complaint even quotes Bush verbatim on three occasions when he stated the very constitutional requirements he knew were being violated by his and the other individual defendants' authorizations of warrantless surveillance. Amended Complaint, ¶ 8.

4.  As part of the illegal President's Surveillance Program, "as it evolved to even broader criminality," the NSA "planned and implemented a mass warrantless surveillance program . . . in which blanket surveillance was attempted and achieved during a period preceding the commencement of the 2002 Salt Lake Winter Olympic Games and throughout the period of the Games . . . over everyone utilizing email, text message, and telephone communications within designated geographical areas, including Salt Lake City, Utah, and the areas including and in the vicinity of all Olympic venues."  Amended Complaint, ¶ 9.

5.  "That unprecedented surveillance . . . included the unconstitutional and otherwise illegal interception and key-word spotting analysis of the contents of every text message and email sent and received and information reflecting the time and length of, and telephone numbers involved in, every telephone conversation involving any person within the areas subjected to the blanket surveillance." Amended Complaint, ¶ 10.

6.  "[T]he communications illegally and unconstitutionally subjected to surveillance, interception, and key-word spotting analysis are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future." Amended Complaint, ¶ 12.

Further recitation of the detailed factual allegations (far more than the "few sentences" characterized in the Defendant's Memorandum at 9) is not necessary to demonstrate that the

factual underpinning of Plaintiffs' Amended Complaint is worlds apart from the conclusory and

speculative claims in *Twombly* and *Iqbal*.

In its Motion to Dismiss, the NSA asserts that the "few sentences" in Plaintiffs'

complaint "are insufficient to render the interception and review of Plaintiffs' communications

'plausible.'"   Defendant's Memorandum at 9.   Then the NSA, ironically, complains as follows:

> Plaintiffs cite no official Government documents or official statements by Government
> officials acknowledging that the Government targeted communications in Salt Lake City
> for covert surveillance during the 2002 Winter Olympics, much less that any such
> surveillance encompassed "everyone['s]" e-mails, text messages, and telephone calls.

Defendant's Memorandum at 9.

Of course Plaintiffs have not cited "official Government documents or official statements

by Government officials acknowledging" the wholly unconstitutional, felonious, and otherwise

illegal misconduct of the "Government" and its agencies and agents—because the entire

operation was illegal and perpetrated in secrecy. Plaintiffs have researched in vain to find an

occasion when the "Government," its agencies, and agents were acting illegally, while issuing

documents and statements informing everyone of their secret and massively unconstitutional,

criminal, and otherwise illegal acts.

As reflected in paragraph 8 of the Amended Complaint, President Bush had provided

illegal orders to the NSA to engage in warrantless spying on communications in which people in

the United States were engaging, all the while lying to the media and the public about it.

The detailed factual allegations of Plaintiffs' Amended Complaint provide a compelling,

far more than "plausible," account of the unconstitutional, felonious, and otherwise illegal

misconduct by the NSA, entitling the Plaintiffs to seek accountability through this action for the

wrongdoing of a federal government agency and those who worked in concert with it.

## II.     Plaintiffs Have Standing to Demand Accountability Through This Lawsuit for the Unconstitutional and Criminal Misconduct of the NSA

In seeking to avoid accountability for its unlawful spying on all people in Salt Lake City and in the areas around other Olympic venues in 2002 who communicated through emails or telephone, the NSA maintains that Plaintiffs—all of whom communicated through emails and telephone—do not have standing to seek accountability with respect to the federal actors in federal court. Signaling an attitude that the judicial branch of government should defer to the executive branch when unconstitutional, criminal, and otherwise illegal acts are committed, the NSA stresses the rather sycophantic statement by the Supreme Court in *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1147 (2013) that "the standing inquiry must be 'especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government,' particularly 'in the fields of intelligence gathering and foreign affairs,' 'was unconstitutional.'"

However deferential to a law-breaking executive branch the Supreme Court believes the courts should be in a constitutional republic that depends upon a meaningful system of checks and balances, there is no room whatsoever for denying Plaintiffs standing to sue for the blatantly unconstitutional, criminal, and otherwise illegal spying on Plaintiffs' email and telephone communications during the 2002 Salt Lake Winter Olympics. There is no exception in the Fourth Amendment for Olympic events, nor did Congress, in anticipation of the 2002 Winter Olympics, amend the Foreign Intelligence Surveillance Act, which was enacted specifically to prevent the very privacy abuses committed by the NSA, as described in the Amended Complaint.

