IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| MARY JOSEPHINE (JOSIE) VALDEZ, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL SECURITY AGENCY, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-CV-00584-RJS-DBP<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Plaintiffs are six individuals who lived or worked in Salt Lake City during the 2002 Salt Lake Winter Olympic Games. They contend Defendant National Security Agency, acting at the direction of former President George W. Bush and former Vice President Dick Cheney, illegally engaged in a sweeping warrantless surveillance program during those Games.[1] As part of that program, Plaintiffs allege the NSA unlawfully intercepted, gathered, and monitored all electronic communications in and around Salt Lake City and all Olympic venues. Because Plaintiffs utilized email, text message, and telephone communications in these areas during the surveillance program, they contend their communications and data were necessarily intercepted.[2] Plaintiffs allege the NSA continues to store all of the electronic data it collected.

The NSA now moves[3] to dismiss Plaintiffs' Amended Complaint,[4] arguing Plaintiffs have not pled facts sufficient to establish standing to proceed with their claims. More

---

[1] In their Amended Complaint, Plaintiffs bring constitutional, common law, and statutory claims against the NSA and several individuals, including former President Bush and former Vice President Cheney. Dkt. 26.
[2] *Id*. ¶¶ 17–22.
[3] Dkt. 17, Motion to Dismiss.
[4] Dkt. 26. When filed, Defendants' Motion to Dismiss was drawn to Plaintiffs' initial Complaint (Dkt. 1). Magistrate Judge Dustin Pead, to whom this case is referred pursuant to 28 U.S.C. § 636 (b)(1)(A) for the determination of nondispositive pretrial matters, permitted Plaintiffs to file an Amended Complaint, but stated in his order that the Motion to Dismiss would be "treated as a timely response to the Amended Complaint." (Dkt. 27 at 2.)

1

specifically, the NSA submits Plaintiffs have not alleged facts plausibly showing they have suffered an injury redressable through the relief sought in this lawsuit. While not stated in so many words, the NSA's central argument is that the Plaintiffs' allegations are fanciful and not worthy of belief.

The NSA's Motion turns on a disagreement between the parties about the legal standard trial courts must employ when reviewing allegations in pleadings at the motion to dismiss stage. Motions to dismiss like the one here presented require trial courts to evaluate whether a party asserting a claim has adequately pled facts plausibly suggesting an entitlement to relief. Courts perform this analysis in two steps. First, courts must review the complaint and identify any allegations not entitled to the general presumption of truth—such as legal conclusions or bare assertions of the elements of a claim. Second, courts consider whether the remaining allegations, accepted as true at this stage, are sufficient to plausibly support the claims asserted.

The parties here disagree about what kinds of allegations in pleadings trial courts must assume to be true when undertaking the first step in this analysis. Plaintiffs argue the court may not pass on the plausibility of factual allegations, but must accept those allegations as true. The NSA argues the court cannot assume the truth of factual allegations that appear implausible. The NSA contends that the allegations in the Amended Complaint supporting Plaintiffs' Article III standing are bare assertions, lack factual support, and are implausible. The NSA argues that, as such, the court may not accept them as true, and that without these allegations Plaintiffs' Amended Complaint fails to sufficiently plead standing.

But it is generally not the role of trial courts at the motion to dismiss stage to pass on the plausibility of otherwise well-pled factual allegations in pleadings. Trial judges ordinarily may not independently perform some undefined truth-testing function—in reliance on unstated

assumptions, beliefs, and understandings unique to each judge—to determine what claims may proceed to discovery. While judges are trained to carefully assess the plausibility of legal claims in view of the facts alleged, they are not well-positioned to evaluate only on the basis of pleadings the likelihood that those facts can ultimately be proven true.

The instant case illustrates this point. The court is simply in no position to evaluate at this stage of the proceeding whether the NSA engaged in the massive warrantless surveillance program Plaintiffs allege, whether any such program was even technologically feasible at the time, or whether any of the named Defendants played a role in such a program. If the NSA engaged in the conduct alleged, it is presently unknown whether the Plaintiffs' communications were intercepted or whether the NSA still possesses any of Plaintiffs' data. But these are the allegations pled in Plaintiffs' Amended Complaint. They can be tested in time, on the basis of a fully-developed record, after an opportunity for both sides to conduct discovery. At that point, any claims lacking evidentiary support can be put to rest.