In Defendant's Memorandum, the NSA states more truisms, this time about the necessity of a "case or controversy" and that "speculative claims of injury will not support Article III standing." Defendant's Memorandum, at 6.  However, this is not a case where anyone is

speculating that they *may* have been among *some* whose communications were subjected to surveillance, as in *Clapper v. Amnesty Int'l, USA.*, *supra*, which the NSA contends is the "single case in the Supreme Court's standing jurisprudence most comparable to this one." Defendant's Memorandum, at 7.  That case is not at all similar to the present case, except to the extent the federal government had obviously engaged in widespread unconstitutional and otherwise illegal surveillance of communications to which people in the United States were engaged.  In *Amnesty International*, the most the plaintiffs could assert was that because *many* communications like theirs were subjected to surveillance, it was "likely" their communications were subjected to surveillance as well.  Here, Plaintiffs are not claiming that they *might* have been spied upon illegally by the NSA and those acting in concert with it in a campaign of surveillance of *some* communications of *some* people. Rather, Plaintiffs have alleged that their communications *were* subjected to the illegal surveillance by the NSA because *every* communication of *every* person in the geographical area was spied on by the NSA.

In fact, as far as anyone knows, the blanket surveillance of the *contents* of *every* email to and from *every* person in Salt Lake City and in the other areas of Olympic venues was unprecedented.  As Plaintiffs will show—and consistent with Plaintiffs' factual descriptions in their Amended Complaint—the NSA basically placed a surveillance cone over designated geographic areas, including Salt Lake City, and illegally scooped up the contents of *every* incoming and outgoing email and text message and the metadata of *every* incoming and outgoing telephone call.

Although there are limits imposed on standing, "the standing requirement of Article III should never be interpreted to bar a party properly before the court from invoking the power of

judicial review." *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998).  As noted by the

United States Court of Appeals for the Tenth Circuit:

> To satisfy the standing requirement of Article III, Plaintiffs must demonstrate the
> following:
>
> (1) That the plaintiff[s] have suffered an "injury in fact"—an invasion of a judicially
> cognizable interest which is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical; (2) that there [is] a causal connection
> between the injury and the conduct complained of—the injury must be fairly
> traceable to the challenged action of the defendant, and not the result of the
> independent action of some third party not before the court; and (3) that it [is] likely,
> as opposed to merely speculative, that the injury will be redressed by a favorable
> decision.
>
> *Bennett [v. Spear]*, 520 U.S. [154] at [167], 117 S.Ct. at 1163 (citing *Lujan v. Defenders
> of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992) . . . .

*State of Utah v. Babbitt*, 137 F.3d at 1202.

Plaintiffs unquestionably meet those criteria.  They have alleged specific facts reflecting

an "injury in fact"—the "invasion of a judicially cognizable interest" which is "concrete and

particularized" and "actual," as well as "imminent." Their private communications were

subjected to illegal surveillance by their own government, a grievous injury that is very real and

devastating to those, like Plaintiffs, who seek to protect their privacy as well as the constitutional

form of their federal government, even in a post-9/11 country where so many, including

apparently some courts and some—even high-level—members of the executive branch appear to

have little regard for the rule of law, the separation of power, the system of checks and balances,

and the right of privacy guaranteed by the United States Constitution since the final ratification

of the Bill of Rights in 1791.

Likewise, there can be no question about Plaintiffs asserting a causal connection between

the violations of their rights and the invasion of their privacy and the "conduct complained of"—

the outrageous, unconstitutional, criminal, and otherwise illegal misconduct of the NSA and others.

Finally, if the Constitution, the rule of law, and our nation's system of checks and balances have any meaning, the injuries sustained by Plaintiffs will be redressed, at least in part, by favorable decisions (a) awarding Plaintiffs damages for their injuries, and (b) enjoining the continued storage of and access to data disclosing or relating to their communications that were subjected to illegal surveillance.

### III.   The Plaintiffs Are Being Subjected by the NSA to the Continuing Unconstitutional and Otherwise Illegal Storage of Data Relating to Their Communications or Private Information With Respect Thereto; Therefore, They Are Entitled to Declaratory and Injunctive Relief

Plaintiffs have specifically alleged detailed facts—not simply speculations or legal elements—establishing their right to declaratory and injunctive relief for continuing and future harm from which they are suffering, and from which they will in the future suffer. For instance, they have alleged that the NSA[5] caused, aided, and abetted in the "acquisition, interception, surveillance and analysis of Plaintiffs' communications, contents of communications, and records pertaining to their communications" "without judicial or other lawful authorization, probable cause, and/or individualized suspicion." *E.g.,* Amended Complaint, ¶ 42, 60, 96. Plaintiffs have not just stated the NSA violated their constitutional and other legally protected rights to privacy. They have more-than-plausibly described in their Amended Complaint that the NSA spied on their communications and have stored away the data (the contents of their emails and the metadata on their telephone calls), providing the opportunity for future access to them.

Amended Complaint, ¶ 44, 48, 60, 61, 63, 98, 99, 109, 110, 119, 126, 127.

---

[5] As noted earlier, Plaintiffs are not pursuing claims for injunctive relief in this matter against the FBI, notwithstanding the inadvertently remaining references to the FBI in the headings to Counts V and VIII of the Amended Complaint.