Because the Amended Complaint includes adequate and sufficiently well-pled factual allegations to plausibly establish that Plaintiffs have suffered redressable injury, the court DENIES NSA's Motion to Dismiss.[5]

## BACKGROUND ON THE ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiffs allege in their Amended Complaint[6] that the NSA and other Defendants violated their constitutional and statutory rights by monitoring their communications and gathering data during the 2002 Winter Olympic Games, and by continuing to store the data. Plaintiffs seek both declaratory and injunctive relief for the alleged violations.

First, Plaintiffs ask the court to declare that the NSA violated their rights under the Fourth

---

[5] Dkt. 17.
[6] Dkt. 26.

Amendment[7] and the Foreign Intelligence Surveillance Act (FISA).[8] Second, under the First and Fourth Amendments, the Stored Communication Act, the Privacy Act, the Administrative Procedure Act, and FISA,[9] Plaintiffs ask the court to enjoin the NSA "from continuing to store the communications of Plaintiffs and from making such communications accessible in the future."[10] Finally, Plaintiffs ask the court to "require Defendant NSA to disclose what has been stored, subject to future access, and provide assurances that the above-described communications by Plaintiffs have been deleted and permanently removed from any records and data stored by Defendant NSA, rendering them inaccessible for future access."[11]

In response to the NSA's Motion to Dismiss,[12] Plaintiffs argue they have sufficiently pled a redressable injury to support their claims for relief. First, Plaintiffs claim they adequately allege they were injured because the NSA unlawfully collected their personal communications during the 2002 Winter Olympics without a warrant. Plaintiffs do not allege that their specific communications were targeted by the NSA, only that they were swept up in the NSA's extremely broad surveillance program. Second, Plaintiffs argue they sufficiently allege their injury is redressable because the NSA continues to store their information.

The parties' dispute centers on whether these allegations are entitled to a presumption of truth at this stage of the case. Therefore, the court recites the relevant allegations directly from the Amended Complaint.

*Allegations in the Amended Complaint Relevant to Injury:*

> 3. Pursuant to authority provided by Bush in October 2001 and later orders, the NSA and employees and agents of the NSA illegally monitored the

---

[7] *Id.* ¶ 50.
[8] *Id.* ¶ 128.
[9] *Id.* ¶¶ 51, 65, 104, 112, 120, 129.
[10] *Id.* ¶ 51.
[11] *Id.*
[12] Dkt. 17.

4

international telephone calls and international e-mail messages of people inside the United States without warrants. Since October 2001, Bush had authorized and ordered the NSA, in a program known as "the President's Surveillance Program," (and sometimes simply as "the President's Program"), pursuant to which information gathered during the course of illegal surveillance was maintained in a "security compartment" codenamed "STELLARWIND", to engage in widespread, warrantless, unconstitutional, felonious surveillance of email, text, internet, and telephone communications in the United States.

4.     Then-Vice-President Cheney and his legal counsel Addington were instrumental in authorizing and encouraging the illegal and unconstitutional surveillance, with Addington drafting a secret written authorization for NSA Director Hayden to keep in his safe.

5.     Later, that surveillance evolved, in part, into blanket, indiscriminate, warrantless, unconstitutional and otherwise illegal surveillance of the contents of every email and text message, and the metadata of every telephone call (i.e., the times, length, and numbers involved in every telephone call), to and from every person engaging in those types of communications in Salt Lake City, Utah, and in the vicinity of every other Olympic venue, during the 2002 Salt Lake Winter Olympic Games.

. . .

9.     As part of the President's Surveillance Program, as it evolved to even broader criminality, the NSA . . . planned and implemented a mass warrantless surveillance program . . . in which blanket surveillance was attempted and achieved during a period preceding the commencement of the 2002 Salt Lake Olympic Games and throughout the period of the games, from at least February 8, 2002 (Opening Ceremony) through at least February 24 (Closing Ceremony), over everyone utilizing email, text message, and telephone communications within designated geographical areas, including Salt Lake City, Utah, and the areas including and in the vicinity of all Olympic venues.

10.    That unprecedented surveillance, some of which was first disclosed in a brief description in *The Wall Street Journal* on August 20, 2013 (entitled "New Details Show Broader NSA Surveillance Reach," by Siobhan Gorman and Jennifer Valentino-Devries), included the unconstitutional and otherwise illegal interception and key-word spotting analysis of the contents of every text message and email sent and received and information reflecting the time and length of, the telephone numbers involved in, every telephone conversation involving any person within the areas subjected to blanket surveillance.

. . .