The NSA cannot avoid a claim for injunctive relief for its illegal storage of illegally obtained communications, or private information relating to those communications, on the ground of sovereign immunity.  As noted in *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005):

> Congress passed legislation in 1976 to waive sovereign immunity in most suits for nonmonetary relief:
>
>> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
>
> 5 U.S.C. § 702.  This waiver is not limited to suits under the Administrative Procedure Act.  *See Chamber of Commerce v. Reich,* 74 F.3d 1322, 1329 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not."); *see also United States v. Murdock Mach. & Engr. Co.,* 81 F.3d 922, 930 n. 8 (10th Cir. 1996) (describing § 702 as "a general waiver of the government's sovereign immunity from injunctive relief").

Plaintiffs have described the continuing constitutional violations—the storage and accessibility of Plaintiffs' communications and private information with respect thereto—as follows:

> Consistent with the practice and philosophy of the NSA to horde everything obtained through surveillance, whether legal or illegal, the communications illegally and unconstitutionally subjected to surveillance, interception, and key-word spotting analysis are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future. That illegal storage is consistent with the unlawful storage of massive metadata of telephone calls illegally obtained by the NSA, as recounted recently in *American Civil Liberties Union v. Clapper,* 785 F.3d 787 (2d Cir. 2015) ("The records sought . . . are relevant, in the government's view, because there might at some future point be a need or desire to search them in connection with a hypothetical future inquiry.").

Amended Complaint, ¶ 12.

> Defendant NSA has participated or directly engaged in the storage of the communications illegally subjected to surveillance as described herein in connection with the 2002 Salt Lake Winter Olympic Games and continues to store those communications, which may be accessed, reviewed, and utilized at any time in the future, and is thereby irreparably harming Plaintiffs.

15

Amended Complaint, ¶ 44.

By the acts alleged herein, Defendant NSA's conduct has proximately caused, and continues to cause, significant harm to Plaintiffs, including the invasions and violations of Plaintiffs' rights to privately communicate, and to privately receive communications, without interception, storage, and accessibility, or the threat of interception, storage, and accessibility, by the federal government and the invasions and violations of Plaintiffs' rights to freely and privately associate with others without governmental monitoring, intimidation, and the continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time. In short, as a result of NSA's misconduct, the Plaintiffs have suffered, and continue to suffer, the harm of their privacy and freedom to associate without governmental interference, spying, and the storage of and accessibility to private communications being unlawfully violated and threatened in the same sense as citizens suffering tremendous harm from the destruction of privacy and creation of intimidation, loss of confidence in government, and promotion of continuing fear by Big Brother in George Orwell's *1984*. The very real, fundamental harm has included the undermining of what it once meant to live in a free country that observed the rule of law, provided for checks and balances between the branches of government, and honored the right of privacy of every individual. The diminution of that sense of freedom and individual liberty is a very real and life-changing and society-transforming injury-in-fact—a far greater and more fundamental injury than any financial injuries that are the subjects of lawsuits decided by our nation's courts daily.

Amended Complaint, ¶ 48.

Plaintiffs' claims for injunctive relief respecting the continuing constitutional violations

by the NSA must survive the effort of the federal government to persuade this Court to dismiss

the claims other than on the merits.

Federal courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights. *See, e.g.,* Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 858-59, 6 L.Ed. 204 (1824) (Marshall, C.J.); Davis v. Gray, 16 Wall. 203, 83 U.S. 203, 220, 21 L.Ed. 447 (1872),. . . *Bell v. Hood*, 327 U.S. 678, 684 . . . (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) . . . . In his concurring opinion in *Bivens [*v. *Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]*, Justice Harlan cited "the presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies" as a factor distinguishing equitable relief from money damages. *Bivens,* 403 U.S. at 400,

91 S.Ct. 1999. Equity thus provides the basis for relief—the cause of action, so to speak—in appropriate cases within the court's jurisdiction.

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-32 (10th Cir. 2005.)

## CONCLUSION

The NSA's Motion to Dismiss should be denied and the parties' claims and defenses should be decided on the merits.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request oral argument on the Government Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

DATED this 18th day of February, 2016

WINDER & COUNSEL, P.C.


*/s/ Ross C. Anderson*
Ross C. Anderson, Of Counsel
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2016, the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** was sent via the court's CM/ECF notification to the following:

James Whitman
Jared C. Bennett
*Attorneys for George W. Bush,*
*Michael V. Hayden, Richard B, Cheney,*
*and David Arrington*

Caroline J. Anderson
James J. Gilligan
Jared C. Bennett
Julia Berman
Rodney Patton
*Attorneys for Federal Bureau of*
*Investigation and National Security*
*Agency*

/s/ *Heather Sias*
Heather Sias
Assistant to Ross C. Anderson