23.     During the 2002 Salt Lake Winter Olympic Games, Plaintiffs utilized the services of one or more telecommunications service providers through which the NSA and Does 1-50, engaged in illegal and unconstitutional surveillance of information that included length, times, and telephone numbers involved in each telephonic communication.  Plaintiffs also subscribed to telecommunication services that allowed the sending of emails and, on a regular basis, sent and received emails while they were in Salt Lake City and near other Olympic venues, all of which were subjected by the NSA and FBI, and some of Does 1-50, to . . . surveillance, interception, and key-word spotting analysis.

. . .

26.     Defendant Hayden was Director of the NSA from 1999 to 2005.  Hayden requested and urged that the NSA be permitted to engage in widespread warrantless surveillance of electronic communications, including text messages, emails, and telephone communications.  Hayden sought and received written authorization to engage in the clearly illegal and unconstitutional surveillance and caused the NSA to engage in such surveillance, including the massive, indiscriminate, warrantless surveillance of the contents of text messages, emails, and telephone calls originating or received in Salt Lake City and in the vicinity of other Olympic venues during the 2002 Salt Lake Winter Olympic Games.[13]

*Allegations in the Amended Complaint Relevant to Redressability:*

12.     Consistent with the practice and philosophy of the NSA to horde [sic] everything obtained through surveillance, whether legal or illegal, the communications illegally and unconstitutionally subjected to surveillance, interception, and key-word spotting analysis are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future.  That illegal storage is consistent with the unlawful storage of massive metadata of telephone calls illegally obtained by the NSA, as recounted recently in *American Civil Liberties Union v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ("The records sought . . . are relevant, in the government's view, because there might at some future point be a need or desire to search them in connection with a hypothetical future inquiry.").
. . .

44.     Defendant NSA has participated or directly engaged in the storage of the communications illegally subject to surveillance as described herein in connection with the 2002 Salt Lake Winter Olympic Games and continues to store those communications, which may be accessed, reviewed, and utilized at any time in the future, and is thereby irreparably harming Plaintiffs.

. . .

---

[13] Plaintiffs reiterate these claims at several points in their Amended Complaint.  *See* Dkt. 26 ¶¶ 42, 46, 60, 96, 99, 109, 119, 123, 124, 125.

48.     By the acts alleged herein, Defendant NSA's conduct proximately caused, and continues to cause, significant harm to Plaintiffs, including . . . continuing anxiety and immensely disturbing uncertainty about what information has been stored and how it will or might be used at any future time.[14]

## ANALYSIS

The NSA moves under Rule 12(b)(1), Federal Rules of Civil Procedure, to dismiss Plaintiffs' Amended Complaint on the basis that Plaintiffs fail to allege facts sufficient to establish Article III standing to pursue their claims. The NSA argues Plaintiffs have not plausibly alleged that their communications were subject to NSA surveillance and—even assuming Plaintiffs have alleged their communications were collected—they have failed to plausibly allege the NSA still retains them.[15] Below, the court first identifies the legal standards that govern its analysis, then takes up the NSA's arguments in turn.

### I.     Legal Standards

Article III of the Constitution limits the judicial power of the United States to the resolution of "cases" or "controversies."[16] As the parties invoking the court's jurisdiction, Plaintiffs have the burden of establishing their standing.[17] To establish standing under Article III's case or controversy requirement, Plaintiffs must "make three showings: first, that they have

---

[14] Plaintiffs re-assert that the NSA continues to store this information in several paragraphs contained in their claims for relief. *See, e.g.,* Dkt. 26 ¶¶ 60, 61, 63, 98, 99, 109, 110, 119, 126, 127.

[15] As the parties acknowledge, the filing of the Amended Complaint significantly narrows the issues initially presented in the Motion to Dismiss. *See* Dkt. 28 at 5–6; Dkt. 32 at 1–3. The NSA and FBI jointly filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. Dkt. 17. Before Plaintiffs responded they filed an Amended Complaint. Dkt. 26. Notwithstanding that the Motion to Dismiss was drawn to the original Complaint, the parties agreed to complete briefing on that Motion. Though procedurally unusual, Plaintiffs' Opposition, dkt. 28, and the NSA's Reply, dkt. 32, both address the Amended Complaint. In the Amended Complaint, the FBI is no longer named as a defendant. While the Amended Complaint contains claims against the FBI, *see* Dkt. 26 at 24, 33 (listing the FBI under Count V and VIII), Plaintiffs have stated that the FBI's inclusion was inadvertent and that they are no longer pursuing these claims. Dkt. 28 at 14 n.5. Therefore, the court grants the Government's motion as it pertains to the FBI and dismisses the FBI from this lawsuit. Plaintiffs also dropped the class action allegations, the monetary damages claims against the NSA, and the claims against the Government under the Wiretap Act.

[16] *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).

[17] *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009).

suffered an injury in fact which is concrete and particularized, and actual or imminent; second, that there is a causal connection between the injury and the challenged conduct; and third, that the injury is likely to be redressed by a favorable decision."[18]

The Supreme Court has noted that its "standing inquiry has been especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."[19] And the Court observed that it has "often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs."[20]

At the motion to dismiss stage, Plaintiffs must establish their standing and the court's jurisdiction under the pleading standards found in Rule 8(a)(1), Federal Rules of Civil Procedure.[21]  Rule 8(a)(1) requires only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction."  The Tenth Circuit instructs that "at the outset of a case it is enough to *allege* the facts . . . establishing standing" and that "[g]eneral allegations suffice at the pleading stage."[22]  If the allegations supporting standing are challenged, "then the facts have to be litigated."[23]

The NSA's Rule 12(b)(1) Motion to Dismiss is a facial challenge focused exclusively on the sufficiency of the allegations in Plaintiffs' Amended Complaint, without reference to

---

[18] *Id.*
[19] *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal quotation marks omitted).
[20] *Id.*
[21] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.").
[22] *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1184 (10th Cir. 2015).
[23] *Id.*

declarations, affidavits, or other evidence. [24]  To survive such a motion, the Amended Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[25]  The Supreme Court in *Ashcroft v. Iqbal*[26] articulated a two-step analysis courts must apply when evaluating a motion to dismiss challenging the adequacy of a complaint.[27]  First, the court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth."[28]  And second, the court considers whether the remaining allegations, which the court assumes are true, "plausibly suggest an entitlement to relief."[29]

The NSA's argument focuses on the first *Iqbal* step, and requires the court to determine what kinds of allegations in pleadings are not entitled to an assumption of truth at the motion to dismiss stage.  The court here turns to the Supreme Court for guidance.

The Supreme Court instructs that trial courts generally "must accept as true all the allegations contained in a complaint . . . ."[30]  To benefit from the general assumption of truth, the allegations must be well-pleaded[31] and amount to more than legal conclusions[32] or "bare assertions"[33] that are "'a formulaic recitation of the elements' of a . . . claim."[34]  When "well-

---

[24] Rule 12(b)(1) motions to dismiss may take two forms, facial and factual.  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).  In a facial challenge, the movant questions the sufficiency of the complaint itself, while in a factual challenge the movant "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id*. (internal quotation marks omitted).  If the challenge is facial, the court generally accepts the allegations in the complaint as true.  In contrast, when addressing a factual challenge the court "does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*. (internal quotation marks omitted).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).
[26] 556 U.S. 662 (2009).
[27] Although the Court in *Iqbal* was analyzing a defendant's 12(b)(6) motion, the Tenth Circuit has held that the same standards apply to a 12(b)(1) motion.  *See, e.g., Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) ("[W]e apply the same standards [to a facial challenge] under 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action.").
[28] *Iqbal*, 556 U.S. at 680.
[29] *Id*.
[30] *Id*. at 678.
[31] *Id*. at 679.
[32] *Id*. at 678.
[33] *Id*. at 681.

9

pleaded factual allegations" are within these bounds, this court is told to "assume their veracity" and proceed to the next step of the *Iqbal* two-step analysis—"determin[ing] whether they plausibly give rise to an entitlement to relief."[35]  This is so even if it "strikes a savvy judge that actual proof of those facts is improbable"[36] or the allegations are "doubtful in fact."[37]  Indeed, the Court has emphasized in finding untenable "bald" allegations that it was "not reject[ing] these . . . allegations on the ground that they are unrealistic or nonsensical."[38]  It was their "conclusory nature . . . rather than their extravagantly fanciful nature[] that disentitle[d] them to the presumption of truth."[39]  Still, in a dissenting opinion in *Iqbal,* Justice Souter suggested the compellingly logical point that courts need not accept as true "allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel."[40]

The court extracts a widely accepted governing principle from these binding Supreme Court pronouncements and Justice Souter's persuasive, non-contradictory point.  At the pre-discovery motion to dismiss stage, this court must assume the truth of well-pleaded factual allegations that are not simply legal conclusions or bare assertions of the elements of a claim—so long as the allegations do not "defy reality as we know it"—even if, in the court's own judgment, those facts seem at the outset incredible, unbelievable, or highly unlikely to be true.

The NSA argues the case law compels a different approach.  It maintains that trial courts are instead required under *Iqbal* to test plausibility twice when evaluating a motion to dismiss.

---

[34] *Id.* (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).
[35] *Id.* at 679.
[36] *Twombly*, 550 U.S. at 556.
[37] *Id.* at 555 (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations omitted)).
[38] *Iqbal,* 556 U.S. at 681.
[39] *Id.*
[40] *Id.* at 696 (Souter, J., dissenting).  While Justice Souter makes this statement in the dissent, he also states that he does "not understand the majority to disagree with this understanding of 'plausibility' under *Twombly*." *Id.* at 697.

As part of the first *Iqbal* step, the NSA submits trial judges must evaluate the plausibility of the facts alleged, and disregard those facts the court finds implausible. Then, after excluding those factual allegations, the court must separately evaluate the plausibility of the legal claims asserted in view of the surviving allegations. The NSA cites as support for this approach three decisions from the Tenth Circuit.[41] This court reads these cases differently.

While there is some language in these cases from which one could infer that the Tenth Circuit is assessing the plausibility of the facts alleged,[42] the standards the court sets forth[43] and the analysis it employs[44] are consistent with this court's interpretation articulated above. Importantly, when discussing the plausibility standard recently announced in *Bell Atlantic Corporation v. Twombly*[45]—before that standard was applied and developed in *Iqbal*—the Tenth Circuit clarified that "[t]his is not to say that the factual allegations must themselves be plausible;

---

[41] *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011); *Cohon v. N.M. Dep't of Health*, 646 F.3d 717 (10th Cir. 2011).

[42] *See Al-Owhali*, 687 F.3d at 1241 ("[H]e simply needed to plead some plausible facts supporting his claim . . . ."); *Id.* at 1242 ("[W]e dismissed the claim because the inmate failed to offer plausible 'allegations showing that the restrictions were imposed in violation of prison regulations or that the regulations invoked were unconstitutional in the circumstances.'").

[43] *Al-Owhali*, 687 F.3d at 1239–40 ("Under *Iqbal*, 'a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face.' 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Although we must accept as true all factual allegations asserted in the complaint, dismissal is appropriate where 'the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct.'" (citations omitted)); *Kan. Penn Gaming*, 656 F.3d at 1214 ("[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."); *Cohon*, 646 F.3d at 724 ("We accept as true all well-pleaded facts and 'construe all reasonable allegations in the light most favorable to the plaintiff.' . . . Dismissal of a complaint is appropriate only if, accepting all facts alleged as true, Cohon has not pled 'enough facts to state a claim to relief that is plausible on its face.' The complaint must set forth 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' Our function 'is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" (citations omitted)).

[44] *Al-Owhali*, 687 F.3d at 1243 (accepting that plaintiff's allegation that he had been restricted from receiving a book in prison as true but concluding that this was not enough to plausibly state a claim for relief under the First and Fifth Amendments); *Kan. Penn Gaming*, 656 F.3d at 1220 (concluding that an allegation in a complaint alleging nuisance was a "merely a 'formulaic recitation' of a legal conclusion" and, thus, not accepting it as true); *Cohon*, 646 F.3d at 727 (concluding that an allegation that a budget allotment was "money-based rather than need-based" was conclusory when considering plaintiff's claim that a Medicaid program offered by the state violated Title II of the ADA, Section 504 of the Rehabilitation Act, as well as plaintiff's substantive and procedural due process rights under the U.S. and New Mexico Constitutions).

[45] 550 U.S. 544.

after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged."[46]

Having explained the standards it will apply, the court turns now to the NSA's challenge. Because the NSA's Motion to Dismiss attacks the sufficiency of Plaintiffs' allegations supporting Article III standing, the court's analysis below focuses on injury and redressability. First, the court analyzes whether the allegations in the Amended Complaint that establish injury are entitled to the assumption of truth. Next, the court analyzes whether the allegations in the Amended Complaint that establish redressability are entitled to the presumption of truth.

## II.  Plaintiffs' Allegations of Injury are Entitled to the Assumption of Truth

To establish standing, Plaintiffs must show "they have suffered an injury in fact which is concrete and particularized, and actual or imminent."[47] Plaintiffs argue they were injured because the NSA illegally conducted warrantless surveillance of their communications. Plaintiffs' assertion that the NSA collected their communications turns on their allegation that the NSA conducted blanket surveillance of every email, text message, and the metadata from every telephone call from every person in Salt Lake City and the surrounding Olympic venues during the 2002 Winter Olympic Games.

The NSA does not argue that warrantless surveillance of Plaintiffs' communications is an insufficient basis to establish injury for standing purposes. Rather, the NSA contends Plaintiffs' allegation that "the Government intercepted their communications during the 2002 Winter Olympics" is "based on a bare assertion," and "the Complaint contains no factual enhancement to support" this assertion. For this reason, the NSA argues, "under the plausibility standard of

---

[46] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).
[47] *Dias*, 567 F.3d at 1176.

pleading, [these allegations are] not entitled to a presumption of truth."[48]  The court disagrees.

As discussed above, the first step of the *Iqbal* analysis requires the court to decide which allegations in the Amended Complaint are entitled to the generally-applicable assumption of truth.  At this step, it is irrelevant whether the allegations strike the court as simply unbelievable or unlikely to be supported.  Instead, the court must consider whether the allegations are bare assertions of the elements of a claim, or in this instance, a bare assertion of injury in fact.  The NSA seizes on the "bare assertion" and "conclusory" language from *Iqbal* to argue Plaintiffs must provide factual support for their allegations before they may be assumed true.  But the NSA's use of these terms divorces them from the context in which they were used by the Supreme Court.  The *Iqbal* Court used these terms not when discussing support for factual allegations, but rather when specifically addressing bare recitation of the elements of a claim or conclusory statements of the same.[49]

In their Amended Complaint, Plaintiffs describe the "President's Surveillance Program" and the illegal surveillance that occurred as part of this program:

> Later, that surveillance evolved, in part, into blanket, indiscriminate, warrantless, unconstitutional and otherwise illegal surveillance of the contents of every email and text message, and the metadata of every telephone call (i.e., the times, lengths, and numbers involved in every telephone call), to and from every person engaging in those types of communications in Salt Lake City, Utah, and in the vicinity of every other Olympic venue, during the 2002 Salt Lake Winter Olympic Games.[50]

Plaintiffs allege this surveillance "was attempted and achieved during a period preceding the commencement of the 2002 Salt Lake Olympic Games and throughout the period of the games

---

[48] Dkt. 17 at 2.
[49] *Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Id.* at 681 ("These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim . . . .").
[50] Dkt. 26 ¶ 5.

from at least February 8, 2002 (Opening Ceremony) through at least February 24th (Closing Ceremony)."[51]

Because these allegations are not legal conclusions and are more than a bare recitation of the requirements of standing, the court must assume the truth of these allegations at the motion to dismiss stage. Plaintiffs allege when and where the surveillance occurred, and the type of communications that were subject to surveillance. Plaintiffs also unequivocally state that every communication was intercepted—including their own.

The Supreme Court's analysis in *Iqbal* supports the conclusion that these allegations are entitled to the presumption of truth. The allegations the Supreme Court concluded were not entitled to the presumption of truth in *Iqbal* were more conclusory and more closely tied to the legal elements of plaintiff's claims than those before the court here.

In *Iqbal*, the Court considered allegations in the plaintiff's complaint claiming certain federal official defendants deprived him of clearly-established constitutional rights when they arrested and detained him following the September 11, 2001 terrorist attacks. The Court first considered plaintiff's allegations supporting a claim for unconstitutional discrimination. In so doing, the Court laid out the elements of plaintiff's discrimination claim, which required him to show that defendants intended to discriminate against him based solely on account of his race, religion, or national origin; and that the harsh prison conditions that he was subject to served no legitimate penological interest. In his complaint, plaintiff alleged that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race and/or national origin and for no legitimate penological interest.'"[52] The Court concluded these allegations were "bare

---
[51] *Id.* ¶ 9.
[52] *Iqbal*, 556 U.S. at 681 (citation omitted).

assertions" that "amount[ed] to nothing more than a 'formulaic recitation of the elements'" of plaintiff's constitutional claims.[53] The Court, therefore, did not assume these allegations to be true.

But there were also allegations the Court concluded were entitled to the presumption of truth. For instance, the complaint included an allegation that "[t]he policy of holding post-September 11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by [defendants] in discussions in the weeks after September 11, 2001."[54] The Court accepted this allegation as true and went on to conclude that it did not plausibly establish plaintiff's claim for relief.[55]

Here, the court considers allegations more like the latter allegation in *Iqbal* than the former. While Plaintiffs' allegations are extraordinary, they are neither legal conclusions nor bare recitations of the elements of standing. And the court cannot conclude that on their face they defy reality.

The NSA also argues the Supreme Court's decision in *Clapper v. Amnesty International*[56] should guide the court's analysis. In that case, plaintiffs—attorneys and human rights, labor, legal, and media organizations—challenged the constitutionality of § 702 of the Foreign Intelligence Surveillance Act (50 U.S.C. § 1881a).[57] They sought declaratory and injunctive relief. The government filed a motion for summary judgment challenging plaintiffs' standing. Plaintiffs responded that they could "establish injury in fact because there [was] an objectively reasonable likelihood that their communications [would] be acquired under § 1881a at some

---

[53] *Id.*
[54] *Id.* (internal quotation marks omitted).
[55] *Id.*
[56] 133 S. Ct. 1138 (2013).
[57] *Id.* at 1145.

point in the future."[58] The Court rejected this argument, concluding plaintiffs had failed to show their threatened future injury was "certainly impending," as required for Article III standing. The Court found plaintiffs' "highly speculative fear" that the government had monitored their communications rested on a "highly attenuated chain of possibilities."[59]

*Amnesty International* does not control the court's analysis in this case for at least two reasons. First, the Supreme Court in *Amnesty International* was not engaged in the same analysis this court now undertakes. In *Amnesty International*, the Court considered whether plaintiffs had set forth specific facts supporting their claim of standing sufficient to survive summary judgment.[60] The Court was not engaged in an *Iqbal* step-one analysis at the motion to dismiss stage, asking whether the allegations in plaintiffs' complaint should be assumed to be true. Indeed, it appears the Supreme Court accepted all of plaintiffs' allegations as true but found those allegations, accepted as true, still did not establish plaintiffs' standing to seek prospective relief.

Second, the allegations plaintiffs were making in *Amnesty International* are qualitatively different than those in this case. In *Amnesty International*, plaintiffs claimed there was an "objectively reasonable likelihood" that their future communications would be intercepted under § 1881a. Here, Plaintiffs do not speculate about future harm, but affirmatively state that their communications were, in fact, unlawfully intercepted.

---

[58] *Id.* at 1143.
[59] *Id.* at 1148 ("[R]espondents' argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.").
[60] The Court noted that plaintiffs, at the summary judgment stage, "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.* at 1149 (quoting *Lujan*, 504 U.S. at 561). And the Court found that plaintiffs had "set forth no specific facts demonstrating that the communications of their foreign contacts will be targeted." *Id.*

While the NSA characterizes Plaintiffs' allegations as more speculative than those in *Amnesty International*, Plaintiffs' allegations are in fact much less speculative—Plaintiffs do not allege it is likely that communications will later be intercepted, but rather that they already were intercepted. What the NSA likely means is not that the Plaintiffs' allegations here are more speculative, but that they are less believable or less credible—in essence, less plausible. As discussed above, this is not an argument that the court may entertain at the motion to dismiss stage.[61] The court, therefore, accepts Plaintiffs' allegations as true.

While the NSA has not argued that Plaintiffs' allegations, if accepted as true, fail to show an injury in fact, this court is "required to consider 'the issue sua sponte to ensure that there is an Article III case or controversy.'"[62] At the motion to dismiss stage, the court concludes that because Plaintiffs' allegation that their communications were intercepted must be accepted as true, Plaintiffs have plausibly alleged an injury that is concrete, particularized, and actual.[63]

---

[61] *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) ("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged.").

[62] *Rector v. City & Cty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002)).

[63] Regarding Plaintiffs' statutory claims, "the Supreme Court instructs that a concrete 'injury required by Art. III may exist solely by virtue of statues creating legal rights, the invasion of which creates standing.'" *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife* 504 U.S. 555, 578 (1992)). Plaintiffs assert statutory claims under FISA, the Stored Communication Act, the Privacy Act, and the Administrative Procedure Act. Each of these statutes creates a private right of action for claims of illegal surveillance. *See* 50 U.S.C. § 1810 (the FISA provides that "[a]n aggrieved person . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation"); 18 U.S.C. § 2707 (the SCA allows any "person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind" to bring a civil action against the entity which engaged in the action); 5 U.S.C. § 552a(g)(1) (the Privacy Act provides that "whenever an agency . . . fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction"); and 5 U.S.C. § 702 (the APA states that, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"). In addition, Plaintiffs allege an invasion of their First Amendment right of association and their Fourth Amendment right to be free from unreasonable searches and seizures. Because Plaintiffs claim that their particular communications were intercepted, Plaintiffs' alleged injury is sufficiently concrete and particularized to grant standing. *See Jewel*, 673 F.3d at 909–10.

### III. Plaintiffs' Allegations Supporting Redressability are Entitled to the Assumption of Truth

Having concluded Plaintiffs pled sufficient facts to establish an actual injury, the court now considers whether they have pled enough to support their claim of redressability. Like injury in fact, redressability is one of the requirements of Article III standing. Here, Plaintiffs request injunctive and declaratory relief. To have standing to pursue prospective injunctive relief, "a plaintiff must show a continuing injury."[64] "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."[65] It is not enough, therefore, for Plaintiffs to allege their communications were collected in 2002 in violation of their constitutional and statutory rights. To seek the injunctive relief they request, Plaintiffs must also sufficiently plead allegations which, if assumed to be true, plausibly show they suffer a continuing injury.

The NSA argues that Plaintiffs have not met this burden because they have "failed to plausibly allege that the NSA continues to retain [their communications], fourteen years later, for undefined purposes of future access."[66] In their Amended Complaint, Plaintiffs allege:

> 12. Consistent with the practice and philosophy of the NSA to horde [sic] everything obtained through surveillance, whether legal or illegal, the communications illegally and unconstitutionally subjected to surveillance, interception, and key-word spotting analysis are presently unlawfully stored by the NSA, subject to unlawful access at any time in the future. That illegal storage is consistent with the unlawful storage of massive metadata of telephone calls illegally obtained by the NSA, as recounted recently in *American Civil Liberties Union v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ("The records sought . . . are relevant, in the government's view, because there might at some future point be a need or desire to search them in connection with a hypothetical future inquiry.").
>
> . . .
>
> 44.     Defendant NSA has participated or directly engaged in the storage of the

---

[64] *Dias*, 567 F.3d. at 1176.
[65] *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).
[66] Dkt. 32 at 7.

      communications illegally subjected to surveillance as described herein in connection with the 2002 Salt Lake Winter Olympic Games and continues to store those communications, which may be accessed, reviewed, and utilized at any time in the future, and is thereby irreparably harming Plaintiffs.[67]

Like Plaintiffs' allegation that the NSA collected every communication of every person in Salt Lake and the surrounding Olympic venues, Plaintiffs' allegation that the NSA has stored a massive quantity of data, much of which is likely irrelevant, may strike some as incredible. But, as discussed above, just because one may find Plaintiffs' assertions unbelievable does not mean that the court does not assume them to be true when deciding a motion to dismiss. The court only sets aside allegations that are legal conclusions, bare assertions of the legal elements of a claim, or sufficiently fantastic to defy reality as we know it.

Here, as with the allegation of data collection, Plaintiffs have not merely recited the elements of standing but have affirmatively stated that the NSA is presently storing their communications. The court, therefore, accepts this allegation as true and concludes that, at the motion to dismiss stage, Plaintiffs have pled enough to show a continuing injury. As with the injury in fact element, the NSA has not argued that Plaintiffs' allegations, if accepted as true, fail to show redressability. At this stage, the court concludes that because Plaintiffs' allegation that the NSA continues to store their communications must be accepted as true, Plaintiffs have plausibly alleged a continuing injury capable of redress.[68]

---

[67] Dkt. 26 ¶¶ 12, 44.

[68] *See ACLU v. Clapper*, 785 F.3d 787, 801 (2d Cir. 2015) ("[The government] argues instead that any alleged injuries here depend on the government's *reviewing* the information collected, and that appellants have not shown anything more than a 'speculative prospect that their telephone numbers would ever be used'… But the government's argument misapprehends what is required to establish standing in a case such as this one. Appellants challenge the telephone metadata program as a whole, alleging injury from the very collection of their telephone metadata…. Whether or not such claims prevail on the merits, appellants surely have standing to allege injury from the collection, and maintenance in a government database, of records relating to them.").

## CONCLUSION

The NSA essentially asks the court to pass on the plausibility of the allegations in the Amended Complaint and reject them as too unlikely to be believed. But at this motion to dismiss stage, the court may not perform such an analysis. Because the allegations in the Plaintiffs' Amended Complaint are not legal conclusions, bare assertions of the elements of standing, or sufficiently fantastic on their face as to defy reality, the law requires the court to accept them as true when evaluating the NSA's Motion to Dismiss. Though these allegations will undoubtedly be tested as this case proceeds, the court concludes at this early stage that the Plaintiffs have in their Amended Complaint plausibly alleged injury and redressability as required for Article III standing, and they overcome the NSA's challenge to jurisdiction. The NSA's Motion to Dismiss is DENIED as to the non-monetary claims against the NSA.[69]

SO ORDERED this 10th day of January, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[69] To the extent Plaintiffs' Amended Complaint contains claims against the FBI and monetary claims against the NSA, the NSA's Motion to Dismiss pertaining to those claims is GRANTED.